receive if the Debtors were liquidated, the Bankruptcy Court must determine the dollar amount that a liquidation of the Debtors' assets would generate in the context of a Chapter 7 liquidation sale. The amount available for satisfaction of Claims and Equity Interests would consist of the proceeds resulting from the sale of the Unsold Properties, the sale of the Non-Debtor Partnership interests and the proceeds of the Litigation Claims.

Because the Plan is a plan of orderly liquidation, each Class of Creditors and Equity Interests will receive substantially the same treatment it would receive if the Debtors' Assets were liquidated pursuant to Chapter 7 of the Bankruptcy Code, except that the Estates will neither be taxed with the additional expenses and commissions of a chapter 7 trustee nor delayed by a trustee's appointment and need to become familiar with this complex matter. Annexed, as Exhibit "C" is a liquidation analysis prepared by the Trustee reflecting a more expedited and greater or substantially similar distribution to creditors pursuant to the Plan than creditors would receive in a hypothetical Chapter 7 case. Accordingly, the Trustee believes the Plan satisfies the "best interests" of creditors test.

7.    **The Feasibility Test**

The "feasibility" test requires the Bankruptcy Court to find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further reorganization of the Debtors. Because the Plan contemplates an orderly liquidation of the Debtors' assets, confirmation of the Plan will not be followed by a liquidation or further reorganization.

8.    **The Fair and Equitable Test**

If any impaired class of claims or equity interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan despite such non-acceptance. To obtain such

confirmation, the Trustee must show, among other things, that the Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to each impaired class of claims or equity interests that has rejected the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" to a class if, among other things, the plan provides: (a) with respect to secured claims, that each holder of a claim included in the rejecting class will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive or retain on account of such junior claim or equity interest any property at all unless the senior class is paid in full. A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are similar to those of the dissenting class and if no class receives more than it is entitled to receive on account of its claim or interest.

9.    **Other Requirements of Section 1129**

The Trustee believes that the Plan meets all the other technical requirements of section 1129 of the Bankruptcy Code, including that the Plan has been proposed in good faith.

**THE CHAPTER 11 TRUSTEE SHALL SEEK CONFIRMATION OF THE PLAN IF LESS THAN THE REQUISITE AMOUNTS OF CLAIMS OR INTERESTS IN ANY ONE OR MORE CLASSES VOTE TO ACCEPT THE PLAN.**

**D.    Classification of Claims and Interests and Their Treatment Under the Plan**

The Plan classifies Claims and Equity Interests into five (5) Classes, and also provides

for payment of Allowed Administrative Expenses.  For each Class, the Plan states whether the

Claims or Equity Interests are impaired and whether holders of the Claims or Equity Interests

will receive various types of distributions under the Plan.  The Classes and payments to be made

and treatment proposed to be accorded to Allowed Claims of each Class under the Plan are

summarized and described below.  After Confirmation and upon the occurrence of the Effective

Date, the Plan binds the Trustee on behalf of the Debtors' Estates, any creditor and equity

security holder whether or not such creditor or equity security holder has accepted the Plan, and

the Debtors' Estates shall be discharged of liability for the payment of debts to the extent

specified in 11 U.S.C. §1141.

**1.    Unclassified Claims**

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Claims of a kind specified in

Sections 507(a)(1) or (8) of the Bankruptcy Code are not to be designated in a class.  Thus,

Administrative Claims and Priority Tax Claims against the Debtors shall be treated separately as

unclassified Claims.

**a.    Administrative Claims**

Administrative expenses are claims for fees, costs or expenses of administering the

Debtor's chapter 11 case which are allowed under Code Section 507(a)(2), including all

professional compensation requests pursuant to Sections 330 and 331 of the Code.  The Code

requires that all administrative expenses including fees payable to the Bankruptcy Court and the

Office of the United States Trustee which were incurred during the pendency of the case must be

paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. The Trustee and, upon confirmation, the Liquidating Trustee reserve the right to object to all Administrative Claims. The Liquidating Trustee will, before making any distributions to the Holders of Claims in Classes 2, 3, and 4, establish appropriate reserves for all Disputed Administrative Claims and Disputed Priority Tax Claims pursuant to Article VII, Section 7.7(b).

(1)    Administrative Claims – General. All trade and service debts and obligations incurred in the normal course of business by the Debtors during the Chapter 11 Cases, to the extent allowed, excluding Court Orders awarding professional fees, shall receive Cash in an amount equal to such Allowed Administrative Claim on the later of the Effective Date and seven (7) Business Days after entry of a Final Order Allowing such Administrative Claim, or as soon thereafter as is practicable. To date, there have been no material requests for payment of an Administrative Claim, excluding professionals. These Claims are estimated to be approximately $150,000.00. The Trustee and, upon confirmation, the Liquidating Trustee reserve the right to object to all Administrative Claims.

(2)    Administrative Claims - Professional Compensation and Reimbursement Claims. The Plan provides that any Person seeking payment on account of a Professional Compensation and Reimbursement Claim shall file its respective Final Fee Application no later than ninety (90) days after the Confirmation Date. All Professional Compensation and Reimbursement Claims, to the extent not previously paid, shall be paid in full: (a) seven (7) days after such Professional Compensation and Reimbursement Claim becomes an Allowed Professional Compensation and Reimbursement Claim, or (b) on such other terms as may be mutually agreed upon between the

53

Holder of an Allowed Professional Compensation and Reimbursement Claim and the Liquidating Trustee. Failure to file a Final Fee Application shall result in the Professional Compensation and Reimbursement Claim being forever barred and discharged. The following is an estimate of the Debtor's administrative fees and expenses through Confirmation:

| Chapter 11 Professionals | Estimated Fees & Expenses through Confirmation[7]<br><br>Approximate Amount Paid to Date[8] | Proposed Treatment |
|---|---|---|
| McCarter & English, LLP | Estimated Outstanding Amount Owed through Confirmation: $3,000,000.00<br>Amount Paid During Chapter 11 Cases: $3,009,410.59 | Under the Plan, except as otherwise provided for therein, on, or as soon as reasonably practicable after, the latest of (i) the Effective Date or (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, the holder of each such Allowed Administrative Claim will receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim.<br><br>**Estimated Recovery: 100%** |
| Duane Morris LLP | Estimated Outstanding Amount Owed through Confirmation: $1,000,000.00<br>Amount Paid During Chapter 11 Cases: $2,781,707.69 | |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Estimated Outstanding Amount Owed through Confirmation: $657,853.86<br>Amount Paid During Chapter 11 Cases: $7,190,444.13 | |

---

[7] The Bankruptcy Court entered an Order approving a procedure that would authorize the Trustee to pay professional Administrative Expense (the "Fee Expense Order"). The Fee Expense Order permitted the Trustee to pay 80% of the Chapter 11 Professional Fees on a monthly basis, but required a holdback of 20% of such requested fee (the "Holdback"). The Fee Expense Order further authorized the Trustee to pay 10% of the Holdback pursuant to orders authorizing Interim Compensation to the Chapter 11 Professionals. The estimated outstanding amounts owed through Confirmation for each of the Chapter 11 Professionals include the remaining Holdback where applicable.

[8] Additional amounts may be paid to the Chapter 11 Professionals between the drafting of this Disclosure Statement and the Confirmation Date thereby reducing the estimated amount that will be owed through Confirmation.

| Chapter 11 Professionals | Estimated Fees & Expenses through Confirmation[7]<br><br>Approximate Amount Paid to Date[8] | Proposed Treatment |
|---|---|---|
| | | |
| Keen Realty | Estimated Outstanding Amount Owed through Confirmation: $0.00[9]<br>Amount Paid During Chapter 11 Cases: $906,733.20 | |
| Bederson & Company, LLP | Estimated Outstanding Amount Owed through Confirmation: $555,741.16<br>Amount Paid During Chapter 11 Cases: $1,766,933.80 | |
| Hochberg, Addeo & Polacco, LLC | Estimated Outstanding Amount Owed through Confirmation: $250,000.00<br>Amount Paid During Chapter 11 Cases: $498,350.87 | |
| Greenberg Traurig LLP | Estimated Outstanding Amount Owed through Confirmation: $400,000.00<br>Amount Paid During Chapter 11 Cases: $0.00 | |
| Benchmark Appraisal, Inc. | Estimated Outstanding Amount Owed through Confirmation: $0.00<br>Amount Paid During Chapter 11 Cases: $21,090.00 | |
| Schonbraun McCann Group, LLP | Estimated Outstanding Amount Owed through Confirmation: $0.00<br>Amount Paid During Chapter 11 Cases: $193,564.47 | |

---

[9] Keen is entitled to a 1.5% buyers premium (paid by purchaser) on sales they procured prior to the expiration of its employment.

55

| Chapter 11 Professionals | Estimated Fees & Expenses through Confirmation[7]<br><br>Approximate Amount Paid to Date[8] | Proposed Treatment |
|---|---|---|
| | | |
| G & G Realtors | Estimated Outstanding Amount Owed through Confirmation: 3% of Property Sales Amount Paid During Chapter 11 Cases: $13,450.00 | |
| McCarthy Appraisal Services, Inc | Estimated Outstanding Amount Owed through Confirmation: $0.00 Amount Paid During Chapter 11 Cases: $34,200.00 | |
| A. Atkins Appraisal Corp. | Estimated Outstanding Amount Owed through Confirmation: $0.00 Amount Paid During Chapter 11 Cases: $450.00 | |
| Caspert Management, Inc. | Estimated Outstanding Amount Owed through Confirmation: $0.00 Amount Paid During Chapter 11 Cases: $10,564.84 | |
| Marc a/k/a Meir Lichtenstein /MSL | Estimated Outstanding Amount Owed through Confirmation: $0.00 Amount Paid During Chapter 11 Cases: $30,000.00 | |
| Stafford Smith Realty | Estimated Outstanding Amount Owed through Confirmation: 3% of Property Sales Amount Paid During Chapter 11 Cases: $0.00 | |
| Peter H. Wegener, Esq. | Estimated Outstanding Amount Owed through Confirmation: Contingency on Condemnation Award Amount Paid During Chapter 11 Cases: $0.00 | |

| Chapter 11 Professionals | Estimated Fees & Expenses through Confirmation[7]<br><br>Approximate Amount Paid to Date[8] | Proposed Treatment |
|---|---|---|
| | | |
| Gary Theodore, Esq., | Estimated Outstanding Amount Owed through Confirmation: $0.00<br>Amount Paid During Chapter 11 Cases: $46,149.42 | |
| Sobel & Co., LLC | Estimated Outstanding Amount Owed through Confirmation: $35,000.00<br>Amount Paid During Chapter 11 Cases: $659,266.14 | |
| Broege, Neumann, Fischer & Shaver, LLC | Estimated Outstanding Amount Owed through Confirmation: $60,000.00<br>Amount Paid During Chapter 11 Cases: $479,825.28 | |
| Stern, Lavinthal, Frankenberg & Norgaard, LLC | Estimated Outstanding Amount Owed through Confirmation: $974.00<br>Amount Paid During Chapter 11 Cases: $12,058.50 | |
| Okin Hollander & DeLuca, L.L.P | Estimated Outstanding Amount Owed through Confirmation: $200,000.00<br>Amount Paid During Chapter 11 Cases: $307,371.65 | |
| Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C. | Estimated Outstanding Amount Owed through Confirmation: $25,000.00<br>Amount Paid During Chapter 11 Cases: $26,467.95 | |
| Warren H. Smith & Associates, PC (Fee Auditor) | Estimated Outstanding Amount Owed through Confirmation: $30,000.00<br>Amount Paid During Chapter 11 Cases: $86,019.58 | |

| Chapter 11 Professionals | Estimated Fees & Expenses through Confirmation[7]<br><br>Approximate Amount Paid to Date[8] | Proposed Treatment |
|---|---|---|
| Valuation Consultants, Inc | Estimated Outstanding Amount Owed through Confirmation: $15,000.00<br><br>Amount Paid During Chapter 11 Cases: $24,172.16 | |
| Grant Thornton, LLP | Estimated Outstanding Amount Owed through Confirmation: $250,000.00<br><br>Amount Paid During Chapter 11 Cases: $0.00 | |

(2)    Administrative Claims - Joseph Dwek Settlement Claim.    Consistent with the Joseph Settlement, Yeshuah/Joseph was given an allowed administrative expense claim entitled to priority distribution pursuant to 11 U.S.C. §§ 503 and 507(a)(2), in the Dwek Chapter 11 Case in the amount of $1,484,757.20 for advances Yeshuah made to support the Transferred Properties which shall be paid on the earlier of: (1) the Effective Date of the Plan; or (2) the first date on which distributions are made to general unsecured creditors in the Dwek Chapter 11 Case.

**b.    Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments in cash of a total value, as of the effective date of the plan, equal to the allowed amount of such claim over a period not later than five (5) years after the petition date and in a manner not less favorable than the most favored nonpriority

58

unsecured claim provided for by the plan. The Trustee believes the following tax claims are owed:

| Description:<br>Estimated Allowed Priority Tax Claims | Approximate Amount Owed | Proposed Treatment |
|---|---|---|
| Real Estate Taxes on Unsold Properties | $564,202.00[10] | Under the Plan, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim: (i) on, or as soon as reasonably practicable after the later of the Effective Date of the Plan or the date on which such Priority Tax Claim is Allowed , cash payment equal to the unpaid portion of such Allowed Priority Tax Claim, (ii) such different treatment as to which the Trustee or Liquidating Trustee and such Holder will have agreed upon in writing, or (iii) at the Liquidation Trustee's sole discretion, deferred cash payments having a value, as of the Effective Date of the Plan, equal to such Allowed Priority Tax Claim, over a period not exceeding five (5) years after the date of assessment of such Allowed Priority Tax Claim.<br><br>Priority Tax Claims are not classified and are treated as required by the Bankruptcy Code.  The Holders of such Claims are not entitled to vote on the Plan.<br><br>Estimated  Percentage Recovery: 100% |
| Federal & State Income Taxes | $,4,325,000.00[11] | |

---

[10] These claims will be satisfied or assumed by purchaser at the time of closing of the sales of the remaining Properties or shall remain an obligation against the remaining Properties in the event the Trustee abandons such Properties or relief from stay and foreclosure is obtained by any mortgagee with a mortgage lien encumbering such Properties.  The Trustee will seek (continued...)

c.    **Quarterly Fees**

The third category of claims not classified is quarterly fees due and owing to the United States Trustee pursuant to 28 U.S.C. §1930.  All outstanding Quarterly Fees due and owing to the Office of the United States Trustee shall be paid in full in cash on the Effective Date of the Plan; and Quarterly Fees due after the Effective Date, if any, shall be paid by the Liquidation Trustee when they become due.

2.    **Classified Claims**

The following describes the Plan's classification of those Claims against the Debtors required to be classified under the Bankruptcy Code:

a.    **Class 1**

Class 1 shall consist of Allowed Secured Claims.  The Allowed Secured Claims are unimpaired and, therefore, not entitled to vote to accept or reject the Plan.

---

(...continued)
disallowance of the Priority Tax Claims for unpaid real estate taxes pursuant to 11 U.S.C. § 502(b)(3) to the extent the tax due exceeds that value of the properties to which they apply.

[11] Estimated as the Internal Revenue Service has not finalized its position on its 2006 tax year audit.

A description of the Secured Claims and their proposed treatment is as follows:

| Class | Description | Impaired (Y/N) | Treatment |
|-------|-------------|----------------|-----------|
| 1 | The Holders of Class 1 Claims include all Allowed Secured Claims with Liens on the Remaining Properties. | N | The Plan will not alter any of the legal, equitable and contractual rights of the Holders of Class 1 Claims. Unless otherwise agreed to by the Holder of an Allowed Class 1 Claim and the Trustee, each Holder of an Allowed Class 1 Claim shall receive, in full and final satisfaction of such Allowed Class 1 Claim, one of the following treatments, in the sole discretion of the Trustee: (i) the payment, at closing, of the sale or disposition proceeds of the collateral securing each such Allowed Class 1 Claim to the extent of the value of the Holder's interest in such property; (ii) the surrender to each Holder of all collateral securing each such Allowed Class 1 Claim without representation or warranty by or further recourse against the relevant Debtor or the Liquidation Trust; or (iii) treatment in any other manner so as to render the Allowed Class 1 Claim otherwise Unimpaired. |

**b.    Class 2**

Class 2 shall consist of Allowed Priority Non-Tax Claims. Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, if a class of unsecured priority claim holders may vote to accept deferred cash payment of a value, as of the Effective Date, equal to the allowed amount of such claims.

A description of the Class 2 Claims and their proposed treatment is as follows:

| Class | Description | Impaired (Y/N) | Treatment |
|-------|-------------|----------------|-----------|
| 2 | The Holders of Class 2 Claims include all Allowed Priority 507(a)(3) Gap Claims. | N | Under the Plan, each Holder of an Allowed Priority Gap Claim will receive in full and final satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Claim: (i) on, or as soon as reasonably practicable after the later of the Effective Date of the Plan or the date on which such Priority Claim is Allowed, cash payment equal to the unpaid portion of such Allowed Priority Claim, or (ii) such different treatment as to which the Trustee or Liquidating Trustee and such Holder will have agreed upon in writing. |

    **c.**    **Class 3**

Class 3 shall consist of Allowed General Unsecured Claims. The Allowed General Unsecured Claims are impaired and each Holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

| CLASS | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 3 | General Unsecured Claims consist of: (1) Allowed Unsecured Claims (2) Allowed Unsecured Deficiency Claims (3) Allowed Unsecured Investor Claims[12]<br><br>Total estimated amount of Allowed General Unsecured Claims: $117,875,824.00[13] | Y Claims in this class are impaired and, therefore, entitled to vote on the Plan | In full and final satisfaction of all claims against the Estates, Holders of Allowed Class 3 Claims shall receive distributions from the proceeds of the Liquidation Trust Assets on a pro rata basis until such time that such Allowed Class 3 Claim has been paid in full.[14]<br><br>**Estimated Percentage Recovery: 35%**[15] |

---

[12] Allowed Unsecured Investor Claims shall include the Allowed Claims of the Investors. Subject to the approval of the Bankruptcy Court, the Trustee has proposed to settle with certain good faith Investors who filed Claims against the Estates (the "Good Faith Investor Settlement"). The Good Faith Investor Settlement provides for, among other things, such Investors to have an Allowed Unsecured Claim for a portion of its unpaid principal investment. A copy of the Notice of Settlement is attached hereto as Exhibit "D". Additional settlements and further orders of the Bankruptcy Court may provide for the allowance of additional Unsecured Investor Claims.

[13] For further explanation of the total estimated amount of Allowed General Unsecured Claims please see refer to Section IV(H)(1) below and Liquidation Analysis attached as Exhibit "C".

[14] The Timing of payment shall be governed by the Liquidation Trust Agreement. It is the Trustee's intention to make an interim distribution on undisputed claims as soon as practicable.

[15] Estimated recovery to the Holders of Allowed Class 3 Claims assumes (1) the Trustee successfully expunges duplicative, amended and disputed claims as estimated, and (2) the accuracy of the values of the Assets and estimation of other liabilities as more particularly set forth in the Liquidation Analysis attached as Exhibit "C". Parties voting on the Plan should consider that the ultimate dividend paid to the Holders of Allowed Unsecured Claims could be significantly less or more than stated. There are a number of unknowns that the Trustee cannot predict, including but not limited to the results of the 2006 tax audit, the recovery on the Litigation Claims, the results of his efforts to sell and close on the Remaining Properties and the actual Administrative costs.

**Proposed Settlement with Kenderian Zilinski Associates**

Prior to the Dwek Petition Date, Kenderain Zilinski Associates ("KZA") filed construction liens against numerous Properties (the "KZA Construction Liens"). KZA also filed 2 claims against the Debtors asserting a claim in the total approximate amount of $334,303.49. The filed claims further assert that of that amount, approximately $84,053.03 is secured with the balance being unsecured. The Trustee believes that of the total of the two (2) claims $27,794.56 is a duplicate claim. Furthermore, approximately four (4) Debtors scheduled KZA as a General Unsecured Creditor in unknown amounts (the filed claims and scheduled claims are hereafter referred to as the "KZA Claims").

The Trustee has disputed the validity of the KZA Construction Liens and the secured status of its claims and has filed and will have to continue to file several adversary proceedings challenging the validity of the KZA Construction Liens (the "KZA Adversaries"). Moreover, the Bankruptcy Court has entered several orders during the course of the Chapter 11 Cases approving the sale of certain Properties free and clear of the KZA Construction Liens, but has required the escrow of funds from the closing proceeds until a determination is made as to the attachment of the liens to the proceeds.

The Trustee and KZA have agreed to settle the KZA Claims. The Trustee, in the exercise of his business judgment, believes that the settlement proposed below with KZA will provide for the most cost-effective, efficient process to dispose of the KZA Claims while reducing both the amount and status of the KZA Claims asserted against the Estates while maximizing the return to the Estates from those properties to which the KZA Construction Liens purport to encumber.

64

KZA has agreed to a cash payment on the Effective Date of the Plan in the amount of $95,108.96 (the "Settlement Amount") in full and final satisfaction of all claims against the Estates (the "KZA Settlement"). The KZA Settlement will save the Estates the litigation expenses of pursuing the KZA Adversaries and avoid the necessity to file additional adversary proceedings, and significantly reduce the amount of KZA's claims against the Estates. The KZA Settlement is conditioned on (1) confirmation of this Plan; (2) KZA voting in favor of the Plan; (3) the substantive consolidation of the Estates; and (4) KZA delivering to the Trustee executed discharges of the Construction Liens on or before the Effective Date which shall be held in escrow pending payment of the Settlement Amount on the Effective Date.

    d.      **Class 4**

Class 4 shall consist of any Allowed Subordinated Claims. In full and final satisfaction of all claims against the Estates, after payment in full of all Allowed Class 3 Claims, Holders of Allowed Class 4 Claims shall receive distributions from the remainder of the proceeds of the Liquidation Trust Assets on a pro rata basis until such time that such Allowed Class 4 Claim has been paid in full.

    e.      **Class 5**

Class 5 shall consist of Equity Interest Holders. The Equity Interests are impaired. Holders of Equity Interests shall receive no distribution on account of their Equity Interests except to the extent Dwek properly asserted an allowable exemption in any of the Assets, Dwek shall receive payment from the Liquidating Trust Assets on account of such allowed exemption at the time the Liquidating Trustee makes the final distribution under the Liquidating Trust and, therefore, the Holders of Equity Interests are conclusively presumed to have rejected the Plan

65

and are not entitled to vote to accept or reject the Plan. Immediately upon the Effective Date, all of the Debtor's remaining assets will be transferred to the Liquidation Trust, the Equity Interests will be canceled, and the Debtor will be deemed dissolved.

**E.    Means for Execution of the Plan**

    **1.    Substantive Consolidation**

The Plan is premised upon the substantive consolidation of the Debtors. Therefore, all parties voting on the Plan should vote their Claim(s) under the assumption the Estates are substantively consolidated. Accordingly, on the Effective Date, the Jointly Administered Debtors and their Estates shall be deemed merged with and into the Dwek estate, and (i) all assets and all liabilities of the Debtors shall be deemed merged into the Dwek estate, (ii) all guaranties of any Debtor of the payment, performance or collection of obligations of another Debtor shall be eliminated and canceled, (iii) any obligation of any Debtor and all guaranties thereof executed by one or more of the other Debtors shall be treated as a single obligation and such guaranties shall be deemed a single Claim against the consolidated Debtors, (iv) all joint obligations of two or more Debtors and all multiple Claims against such entities on account of such joint obligations, shall be treated and allowed only as a single Claim against the consolidated Debtors, (v) all Claims between or among the Debtors shall be cancelled and (vi) each Claim filed in the Chapter 11 Case of any Debtor shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date.

**The Code Supports Consolidation**

The Trustee believes that substantive consolidation of the Debtors' Estates, both for voting and distribution purposes, is equitable and otherwise appropriate under the principles established by the Third Circuit Court of Appeals in *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005) and the equitable powers granted to this Court by the Code.

Bankruptcy Courts may order substantive consolidation of debtors' estates pursuant to their general equitable powers under Section 105(a) of the Bankruptcy Code. See, e.g., *In re United Stairs Corp.*, 176 B.R. 359 (Bankr. D.N.J. 1995); *In re Cooper*, 147 B.R. 678 (Bankr. D.N.J. 1992); *In re Donut Queen, Ltd.*, 41 B.R. 706 (Bankr. E.D.N.Y. 1984).  11 U.S.C. § 105(a) confers a bankruptcy court with unfettered equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  This provision "supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code." *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000); *In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005).

"Orders of substantive consolidation combine the assets and liabilities of separate and distinct-but related-legal entities into a single pool and treat them as though they belong to a single entity." *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 764 (9th Cir. 2000).  "The consolidated assets create a single fund from which all claims against the consolidated debtors are satisfied; duplicate and inter-company claims are extinguished; and the creditors of the consolidated entities are combined for purposes of voting on reorganization plans. *Id.* (citations omitted).

67

Bankruptcy courts nationwide have employed similar, but differing tests, prior to approving the substantive consolidation of separate estates.    In *In re Owens Corning*, 419 F.3d 195, 207 (3d Cir. 2005), the Third Circuit stated, "The reasons of ... courts for allowing substantive consolidation as a possible remedy span the spectrum and often overlap.    For example, [*Stone v. Eacho*, 127 F.2d 284 (4th Cir. 1942)] and [*Soviero v. Nat'l Bank of Long Island*, 328 F.2d 446 (2d Cir. 1964)] followed the well-tried path of alter ego analysis in state 'pierce the corporate veil cases.' ...[*Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845 (2d Cir. 1966)] dealt with, inter alia, the net-negative practical effects of attempting to thread back the tangled affairs of entities, separate in name only, with 'interrelationship...hopelessly obscured.'....*In re Continental Vending Machine Corp.* [517 F.2d 986, 997 (2d Cir. 1975)] balanced the 'inequities' involved when substantive rights are affected against the 'practical considerations' spawned by 'accounting difficulties (and expense) which may occur where the interrelationships of the corporate group are highly complex or perhaps untraceable.'"

*In Owens Corning*, the Third Circuit distilled the various rationales presented above into two main elements, and announced, "In our Court, what must be proven (absent consent) concerning the entities for whom substantive consolidation is sought is that (i) prepetition they disregarded separateness so significantly [that] their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors." 419 F.3d at 211.

The Third Circuit's decision did not have to consider the consolidation of estates supported by a Ponzi scheme.    Generally, a moving party seeking consolidation of estates

68

supported by a Ponzi scheme would not easily satisfy either prong of the *Owens* holding because of the nature of the way Ponzi schemes are operated.

Specifically, the entanglement of the financial affairs of the estates, pre-petition typically occur unbeknownst to creditors pre-petition. Ponzi schemes have been defined as "investment scheme[s] in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised large returns for their investments. Initial investors are actually paid the promised returns, which attract additional investors." *In re Hedged-Investments Assoc., Inc.*, 48 F.3d 470, 471 n.2 (10th Cir. 1995). "Mature obligations [are] funded with monies from new investors. An outstanding characteristic of a classic 'Ponzi scheme' is that the more the business succeeds, the more insolvent it becomes." See *United States v. Shelton*, 669 F.2d 449, 450 n.2 (7th Cir. 1982).

Thus, a debtor's ability to trick creditors about the "breakdown of entity borders" is central to Ponzi schemes. In *In re Hedged Investments Associates, Inc.*, 163 B.R. 841, 849 (Bankr. D. Colorado 1994), the Bankruptcy Court for the District of Colorado addressed this issue directly, stating "Because [the debtor] was engaged in a Ponzi scheme, it is obvious that fraud was his intention. Even though the limited partners may have intended that all funds given to [the debtor] would be held in trust for their benefit, it was not [the debtor's] intent." Id. at 851. Debtors in Ponzi schemes often represent that entities are distinct from their personal affairs, when the reality is far from the truth.

Yet, equity cries for the consolidation of estates supported by Ponzi schemes and other frauds. Other Circuits have permitted multiple debtors in Ponzi schemes to be substantively

consolidated. *In re Bonham*, 229 F.3d 750 (9th Cir. 2000) (Ninth Circuit ordered the District

Court to affirm the bankruptcy court's substantive consolidation of debtor and non-debtor estates

to allow the Chapter 7 Trustee to pursue avoidance actions against investors in the Ponzi

scheme); *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1258 (6th Cir. 1997)

(Discussing the bankruptcy court's substantive consolidation of estates of three debtors because

of unrestricted and extensive commingling of personal assets with corporate assets resulting from

a Ponzi scheme); *In re Bonham*, 226 B.R. 56 (Bankr. D. Alask 1998) (Discussing the Bankruptcy

Court's granting of a trustee's motion to substantively consolidate the Chapter 7 debtor's estate

with her closely-held, non-filing corporations that had been used to defraud creditors in a Ponzi

scheme); *In re Hedged-Investments Associates, Inc.*, 163 B.R. 841 (Bankr. D. Colorado 1994).

Moreover, "[T]he theme of the Bankruptcy Act is equality of distribution." *Sampsell v.*

*Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941). "The sole purpose of substantive

consolidation is to 'ensure equitable treatment of all creditors." *In re Augie/Restivo Baking Co.*,

860 F.2d 515, 518 (2d Cir. 1988). "The United States Supreme Court and the Courts of Appeal

have "repeatedly recognized that pro rata distribution of a defrauder's assets to multiple victims

of the fraud is appropriate and that District Courts act within their discretion in approving such

distributions." *SEC v. Infinity Group Co.*, 2007 U.S. App. Lexis 8068 at *3 (3d Cir. 2007)

(citing *SEC v. Credit Bancorp, Ltd.*, 290 F.3d 80, 89 (2d Cir. 2002), which explains that the use

of a pro rata distribution has been deemed especially appropriate for fraud victims of a 'Ponzi'

scheme). " 'Tracing' fictions should not be used to pursue individual recoveries when a fraud

ensnares multiple victims whose funds are commingled...Instead, the [Supreme Court of the

United States] has held that all victims should share equally in the recovered funds because

equity demands equal treatment." *SEC v. Infinity Group Co.*, 2007 U.S. App. Lexis 8068 at *3 (3d Cir. 2007).

Alternatively, as in this case involving the widespread Ponzi Scheme and other frauds of Solomon Dwek, in lieu of formal substantive consolidation, the Trustee believes that the Court may rely on its equitable powers under Section 105(a) of the Bankruptcy Code to create a trust into which the all of the proceeds of the Estates assets could be deposited and from which creditors could receive pro rata distributions.  In *SEC v. Infinity Group Co.*, 2007 U.S. App. Lexis 8068 at *3 (3d Cir. 2007), the Third Circuit addressed the District Court of New Jersey's appointment of a receiver to marshall assets involved in a Ponzi scheme involving over $26 million and 10,000 investors.  The receiver held the assets in trust for distribution to the defrauded investors.  There, the Third Circuit found that there was no equitable basis for distinguishing between early investors in the Ponzi scheme and those who invested shortly before accounts were frozen.  The Court stated, "All investors should thus be treated the same...We cannot say that the District Court abused its wide equitable discretion in so concluding." *Id.* at **5-6.  See also *In re Hedged-Investments Associates, Inc.*, 163 B.R. 841(Bankr. D. Colorado 1994).

As previously stated, the Trustee believes that the substantive consolidation of the estates is the only way to provide for an equitable return to creditors harmed as a result of the ponzi scheme and other frauds committed.  Moreover, the Trustee believes that the requirements of *Owens* are met; and that if not, there is justification consistent with *Owens* for the consolidation of these Estates due to the operation of the Ponzi Scheme and other frauds. As more particularly set forth in Section II above prior to the Dwek Petition Date (1) Dwek treated all of the Debtors

71

as a single enterprise, (2) the assets and liabilities of the Debtors were so intertwined that

separating them may be impossible if not cost prohibitive that will dilute the ultimate dividend to

all creditors, (3) virtually all of the creditors either treated the Debtors as a single economic unit

or relied on the financial strength of the Debtors as a single economic unit, (4) the Fiscal Agent

effectively consolidated the Debtors operating them as a single unit commingling Debtors'

assets, and (5) because the creation of the separate Debtors were in furtherance of a single ponzi

scheme carried out by a single individual, Dwek, and each of the Debtors were supported by the

monies generated by the Ponzi Scheme.

### The Court May Permit Voting on a Plan that Provides for Substantive Consolidation

The Court may permit voting on a plan that provides for the substantive consolidation of

the Estates.  A motion approving substantive consolidation does not need Court approval prior to

voting.  Section 1123(a)(5)(C) has been held to permit the substantive consolidation of debtors

by way of Chapter 11 plan.  That section provides, "A plan shall...provide adequate means for

the plan's implementation, such as -...merger or consolidation with the debtor with one or more

persons".  11 U.S.C. section 1123(a)(5)(C).  Substantive Consolidation, "by reason of Section

1123(a)(5)(C), [is] clearly an allowable provision in a Chapter 11 plan." *In re Stone & Webster,

Inc.*, 286 B.R. 532, 542 (Bankr. D. Del. 2002); *In re Limited Gaming of America, Inc.*, 228 B.R.

275, 287 (Bankr. N.D. Okl. 1998) ("[Section 1123(a)(5)(c)] indicates Congress' intent that a

Chapter 11 debtor be free to merge or consolidate with another entity as part of the

reorganization process").    There is no requirement that the Court rule prior to Confirmation.

Moreover, Numerous courts throughout the various Circuits have confirmed Chapter 11

Plans of Reorganization containing substantive consolidation provisions.  *In re Lisanti Foods,*

*Inc.*, 2007 WL 2212720 (3d Cir. 2007); *Miami Center Ltd Partnership v. Bank of New York*, 820

F.2d 376 (11th Cir. 1988); *In re Lionel, LLC*, 2008 WL 905928 at *11 (Bankr. S.D.N.Y. 2008);

*In re Bally Total Fitness of Greater New York, Inc.*, 2007 WL 2779438 at *18 (Bankr. S.D.N.Y.

2007); In re Source Enterprises, Inc., 2007 WL 2903954 at *5 (Bankr. S.D.N.Y. 2007); *In re

Estate of Arnold Asman*, 2006 WL 2990366 (D.N.J. 2006); *In re Magnatrax Corp.*, 2003 WL

22807541 (Bankr. D. Del. 2003); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723

(Bankr. S.D.N.Y. 1992).

Bankruptcy Courts have overruled objections to confirmation of Chapter 11 Plans, when

plan objectors argue that that substantive consolidation by way of a plan is improper.  In *In re

American Homepatient*, Inc., 298 B.R. 152, 163-67 (Bankr.  M.D. Tenn. 2003),  A group of

secured lenders argued that a proposed Chapter 11 plan was unconfirmable because (1) the court

did not have the authority to substantively consolidate debtors; (2) the assets and liabilities of the

debtors could be easily segregated; (3) substantive consolidation would eliminate the rights of

the Lenders to recover from the assets of the debtors; and (4) the debtor's basis for consolidation

was to eliminate potential classification and voting problems.

The  Bankruptcy Court overruled all of the Lenders' objections, stating that (1) the

Bankruptcy Court had the authority to substantively consolidate debtors pursuant to case law, 11

U.S.C. section 105, and additional Bankruptcy Code sections; (2) each debtor's filing of separate

tax returns was done solely for tax reasons, and not because assets and liabilities could be easily

separated; (3) the testimony and other proof as to the intermingling of debtors assets was

"credible, uncontradicted, and persuasive"; and (4) there was no attempt found to manipulate or

otherwise gerrymander votes by substantively consolidation the cases.

Additionally, in *In re Stone & Webster, supra*, an unsecured creditors' committee filed a Chapter 11 Plan and a motion to approve substantive consolidation. An equity committee objected to the substantive consolidation provisions of a Chapter 11 Plan, arguing that the court was without authority to confirm a plan providing for substantive consolidation. There, the Bankruptcy Court for the District of Delaware determined that while a plan proponent or a plan opponent can seek a determination prior to the plan confirmation hearing as to the legitimacy of a particular provision of proposed plan, there was no practical difference between a plan proponent seeking a ruling in advance of a confirmation hearing, versus seeking a ruling as part of the confirmation hearing and that substantive consolidation is allowable in a Chapter 11 Plan. The court ruled that substantive consolidation proposed by a plan is permissible pursuant to 1123(a)(5)(C). *In re Stone & Webster, Inc.*, 286 B.R. at 542, 546.

For all of the above reasons the Trustee believes that the Court may confirm the Plan to the extent it provides for the consolidation of the Estates. The Trustee and his retained professionals will be prepared, if necessary, to introduce testimony at confirmation to support this request.

### 2.    Establishment of Reserve

The amount of the Reserve shall be determined by the Liquidating Trustee. The Reserve will be calculated based on the projected expenses necessary to accomplish the tasks by or on behalf of the Liquidating Trustee under the Plan. That portion of the Reserve that relates to the costs and expenses of prosecuting the Litigation Claims and objections to Disputed Claims and payment of Professional Fees will be determined on the basis of budgets prepared by the

74

Professionals who will prosecute such matters and who will be responsible for assisting in the distributions or by the Liquidating Trustee.

**3.**    **Appointment of Liquidating Trustee**

On the Confirmation Date, the Liquidating Trustee will be appointed.  The Chapter 11 Trustee shall serve as the Liquidating Trustee.

**4.**    **Establishment of Liquidating Trust**

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement, and the Liquidating Trustee will begin his duties.

**5.**    **Transfer of Assets**

On the Effective Date, in accordance with the Confirmation Order, the Assets that are not otherwise distributed pursuant to the Plan will be irrevocably transferred and assigned to the Liquidating Trust, and will be held in trust for the benefit of all Holders of Allowed Claims pursuant to the terms of the Plan and of the Liquidating Trust Agreement.  Except as otherwise provided in the Plan, the Estate's title to the Assets will pass to the Liquidating Trust on the Effective Date, free and clear of all Claims and Equity Interests in accordance with section 1141 of the Bankruptcy Code.  The Liquidating Trustee will pay, or otherwise make distributions on account of, all Allowed Claims against the Debtors in accordance with the Plan.

**6.**    **Effect of Transfer**

For federal and applicable state income tax purposes, the transfer of the Assets to the Liquidating Trust will be a disposition of the Assets directly to and for the benefit of the beneficiaries of the Liquidating Trust in partial satisfaction of their Claims, immediately

followed by a deemed contribution of the Assets by the beneficiaries to the Liquidating Trust. The beneficiaries will be treated as the grantors and deemed owners of the Liquidating Trust.

### 7.    Professionals for the Liquidation Trustee

The Liquidating Trustee shall employ professionals in his discretion to assist the Liquidating Trustee in discharging the responsibilities described in the Liquidating Trust Agreement. All such professionals retained by the Liquidating Trustee shall be compensated in accordance with the procedures set forth below for compensation of Liquidating Trustee Professionals.

### F.    Preservation of the Debtors' Claims, Demands and Causes of Action

All claims, demands and causes of action of any kind or nature whatsoever held by, through or on behalf of the Debtors and/or the Estates against any other Person, including, but not limited to, all Litigation Claims, arising before the Effective Date and which have not been resolved or disposed of before the Effective Date, are preserved in full for the benefit of the Liquidating Trust, whether or not such claims or causes of action are specifically identified in this Disclosure Statement. The Liquidating Trustee is designated as the estate representative pursuant to and in accordance with Bankruptcy Code section 1123(b)(3)(B). Among other things, the Liquidating Trustee will have the authority to prosecute the Litigation Claims. The Liquidating Trustee also will have the authority to handle the Claims reconciliation process.

### G.    The Litigation Claims Recoveries

The Litigation Claims Recoveries and all other Liquidation Proceeds will be deposited into the Liquidating Trust to be disbursed in accordance with the Plan.

## H.    Procedure for Determination of Claims

### 1.    Objections to Claims

Except as to any Claim that has been Allowed before the Effective Date, the Liquidating

Trustee may object to the allowance of any Claim against the Debtors or seek estimation thereof

on any grounds permitted by the Bankruptcy Code by filing an initial pleading in the Bankruptcy

Court at any time prior to the first Business Day which is ninety (90) days after the Effective

Date or continuing the claims objection process initiated by the Trustee pre-confirmation.  As

stated above, the Trustee has filed more than 124 adversary complaints that, among other things,

object to the allowance of a significant number of claims filed in the Dwek Case.  Although the

Trustee continues his investigation, at this time, the Trustee intends to object to claims as set

forth below:

|  | Unsecured | Secured | Priority | Total |
|---|---|---|---|---|
| **Claims Filed** | 2,704,947,358.47 | 575,690,974.94 | 1,707,808.13 | 3,282,346,141.54 |
| **Duplicates** | (2,264,801,630.27) | (59,873,566.06) | - | (2,324,675,196.33) |
| **Amended** | (25,628,668.39) | (42,539,946.66) | | (68,168,615.05) |
| **Remaining** | 414,517,059.81 | 473,277,462.22 | 1,707,808.13 | 889,502,330.16 |
| **Expunge** | (212,817,414.33) | (370,584,010.21) | (1,160,645.22) | (584,562,069.76) |
| **Contingency** | (43,276,650.47) | | | (43,276,650.47) |
| **Reduce/Allow/Reclass** | (41,793,351.35) | (72,829,400.04) | 4,325,000.00 | (110,297,751.39) |
| | $116,629,643.66 | $29,864,051.97 | $4,872,162.91 | $151,365,858.54 |

### 2.    Disputed Claims

No payments or other distributions will be made to Holders of Claims unless and until

such Claims are Allowed Claims pursuant to a Final Order.  If a Claim is not an Allowed Claim

77

on the Effective Date or when payment is otherwise due under the Plan, payment of the Allowed Claim will be made when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in the Plan, provided, however, a Holder may receive payment on account of any portion of such Claim that is undisputed on the Effective (or any other Distribution) Date.  At the time of any payments of other distributions to holders of Allowed Claims in any Class, an amount sufficient to have paid each Holder of a Disputed Claim in such Class its Pro Rata share of such Distribution, calculated as though such Disputed Claim were an Allowed Claim, shall be reserved for the potential benefit of the holder of the Disputed Claim, and thereafter distributed as set forth above.

### 3. Treatment of Contingent Claims

Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan.  The Holder of a contingent Claim will only be entitled to a distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

### 4. Post-Effective Date Professional Compensation and Reimbursement Claims

Any authorized, permitted or approved Professional Compensation and Reimbursement Claims incurred by any Chapter 11 Professionals after the Confirmation Date will be treated as part of the fees and expenses of administering the Liquidating Trust and will be paid by the Liquidating Trustee in accordance with the terms of Section 7.6 of the Plan.

**5.**      **Authority to Settle and Assign**

In accordance with section 1123(b)(3) of the Bankruptcy Code, the Liquidating Trustee

will own and retain, and may prosecute enforce, compromise, settle, release or otherwise dispose

of any and all claims, defenses, counterclaims, setoffs and recoupments belonging to the Debtors

or the Estates, only upon notice to creditors pursuant to Fed. R. Bankr. P. 9019 and after

approval by the Bankruptcy Court as set forth in the Plan and the Liquidating Trust Agreement.

**6.**      **Dissolution of Debtor/Termination of Service of Corporate Officers and
Directors**

On the Effective Date, the Jointly Administered Debtors other than Dwek individually

will be deemed dissolved as a corporation pursuant to New Jersey law and by authority of the

Confirmation Order confirming the Plan.  As of the Effective Date, the existing officers and

directors of the Debtors shall cease to serve in their current capacities.  The term of the board of

directors of the Debtors shall be deemed to expire and the position of each officer shall terminate

on the Effective Date.  The Liquidating Trustee shall succeed to the rights to act in such

capacities as may be necessary to implement the Plan.  The Liquidating Trustee shall prepare or

cause to be prepared and filed on behalf of the Debtors the final tax returns and with payment for

such to be consistent with the terms of the Liquidation Trust Agreement.

## V.      THE LIQUIDATING TRUSTEE

**A.**      **Appointment of the Liquidating Trustee**

In the Confirmation Order, the Liquidating Trustee will be appointed and will be bound

to perform as required by the Plan; provided, however, that the appointment of the Liquidating

Trustee will be subject to the Liquidating Trustee delivering, at the initial expense of the

Liquidating Trust, a bond in an amount which will be provided in the Confirmation Order as

79

adequate to secure proper performance of the Liquidating Trustee's duties under the Plan and the Liquidating Trust Agreement. The Liquidating Trustee will obtain the required bond on or before the Effective Date and will be reimbursed immediately by the Liquidating Trust for the cost of doing so.

**B.    Duties of the Liquidating Trustee**

On the Effective Date, the Liquidating Trustee will be the representative of the Estate as that term is used in Bankruptcy Code section 1123(b)(3)(B) and will have the rights and powers provided for in the Bankruptcy Code in addition to any rights and powers granted herein and in the Liquidating Trust Agreement. In his capacity as the representative of the Estate, the Liquidating Trustee will be the successor-in-interest to the Debtor with respect to all claims, actions, and other interests constituting Assets. The Liquidating Trustee will hold all rights, title, and interest in and to the Assets of the Liquidating Trust on behalf of the beneficiaries, and will pay from the Liquidating Trust all ordinary and necessary costs of protecting and preserving the Assets. The Liquidating Trustee will administer the Liquidating Trust, will dispute or otherwise agree to settle claims, will liquidate the Assets of the Liquidating Trust and will make distributions from the Liquidating Trust, all in accordance with the terms of the Plan and the Liquidating Trust Agreement. Unless otherwise excused or exempted from doing so by the Bankruptcy Code, the Liquidating Trustee will abide by all laws, including tax laws and regulations, and will prepare or cause to be prepared all local, state, or federal tax returns, filings, and/or reports that are necessary or appropriate. The Liquidating Trustee also shall have sole and exclusive authority for the retention of Professionals to assist in any manner after the Effective Date.

**C.**    **Reporting Requirements/Effect of Failure to Object**

The Liquidating Trustee will file written reports (the "Liquidating Trustee Accounting Reports") with the Bankruptcy Court. The Liquidating Trustee Accounting Reports shall be filed every six (6) months. The first Liquidating Trustee Accounting Reports shall be filed on the twentieth (20th) day after the end of the month which falls six (6) months after the Effective Date. The Liquidating Trustee shall continue to file the Liquidating Trustee Accounting Reports every six (6) months thereafter until the Final Distribution Date. The Liquidating Trustee Accounting Reports, subject to any confidentiality or attorney work product privilege, will provide information on collections and disbursements, administrative costs, settlements, cash on hand or deposit, and the Liquidating Trustee's ongoing efforts to administer the Liquidating Trust. Before making his final distribution, the Liquidating Trustee will file a written report with the Bankruptcy Court and provide notice of same to the beneficiaries (which report shall constitute the final accounting of the Liquidating Trust) showing the assets administered, the distributions made by the Liquidating Trustee, and the final distributions to be made by the Liquidating Trustee (the "Final Liquidating Trustee Accounting Report"). Any beneficiary who fails to file and serve on the Liquidating Trustee a written objection to any quarterly report or to the final report and accounting within twenty (20) days after such report or account is filed shall be deemed to have assented thereto and approved the contents thereof. Any objection to any report or accounting shall be resolved by the Bankruptcy Court. If no objection is filed to the final report and accounting within the time frame set forth above, then, upon making the final distribution in the manner set forth in the final report, the Liquidating Trustee and all of the Liquidating Trustee Professionals will be: (a) fully discharged of their duties hereunder and

81

under the Liquidating Trust Agreement; and, (b) fully discharged and released from all duties, liabilities and obligations of every kind and nature to the beneficiaries.

**D.**    **Powers of the Liquidating Trustee**

The Liquidating Trustee will have the power to take any and all actions which, in the business judgment of the Liquidating Trustee, are necessary or appropriate to fulfill his obligations under the Plan, including, but not limited to, each of the powers set forth below and any powers incidental thereto:

      (a)    liquidate any and all Assets in accordance with the Plan;

      (b)    undertake any actions required to liquidate the Assets for the benefit of Creditors and the beneficiaries of the Liquidating Trust as provided in the Plan;

      (c)    collect, hold, manage, and distribute the Assets (and the proceeds thereof) in accordance with the terms of the Plan;

      (d)    review all Claims and file or litigate objections to the allowance of Claims;

      (e)    pay and discharge any costs, expenses, fees, or obligations deemed necessary or appropriate to preserve or enhance the value of the Assets and discharge duties under the Plan;

      (f)    open and maintain bank accounts and deposit funds and draw checks and make disbursements in accordance with the terms of the Plan;

      (g)    invest monies as may be deemed appropriate in the discretion of the Liquidating Trustee;

(h)      employ professionals to assist in administering and liquidating the Trust assets, including but not limited to for the purposes of pursuing and prosecuting the Litigation Claims and Claims reconciliation, and may employ such other Persons as the Liquidating Trustee deems necessary and appropriate to assist him in fulfilling his obligations under the Plan and pay the reasonable fees of such Persons, and reimburse such Persons for their reasonable out-of-pocket costs and expenses, as agreed between the Liquidating Trustee and such Persons.  To the extent that the Liquidating Trustee is licensed and capable of doing so, the Liquidating Trustee may serve as his or her own attorney or accountant in conjunction with any of the rights, powers, and duties of the Liquidating Trustee under the Plan;

(i)      sue and file or pursue objections to Claims and seek to estimate them;

(j)      in general, without in any way limiting any of the foregoing, deal with the Assets or any part or parts thereof in all other ways as would be lawful for any Person owning the same to deal therewith, but in all events subject to and consistent with the terms of the Plan;

(k)      commence or continue actions which were or otherwise could have been brought by the Trustee, the Debtors or the Estates and, when appropriate, settle such actions and Claims with the approval of the Bankruptcy Court;

(l)      establish and maintain the Reserve and establish such additional reserves (such as reserves for Disputed Claims pending a resolution of such Disputed Claims) as may be necessary to carry out the provisions of the Plan;

83

(m)     as soon as is practicable, request the entry of the final decree by the Bankruptcy Court;

(n)     seek any relief from or resolution of any disputes by the Bankruptcy Court, or appeal same to the District Court, Circuit Court or United States Supreme Court;

(o)     appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Plan or the Liquidating Trust; and

(p)     without limitation, do any and all things necessary to accomplish the purposes of the Plan.

(q)     make interim distributions on undisputed Claims in the Trustee's discretion and business judgment.

**E.      <u>Tenure, Removal and Replacement of the Liquidating Trustee</u>**

The authority of the Liquidating Trustee will be effective as of the Effective Date, and will remain and continue in full force and effect until all of the Assets are liquidated in accordance with the Plan, the funds in the Liquidating Trust have been completely distributed in accordance with the Plan, all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the Order closing the Bankruptcy Case is a Final Order.   The service of the Liquidating Trustee under the Plan will be subject to the following:

(a)    the Liquidating Trustee will serve until resignation pursuant to subsection (b) below, removal pursuant to subsection (c) below, or the completion of his duties;

(b)    the Liquidating Trustee may resign at any time by filing a written notice of resignation to the Bankruptcy Court with notice to beneficiaries.    Such resignation will be effective the earlier of thirty (30) days after filing same with the Bankruptcy Court or when a successor is appointed as provided herein;

(c)    the Liquidating Trustee may be removed for cause by order of the Bankruptcy Court, which order may be sought by motion by at least three (3) beneficiaries of the Liquidating Trust whose individuals Claims are not less than $50,000.00 and in the aggregate not less than $250,000.00; and

(d)    in the event of a vacancy in the position of the Liquidating Trustee (whether by removal, resignation, illness, incapacity, or death), the vacancy will be filled by the appointment of a successor Liquidating Trustee upon approval by the Bankruptcy Court.

**F.    Compensation and Reimbursement of Liquidating Trustee and His Professionals**

The Liquidating Trustee and the Liquidating Trustee Professionals shall be compensated for their services on a monthly basis in accordance with the hourly fees customarily charged by the Liquidating Trustee and the Liquidating Trustee Professionals for professional services.  The Liquidating Trustee and the Liquidating Trustee Professionals shall provide the chairperson of the Oversight Committee monthly fee statements.  The Oversight Committee shall thereafter have ten (10) calendar days to provide the Trustee with any written objection to such monthly fee

85

statement. If no such objection is received, the Trustee may pay such Liquidating Professional's monthly fee requested. If there is an objection received and such professional and the Oversight Committee despite their best efforts are unable to agree on the resolution of such objection then the Oversight Committee shall within twenty (20) days of the receipt of such monthly fee statement file an objection with the Bankruptcy Court on notice to such professional and the Liquidating Trustee. The Bankruptcy Court shall retain jurisdiction to resolve any such dispute.

**G.    Reserves**

The Liquidating Trustee will utilize the Reserves (none of which need be in separate accounts) as follows:

(a)    the Liquidating Trustee may draw on the Reserve to pay all costs and expenses related to the care and maintenance of the Assets, including, but not limited to, the expenses of the Liquidating Trust (including the fees and expenses of the Liquidating Trustee and any Liquidating Trustee Professionals) and the expenses related to all matters handled by the Liquidating Trustee and his Professionals, including Litigation Claims and Disputed Claims which are prosecuted and/or resolved by the Liquidating Trustee.

(b)    the Liquidating Trustee will establish appropriate reserves for Disputed Claims from which the Liquidating Trustee will make disbursements to each Holder of a Disputed Claim whose Claim is or becomes an Allowed Claim.

(c)    if any amount is remaining in a reserve at a time when the Liquidating Trustee believes in good faith that the need for such reserve has ended, the

Liquidating Trustee will eliminate the reserve and the amount thereof will become Liquidation Proceeds that are available for distribution pursuant to the terms of the Plan.

**H.    No Right in Assets**

The Assets held by the Liquidating Trust will be held by the Liquidating Trustee in trust for the benefit of the Creditors that are beneficiaries of the Trust and that are paid from the Liquidating Trust under the Plan.

**I.    Limitation on Liability of the Liquidating Trustee**

Subject to applicable law, the Liquidating Trustee will not be liable for any act he may do or omit to do as Liquidating Trustee while acting in good faith and in the exercise of his reasonable business judgment; nor will the Liquidating Trustee be liable in any event except for his own gross negligence or willful fraud or willful misconduct. The foregoing limitation on liability also will apply to any Person (including any professional) employed by the Liquidating Trustee and acting on behalf of the Liquidating Trustee in the fulfillment of the Liquidating Trustee's duties under the Plan and the Liquidating Trust Agreement. The Liquidating Trustee and all Liquidating Trustee Professionals also will be entitled to indemnification out of the Assets of the Liquidating Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits or claims that the Liquidating Trustee may incur or sustain by reason of being or having been a Liquidating Trustee of the Liquidating Trust, or for performing any functions incidental to such service; provided, however, that the Liquidating Trustee and the Liquidating Trustee Professionals will not be relieved of liability for bad faith, willful misfeasance, reckless disregard of duty, gross negligence, willful fraud, willful misconduct, self-dealing or breach of fiduciary duty.

87

## VI.    TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES

### A.    Rejection of Executory Contracts and Assumption of Unexpired Leases

All Executory Contracts an Unexpired Leases not otherwise assumed by the Plan will be rejected as of the Confirmation Date.

### B.    Rejection Claims Bar Date

Every Claim asserted by a Creditor arising from the rejection of an Executory Contract or Unexpired Lease by the Plan must be filed with the Bankruptcy Court no later than the first Business Day which is thirty (30) days after the Effective Date. Every such Claim that is timely filed will be treated under the Plan as a Class 3 General Unsecured Claim, except to the extent such Creditor received a pre-petition lease security deposit such Creditor shall be required to apply said security towards its Claim. However, nothing herein shall be construed as the Trustee's waiver or acquiescence to the allowance of such claim. The Trustee specifically preserves all of the Estates' rights and defenses to such Claim as well as the application of any such lease security deposit. Every such Claim that is not timely filed by the deadline stated above will be forever barred, unenforceable and discharged, and the Creditor holding the Claim will not receive or be entitled to any distribution under the Plan on account of such Claim.

## VII.    DISCHARGE

The Trustee has met with the Committee and other creditor constituencies and has shared the invaluable cooperation by Solomon Dwek. Despite the unprecedented cooperation provided, the Trustee has been unable to build a consensus on a Plan that would provide Dwek with a discharge. Accordingly, notwithstanding the provisions of 11 U.S.C. §1144, the Plan does not discharge Dwek.

## VIII.    MODIFICATION OF THE PLAN

The Plan may be modified by the Trustee, or the Liquidating Trustee, as applicable from time to time in accordance with, and pursuant to, Bankruptcy Code section 1127. The Plan may be modified by the Trustee at any time before the Effective Date provided that the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, and the Trustee has complied with Bankruptcy Code section 1125.

## IX.    CONDITIONS TO THE EFFECTIVE DATE

**A.    Conditions to the Occurrence of the Effective Date**

Each and all of the following are conditions to the Plan becoming effective, and must be satisfied fully or waived by the Trustee:

(a)    the Confirmation Order has been entered by the Bankruptcy Court and has become a Final Order;

(b)    the Liquidating Trustee has accepted, in writing, the terms of his service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

(c)    the Liquidating Trustee has provided the bond required in the Confirmation Order; and

(d)    the Liquidating Trust has been established.

**B.    Waiver of Conditions**

The Trustee in his sole discretion may waive the Final Order condition in subpart (a) above at any time from and after the Confirmation Date. In that event, the Trustee will be

89

entitled to render any or all of his performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived, including, but not limited to, the right to perform under any circumstances which would moot any appeal, review, or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review, or other challenge.

## X.      RETENTION OF JURISDICTION

Notwithstanding Confirmation of the Plan and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction for the following purposes:

### A.      In General

The Bankruptcy Court will retain jurisdiction to determine the type, allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by Liquidating Trustee or any other party-in-interest entitled to proceed in that manner. As part of such retained jurisdiction, the Bankruptcy Court will continue to determine the Allowance of Administrative Claims and any request for payment thereof, including Professional Compensation and Reimbursement Claims.

### B.      Plan Disputes and Enforcement

The Bankruptcy Court will retain jurisdiction to determine any dispute which may arise regarding the interpretation of any provisions of the Plan. The Bankruptcy Court also will retain jurisdiction to enforce any provisions of the Plan and any and all documents relating to the Plan, and it will retain jurisdiction over any matter relating to the implementation and/or consummation of the Plan.

90

**C.**    **Further Orders**

The Bankruptcy Court will retain jurisdiction to facilitate the performance of the Plan by entering, consistent with the provisions of the Plan, any further necessary or appropriate order regarding enforcement of the Plan and any provision thereof.  In addition, the Bankruptcy Court will retain jurisdiction to facilitate or implement the allowance, disallowance, treatment, or satisfaction of any Claim, or any portion thereof, pursuant to the Plan.

**D.**    **Sales of Assets**

The Bankruptcy Court will retain jurisdiction to authorize and approve any sales of the Debtors' Assets free and clear of all Liens, claims, interests, or encumbrances in accordance with the terms of the Plan.

**E.**    **Governmental Units or Regulatory Agencies**

The Bankruptcy Court will retain jurisdiction to adjudicate any dispute or to hear and determine any action taken, proposed, or threatened by any state, federal, or local governmental regulatory agency or unit having or asserting jurisdiction or power over the conduct of the business of the Debtors and/or the Liquidating Trust.

**F.**    **Final Decree**

The Bankruptcy Court will retain jurisdiction to enter an appropriate final decree in the Chapter 11 Cases.

**G.**    **Appeals**

In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement

91

and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding the Plan or the performance thereof as may be necessary to consummate the Plan.

**H.**     **Executory Contracts and Unexpired Leases**

The Bankruptcy Court will retain jurisdiction to determine any and all motions regarding assumption or rejection of Executory Contracts and Unexpired Leases and any and all Claims arising therefrom.

**I.**     **Other Claims**

The Bankruptcy Court will retain jurisdiction: (a) to hear and determine any Claim or cause of action arising in or related to the Chapter 11 Cases; and (b) to adjudicate any causes of action or other proceedings currently pending or otherwise referenced here or elsewhere in the Plan, including, but not limited to, the adjudication of the Litigation Claims and any and all "core proceedings" under 28 U.S.C. section 157(b), which are or may be pertinent to the Chapter 11 Cases and which the Liquidating Trustee may deem appropriate to commence and prosecute in support of implementation of the Plan.

## XI.   GENERAL PROVISIONS

### A.   Dissolution of the Committee

On the Effective Date, the Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Committee's attorneys, accountants and other agents shall terminate, provided, however, the Committee shall continue to exist after such date solely with respect to (i) all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code seeking payment of fees and expenses incurred by any professional, and (ii) any motions or other actions seeking the enforcement or implementation of the provisions of the Plan or the Confirmation Order.

### B.   Oversight Committee.

On the Effective Date, the Committee shall be reconstituted as a Post-Confirmation Oversight Committee and shall be comprised of at least three (3) members of the Committee prior to the Effective Date. The Committee members who are no longer members of the Committee as of the Effective Date shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases of the Debtors. In the event of the death or resignation of any member of the Oversight Committee after the Effective Date, the remaining members of the Oversight Committee shall have the right to designate a successor from among the holders of Allowed Class 3 Claims. If an Oversight Committee member assigns its entire Claim or releases the

93

Debtor from payment of the entire balance of its Claim, such act shall constitute a resignation from the Oversight Committee. Until a vacancy on the Oversight Committee is filled, the Oversight Committee shall function in its reduced number. The individual members of the Oversight Committee shall serve without compensation, except that they shall be entitled to reimbursement of reasonable expenses by the Liquidation Trust pursuant to the procedures set forth below. The Oversight Committee may engage and retain legal counsel as needed; (b) On the Final Distribution Date and following all payments being made to holders of Allowed Class 3 Claims under the Plan, the Oversight Committee shall be dissolved and the remaining members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases of the Debtors, and the retention or employment of the Oversight Committee's attorneys, and other professionals, shall terminate.

After the Confirmation Date, the Liquidation Trust shall without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the legal counsel employed by the Oversight Committee in connection with the implementation and consummation of the Plan, the claims reconciliation process and any other matters as to which such professionals may be engaged. The fees and expenses of such professionals shall be paid within fifteen (15) Business Days after submission of a detailed invoice therefor to the Liquidation Trustee and the Oversight Committee. If the Liquidation Trustee or the Oversight Committee disputes the reasonableness of any such invoice, the Liquidation Trustee, Oversight Committee or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice, and the disputed portion of such invoice

94

shall not be paid until the dispute is resolved. The undisputed portion of such fees and expenses shall be paid as provided for herein.

**C.      Termination of Fee Auditor**

The Fee Auditor shall perform duties after the Effective Date for the sole purpose of reviewing the final fee applications of the Chapter 11 Professionals. The Fee Auditor shall submit a final invoice to the Liquidating Trustee within twenty (20) days after the hearing at which the Bankruptcy Court rules on all final Fee Applications of the Chapter 11 Professionals. Such final invoice shall be paid by the Liquidating Trustee, without need of Bankruptcy Court approval, within thirty (30) days of receipt of same, unless the Liquidating Trustee files with the Bankruptcy Court an objection to such final invoice within such thirty (30) days. The Bankruptcy Court hereby retains jurisdiction to decide any such objections, and to order the Liquidating Trustee to pay such invoice, or any part thereof.

**D.      Reimbursement of Dwek Expenses and Monthly Stipend**

On December 27, 2007, the Court entered an order authorizing the payment of compensation to Solomon Dwek from the Estates. That order provided for the payment of $12,800.00 per month for living expenses and permitted the reimbursement of expenses Dwek incurred in rendering services to the Trustee. The Trustee intends to continue such payments post-confirmation until such time the Dwek's services are no longer needed as determined by the Trustee or by Order of the Court.

**E.      Exemption from Transfer Taxes**

Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance

95

of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by the Plan (including transfers by the Trustee of assets held by the Liquidating Trust) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

**F.    Extension of Payment Dates**

If any payment date falls due on any day which is not a Business Day, then such due date will be extended to the next Business Day.

**G.    Notices**

Any notice required or permitted to be provided under the Plan will be in writing and served by regular postage prepaid first class mail, hand-delivery, facsimile or e-mail.

**H.    Closing of the Case**

At such time as the Liquidating Trust has been fully administered (i.e., when all things requiring action by the Liquidating Trustee have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the Final Distribution Date, the Liquidating Trustee will file an application for Final Order showing that the Liquidating Trust has been fully administered.  The Liquidating Trustee will file an application for Final Order upon notice to the UST, after which an order approving the Liquidating Trustee's final report may be entered.  None of the filings contemplated in this paragraph, however, will in any way delay the Liquidating Trustee's ability to request entry of the final decree by the Bankruptcy Court.

**I.**     **Interest**

Whenever interest is to be computed under the Plan, interest will be simple interest and not compounded. Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim will be entitled to interest accruing on or after the Petition Date on any Claim.

**J.**     **Confirmation By Non-Acceptance Method**

The Trustee will request, if necessary, confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) with respect to any impaired Class of Claims which does not vote to accept the Plan.

**K.**     **Vesting**

As of the Effective Date, the Liquidating Trust will be vested with all property of the Substantively Consolidated Debtors and its then consolidated Estates, free and clear of all Claims, Liens, security interests, assignments, encumbrances, charges and other interests of Creditors, except as otherwise provided in the Plan.

**L.**     **Severability**

If the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of the Plan.

**M.**     **Governing Law**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflicts of law of thereof.

**N.**     **No Admissions or Waivers**

Notwithstanding anything herein to the contrary, nothing contained in the Plan or in this Disclosure Statement shall be deemed an admission by any entity with respect to any matter set forth herein.   If the Plan is not confirmed (or, if confirmed, does not become effective), no statement contained herein or in the Plan may be used or relied on in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 Cases against the Trustee, his professionals, the Debtors and their Estates or the Committee and its members and its professionals.   The Trustee further reserves any and all of his rights on behalf of the Estates as against all Persons in the event the Plan is not confirmed.

**O.**     **Successors and Assigns**

The rights and obligations of any Creditor or holder of an Equity Interest referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors and personal representatives of such Creditor or such holder of an Equity Interest.

**P.**     **Fractional Dollars**

Notwithstanding any other provision of the Plan, no payments or distributions under the Plan of or on account of fractions of dollars will be made.   When any payment or distribution of,

98

or on account of, a fraction of a dollar to any holder of an Allowed Claim would otherwise be required, the actual payment or distribution made will reflect a rounding up of such fraction to the nearest whole number.

**Q.      Minimum Distribution**

The Liquidating Trustee will not be required to distribute Cash to any Creditor if the amount of Cash to be distributed to such Creditor is less than $50.00.

**R.      Exculpation**

Neither the Trustee, the Committee and its members nor any of the Chapter 11 Professionals, will have or incur any liability to any Holder of a Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, affiliates or any of their successors or assigns, for any act or omission occurring after the Dwek Petition Date and in connection with, relating to, or arising out of the Chapter 11 Cases, formulation, negotiation or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the consummation of the Plan, Confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan except for their bad faith, willful malfeasance, reckless disregard of duty, gross negligence, willful fraud, willful misconduct, self-dealing or breach of fiduciary duty.

The Liquidating Trustee and his advisors, including attorneys and accountants, will be released from any and all claims of any parties on behalf of the Estate, the Liquidating Trust or the Holder of a Claim, whether known or unknown, contingent or liquidated, for any act or omission on behalf of the Debtors or their Estates, whether such act or omission occurred pre-petition or post-petition.

The Liquidating Trust is deemed to release each person exculpated under this Subsection from any liability arising from any act or omission occurring after the Petition Date and in connection with, relating to or arising out of the Chapter 11 Case, except as provided herein.

## XII.    CERTAIN TAX CONSEQUENCES OF THE PLAN

SUBSTANTIAL UNCERTAINTY EXISTS WITH RESPECT TO THE TAX ISSUES DISCUSSED BELOW.    THEREFORE, EACH HOLDER OF A CLAIM IS URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES OF THE PLAN.    NO RULINGS HAVE BEEN REQUESTED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN.  ALL CREDITORS ARE URGED TO CAREFULLY REVIEW THE TAX DISCLOSURE PROVIDED HEREIN.

The Liquidating Trust Agreement will conform to the guidelines set forth by the IRS regarding grantor trusts.  The Liquidating Trust should be treated as a grantor trust if it is operated in accordance with the Liquidating Trust Agreement.  A grantor trust is generally disregarded for federal and state income tax purposes.  Claimants having an interest in a grantor trust are treated as directly owning the assets of the trust and are required to report their proportionate share of its gain, loss, income and deduction (without regard to the timing of distributions from the trust).

It is uncertain how the grantor trust rules would apply to the extent it is unknown which claimants ultimately will receive distributions from the Liquidating Trust.

Because the Liquidating Trust should be recognized as a grantor/liquidating trust and the beneficiaries are its grantors, the beneficiaries will be taxed on the Liquidating Trust's income