**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
Caption in compliance with D.N.J. LBR 9004-2(c)

**McCARTER & ENGLISH, LLP**
Charles A. Stanziale, Jr.
Jeffrey T. Testa
Brian L. Baker
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070

*Chapter 11 Trustee and Counsel to Chapter 11*
*Trustee*

| | |
|---|---|
| In Re: | Lead Case No.: 07-11757 (KCF) (Jointly Administered) |
| **SOLOMON DWEK**, *et al.* | Chapter 11 |
| Debtors. | Judge: Kathryn C. Ferguson |

## SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE CHAPTER 11 TRUSTEE

Dated: February 12, 2010

**CHAPTER 11 TRUSTEE FOR THE JOINTLY**
**ADMINISTERED DEBTORS**


By:    /s/ Charles A. Stanziale, Jr.
Charles A. Stanziale, Jr., Chapter 11 Trustee
for the Jointly Administered Debtors

# TABLE OF CONTENTS

**Page**

ARTICLE I INTRODUCTION ...................................................................2

ARTICLE II DEFINITIONS..................................................................2

ARTICLE III TREATMENT OF ADMINISTRATIVE EXPENSE AND
    PRIORITY TAX CLAIMS ..............................................................15

ARTICLE IV CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS.......18

ARTICLE V TREATMENT OF CLAIMS ..............................................19

ARTICLE VI MEANS OF EXECUTION OF THE PLAN .........................25

ARTICLE VII THE LIQUIDATING TRUSTEE .....................................30

ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND
    UNEXPIRED LEASES ..................................................................38

ARTICLE IX DISCHARGE ...............................................................39

ARTICLE X  MODIFICATION OF THE PLAN .....................................39

ARTICLE XI CONDITIONS TO EFFECTIVE DATE ............................40

ARTICLE XII RETENTION OF JURISDICTION...................................40

ARTICLE XIII GENERAL PROVISIONS .............................................42

# ARTICLE I

## INTRODUCTION

This second amended plan of orderly liquidation (the "Plan") is proposed by Charles A. Stanziale, Jr., the Chapter 11 Trustee (the "Chapter 11 Trustee" or "Trustee") of the Jointly Administered Debtors pursuant to section 1121(c) of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

Pursuant to the Plan, the Trustee proposes an orderly liquidation of the Debtors' Assets. The Plan provides that all funds realized from the collection and liquidation of the Debtors' Assets will be paid to Creditors on account of their Claims in accordance with the distributive priorities of the Bankruptcy Code. The Trustee proposes to implement the Plan by establishing a Liquidating Trust that will be administered by the Liquidating Trustee. On the Effective Date, the Debtors' Assets will be transferred to the Liquidating Trust for the benefit of Creditors. Thereafter, the Liquidating Trustee will be responsible for liquidating all of the Assets, pursuing all causes of action and making distributions to Creditors in accordance with the terms of the Plan.

All Creditors and other parties-in interest are encouraged to carefully review the Disclosure Statement prepared by the Trustee before voting to accept or reject the Plan. NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

# ARTICLE II

## DEFINITIONS

For purposes of the Plan, and except as expressly provided otherwise herein or unless the context otherwise requires, all of the defined terms stated in this Article II will have the meanings stated below. For purposes of the Plan and such defined terms, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses thereof will be interchangeable (unless the context otherwise requires), and the defined terms will include masculine, feminine, and neutral genders. The defined terms stated in this Article II are substantive terms of the Plan, and Article II will be deemed incorporated throughout the rest of the Plan to apply the substantive provisions included in the defined terms.

2.1.    <u>Administrative Claim</u> means:  (a) every cost or expense of administration of the Bankruptcy Case, including any actual and necessary post-petition expenses of preserving the Estate, entitled to priority under Sections 503(b) and 507(a)(2) of the Bankruptcy Code; (b) any actual and necessary post-petition expenses of operating the Debtor; (c) all Professional Compensation and Reimbursement Claims approved by the Bankruptcy Court pursuant to interim and final allowances in accordance with Sections 105, 330, 331, and 503(b) of the Bankruptcy Code; and, (d) all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

2.2.    <u>Allowed Claims</u> means every Claim, other than an Administrative Claim, against the Debtors: (a)(i) as to which a proof of such Claim has been filed within the time fixed by the Bankruptcy Court or, if such Claim arises from the Debtor's rejection of an Executory Contract, no later than the Confirmation Date or, if rejected pursuant to the Confirmation Order, the first Business Day that is thirty (30) days after the Effective Date, or (ii) which the Debtors have scheduled in its Schedules (including any amendments thereto) as liquidated in amount and

undisputed; and in either event: (b)(i) as to which no objection to the allowance of such Claim has been filed within any applicable time period fixed by the Bankruptcy Court, or (ii) as to which the order allowing such Claim has become final and non-appealable without any appeal, review, or other challenge of any kind to that order having been taken or being still timely or with any such appeal, review or other challenge having been finally resolved in favor of the Claimant. The term Allowed Claim may be used throughout the Plan with each of the various Creditors' Claims or Classes of those Claims to signify that such Claims are, will be, or must be Allowed Claims to qualify for certain treatment under the Plan.

2.3.    <u>Allowed Administrative Claim</u> means every Administrative Claim as to which an application for payment has been approved by Final Order after notice and hearing, if required by the Bankruptcy Code, but not including an Administrative Claim that may have previously been paid.

2.4.    <u>Assets</u> means each and every item of property and interest of the Debtors or the Estates as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, and includes without limitation: (a) all Cash; (b) all real estate; (c) all Litigation Claims; (d) interests in Non-Debtor Partnerships; (e) all accounts receivable and any other amounts owed to the Debtors, whether due prior or subsequent to the Petition Date; (f) any other rights, deferred taxes, claims, causes of action or defenses, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; and (g) all of the Debtors' books, records, and privileges.

2.5.    <u>Bankruptcy Code</u> means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, including any amendments thereto that are applicable to the Chapter 11 Cases and in effect during the Chapter 11 Cases.

2.6.    <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the District of New Jersey, or such other court as may exercise jurisdiction over part or all of the Chapter 11 Cases, including the United States District Court for the District of New Jersey to the extent that the reference of part or all of the Chapter 11 Cases are withdrawn.

2.7.    <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, including any amendments thereto that are applicable to the Chapter 11 Cases, including the local rules of the Bankruptcy Court.

2.8.    <u>Bar Date</u> means: (i) in the Dwek Chapter 11 Case, June 27, 2007, the date established by the Local Bankruptcy Rules for the District of New Jersey by which non-governmental Creditors were required to file proofs of claim with respect to pre-petition Claims, except with respect to Administrative Claims, Claims arising from the rejection of any Executory Contracts, and Claims that were scheduled by the Debtor as undisputed, non-contingent, and unliquidated; and August 8, 2007, by which governmental Creditors were required to file proofs of claim with respect to pre-petition Claims, including but not limited to Priority Tax Claims; and (ii) those dates set forth on Schedule 3.1 attached the Disclosure Statement describing this Plan with respect to each of the other Jointly Administered Debtors.

2.9.    <u>Business Day</u> means every day except Saturdays, Sundays, federal holidays, and New Jersey state holidays observed by the Bankruptcy Court.

2.10.    <u>Cash</u> means cash, bank deposits with or letters of credit issued by a bank which the Bankruptcy Court has approved or otherwise recognizes as a creditworthy federal depository, and negotiable instruments which are cashier's checks issued by such a bank or checks certified by such a bank as supported by sufficient collected funds to pay such instruments in full.

2.11.   Chapter 11 Cases means the Jointly Administered Debtors chapter 11 cases pending in the Bankruptcy Court that have been consolidated for administration purposes under Case No. 07-11757 (KCF).

2.12.   Chapter 11 Professionals means the Chapter 11 Trustee's Professionals, the Debtors' Professionals and the Committee's Professionals, wherever they are referred to collectively in the Plan.

2.13.   Claim means "claim" as defined in Bankruptcy Code Section 101(5).

2.14.   Class means each of the classifications of Claims and Equity interests described in Article IV of the Plan.

2.15.   Committee means the official committee of unsecured creditors appointed in the Chapter 11 Cases.

2.16.   Committee's Professionals means:  (a) the law firm of Duane Morris LLP, and (b) the accounting firm of Sobel & Co., LLC.

2.17.   Confirmation Date means the date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

2.18.   Confirmation Hearing means the hearing held by the Bankruptcy Court regarding confirmation of the Plan, as such may be continued from time to time.

2.19.   Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code Section 1129.

2.20.   Creditor means "creditor" as defined in Bankruptcy Code Section 101(10).

2.21.   Debtors means the Jointly Administered Debtors.

2.22.   Debtor's Professionals means:  (a) the law firm of Broege, Neumann, Fischer & Shaver, LLC.

2.23.   Disallowed, when referring to a Claim, means a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of the Bankruptcy Court.

2.24.   Disclosure Statement means the Disclosure Statement filed by the Trustee with respect to the Plan, including, but not limited to, any restatements, amendments, modifications, or additional disclosures (if any) provided by the Trustee to comply with Bankruptcy Code section 1127 or orders of the Bankruptcy Court and which has been approved by the Bankruptcy Court.

2.25.   Disputed Claim means every Claim, or portion thereof, which is not an Allowed Claim or a Disallowed Claim.

2.26.   Distribution Date means: those dates as determined by the Liquidation Trustee.

2.27.   Dwek Chapter 11 Case means the Solomon Dwek chapter 11 case pending in the Bankruptcy Court as Case No. 07-11757 (KCF).

2.28.   Dwek Estate means the estate created by section 541 of the Bankruptcy Code in the Solomon Dwek chapter 11 case pending in the Bankruptcy Court as Case No. 07-11757 (KCF).

2.29.   Effective Date means the first Business Day after the last of the following dates and events has occurred, unless and to the extent any such condition or requirement for the occurrence of the Effective Date is waived by the Trustee: (a) the date that is ten (10) Business Days after the date on which the Confirmation Order has become final and non-appealable without any appeal, review, or other challenge of any kind to that order having been taken or still being timely, provided that the Trustee will be entitled to declare a waiver or satisfaction of this condition and their willingness to proceed with the Effective Date on any earlier Business Day that the Confirmation Order is in full force and effect and is not stayed; and (b) satisfaction of all

conditions precedent to the effectiveness of the Plan set forth in Article X below. Except where performance earlier than the Effective Date is expressly required by the Plan or where it is lawful and expressly permitted by the Plan to perform after the Effective Date, performance under the Plan will be due on the Effective Date. The Trustee will have the right to render any or all of the performance under the Plan prior to what otherwise would be the Effective Date if he deems it appropriate to do so, including, but not limited to, the right to render performance under any circumstances which would moot any appeal, review, or other challenge of any kind to the Confirmation Order if any such order is not stayed pending such appeal, review, or other challenge.

2.30.   <u>Equity Interest</u> means any ownership interest or a share of stock in the Debtors (including, but not limited to, all stock, options, warrants, or other rights to obtain such an interest or share of the Debtors), whether or not transferable, preferred, common, voting, or denominated "stock" or a similar security.

2.31.   <u>Estates</u> means the bankruptcy estates of the Jointly Administered Debtors created under Bankruptcy Code section 541 and in the event the Debtors Chapter 11 Cases are substantively consolidated the Estates shall refer to the estate of the Substantively Consolidated Debtor along with any unconsolidated Debtors' Estates.

2.32.   <u>Executory Contract</u> means every unexpired lease and other contract that is subject to being assumed or rejected by the Trustee under Bankruptcy Code section 365, pursuant to the Plan or separate motion.

2.33.   <u>Final Distribution Date</u> means the date on which the distribution is made from the Liquidating Trust that finally and fully exhausts the Assets of the Liquidating Trust.

2.34.    Final Order means any order of the Bankruptcy Court as to which (a) the time for appeal has expired and no appeal has been timely taken; or, (b) any appeal that has been timely taken has been finally determined or dismissed.

2.35.    General Unsecured Claim means every Unsecured Claim against the Debtor (including, but not limited to, every such Claim arising from the rejection of an Executory Contract and every Claim which is the undersecured portion of any Secured Claim), which is not an Administrative Claim, or a Priority Unsecured Claim, and which is classified and treated as the Plan provides for Class 3 Claims.

2.36.    General Unsecured Deficiency Claim means the General Unsecured Claim for the unpaid portion of an Allowed Secured Claim.

2.37.    General Unsecured Investor Claim means the Allowed General Unsecured Claim of an Investor.

2.38.    Investor means those individuals attached on schedule 2.38 hereto which includes those persons who advanced monies to Solomon Dwek, SEM or any of the Dwek Holding Companies in exchange for a promise of the return of such advances with a guaranteed profit within a specified time period.

2.39.    Holder means the beneficial holder of any Claim.

2.40.    Jointly Administered Debtors means Solomon Dwek, Case No. 07-11757 (KCF); 10 Neptune, LLC, Case No. 07-11974 (KCF); SEM Realty Associates LLC, Case No. 07-11976 (KCF); Deal Golf, LLC, Case No. 07-11982 (KCF); Dwek Trenton Gas, LLC Case No. 07-12794 (KCF); Neptune Gas, LLC, Case No. 07-12796 (KCF); Route 33 Medical, LLC, Case No. 07-12798 (KCF); 1111 Eleventh Avenue, LLC, Case No. 07-12799 (KCF); Dwek North Olden, LLC, Case No. 07-12800 (KCF); Dwek State College, LLC, Case No. 07-12802 (KCF); 1631

8

Highway 35, LLC, Case No. 07-16041 (KCF); 167 Monmouth Road, LLC, Case No. 07-16045 (KCF); 2100 Highway 35, LLC, Case No. 07-16048 (KCF); 230 Broadway, LLC, Case No. 07-16049 (KCF); 264 Highway 35, LLC, Case No. 07-16052 (KCF); 374 Monmouth Road, LLC, Case No. 07-16053 (KCF); 55 North Gilbert, LLC, Case No. 07-16054 (KCF); 601 Main Street, LLC, Case No. 07-16055 (KCF); 6201 Route 9, LLC, Case No. 07-16057 (KCF); Aberdeen Gas, LLC, Case No. 07-16058 (KCF); Bath Avenue Holdings, LLC, Case No. 07-16060 (KCF); Belmar Gas, LLC, Case No. 07-16061 (KCF); Berkeley Heights Gas, LLC, Case No. 07-16062 (KCF); Brick Gas, LLC, Case No. 07-16064 (KCF); Dover Estates, LLC, Case No. 07-16065 (KCF); Dwek Gas, LLC, Case No. 07-16066 (KCF); Dwek Hopatchung, LLC, Case No. 07-16067 (KCF); Dwek Income, LLC, Case No. 07-16068 (KCF); Dwek Ohio, LLC, Case No. 07-16069 (KCF); Dwek Pennsylvania, LP, Case No. 07-16071 (KCF); Dwek Wall, LLC, Case No. 07-16072 (KCF); Dwek Woodbridge, LLC, Case No. 07-16073 (KCF); Kadosh, LLC, Case No. 07-16074 (KCF); Lacey Land, LLC, Case No. 07-16075 (KCF); Monmouth Plaza, LLC, Case No. 07-16076 (KCF); P & Y Holdings, LLC, Case No. 07-16077 (KCF); Sugar Maple Estates, LLC, Case No. 07-16078 (KCF); West Bangs Avenue, LLC, Case No. 07-16079 (KCF); Beach Mart, LLC, Case No. 07-16104 (KCF); Seven Broad, LLC, Case No. 07-17124 (KCF); Dwek Apartments, LLC, Case No. 07-18315 (KCF); Dwek Raleigh, LLC, Case No. 07-18316 (KCF); Greenwood Plaza Acquisitions, LLC, Case No. 07-18317 (KCF); Sinking Springs II, LP, Case No. 07-18318 (KCF); Sinking Springs, LP, Case No. 07-18320 (KCF); Neptune Medical, LLC, Case No. 07-18766 (KCF); Bridgeton Building, LLC, Case No. 07-19629 (KCF); Dwek Properties, LLC, Case No. 07-20939 (KCF); WLB Center, LLC, Case No. 07-21752 (KCF); Dwek Branches, LLC, Case No. 07-22035 (KCF); Dwek Assets, LLC, Case No. 07-22036 (KCF); Asbury Gas, LLC, Case No. 07-22632 (KCF); Jemar Enterprises, LLC, Case No. 07-

22633 (KCF); Melville Dwek, LLC, Case No. 07-22634 (KCF); Newport WLB, LLC, Case No.

07-22635 (KCF); Red Bank Gas, LLC, Case No. 07-22636 (KCF); WLB Highway, LLC, Case

No. 07-22638 (KCF); Belmont Properties, LLC, Case No. 07-22898 (KCF); Tinton Falls Land,

LLC, Case No. 07-23872 (KCF); Copper Gables, LLC, Case No. 07-24829 (KCF); Dwek

Homes, LLC, Case No. 07-24832 (KCF); Myrtle Avenue Land, LLC, Case No. 07-24835

(KCF); Dwek Wall Gas, LLC, Case No. 07-24836 (KCF); Grant Avenue Estates, LLC, Case No.

07-24837 (KCF); Neptune City Stores, LLC, Case No. 07-24839 (KCF), 170 Broad, LLC, Case

No. 07-24922 (KCF); Dwek Land, LLC, Case No. 07-25349 (KCF); Dwek Motors, LLC, Case

No. 07-25350 (KCF); Waretown Shops, LLC, Case No. 07-25668 (KCF); Monmouth Consulting

Services, LLC, Case No. 07-25913 (KCF); Monmouth Road Brokers, LLC, Case No. 07-27357

(KCF), Winston Circle, LLC, Case No. 08-15790 (KCF); Sinking Springs Outparcel, LP, Case

No. 08-26159 (KCF); Deal Road Land Holdings, LLC, Case No. 08-26200 (KCF); Corbett

Holdings I, LLC, 09-18421 (KCF); 1806 Holdings, LLC, 09-19901 (KCF); Corlies Avenue

Land, LLC, 09-37142 (KCF); Little Silver Retail, LLC, 09-40968 (KCF); Ocean Circle

Holdings, LLC, 09-40969 (KCF), Little Silver Gas, LLC (09-40970 (KCF); and 1400 Offices,

LLC, 09-40971 (KCF), and any other entity that files a bankruptcy petition and is consolidated

with the Debtors prior to the Confirmation Date.

    2.41.   Lien means "lien" as defined in Bankruptcy Code section 101(37).

    2.42.   Liquidating Trust means the grantor trust established pursuant to the Liquidating

Trust Agreement.

    2.43.   Liquidating Trust Agreement means the agreement that will evidence and govern

the Liquidating Trust, which will be entered into as of the Effective Date by the Trustee and the

Liquidating Trustee pursuant to Article VII of the Plan, the form of which will be substantially

similar to Exhibit "A" attached hereto and is contemplated to be approved by the Bankruptcy Court pursuant to the Confirmation Order.

2.44.  Liquidating Trustee means Charles A. Stanziale, Jr., or such other person or entity as may be appointed and approved by the Bankruptcy Court as the Liquidating Trustee effective on the Effective Date, and any successor Liquidating Trustee appointed as provided in the Liquidating Trust Agreement.  Any changes to the identity of the Liquidating Trustee will be disclosed by the Trustee, will be subject to approval by the Bankruptcy Court, and will become part of the Plan pursuant to the Confirmation Order.

2.45.  Liquidating Trustee Professionals means professionals for whom retention has been or is sought by the Liquidating Trustee for carrying out the objectives of the Liquidating Trust Agreement.

2.46.  Liquidation Proceeds means (a) the Cash transferred to the Liquidating Trustee on the Effective Date, (b) the Cash proceeds or other proceeds of sale, collection, or other liquidation of any of the Assets after payment of all costs, expenses, and commissions of such sale, collection, or other disposition of the Assets, and (b) all Cash or other proceeds from the ownership of the Assets, including Litigation Claims Recoveries; provided, however, that the Liquidation Proceeds will not include the Reserve (except as provided in the definition of Reserve).

2.47.  Litigation Claims means all claims, rights, and causes of action asserted or assertable by the Chapter 11 Trustee or the Estates including but not limited to those pursuant to Sections 510 and 542 through 553 of the Bankruptcy Code and those pursuant to applicable non-bankruptcy law, whether or not asserted or pending on the Confirmation Date, which are to be

11

preserved and transferred to the Liquidating Trust to be administered, prosecuted, compromised, or otherwise disposed of for the benefit of Creditors.

2.48.   Litigation Claims Recoveries means all Cash or other recoveries from the Litigation Claims.

2.49.   Oversight Committee means the committee appointed pursuant to section 12.2 in the Plan.

2.50.   Person means "person" as defined in Bankruptcy Code Section 101(41).

2.51.   Plan means the "Plan of Orderly Liquidation" dated February 12, 2010, and every restatement, amendment, or modification thereof, if any, approved by the Bankruptcy Court in the Confirmation Order.

2.52.   Priority Non-Tax Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, that is entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

2.53.   Priority Tax Claim means any Claim of a governmental unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

2.54.   Priority Unsecured Claim means every Unsecured Claim or portion thereof that is not an Administrative Claim but is entitled to priority under any applicable provision of the Bankruptcy Code.

2.55.   Pro Rata means the proportion that the amount of any Claim in a particular Class bears to the aggregate amount of all Claims in such Class.

2.56.   Professional Compensation and Reimbursement Claims means the Claims of the Chapter 11 Professionals for reimbursement of costs and expenses rendered after the Dwek Petition Date and prior to and including the Confirmation Date.

2.57.    Reserve means the reserve established by the Liquidating Trustee to cover all reasonably anticipated expenses of administering the Liquidating Trust including, but not limited to, the costs, fees, and expenses of the Liquidating Trustee and all professionals retained by him. Among other things, the Reserve will be used to fund the professional fees and expenses incurred to prosecute the Avoidance Actions and objections to Disputed Claims. The Reserve will be funded from the Cash transferred to the Liquidating Trustee on the Effective Date, and the amount of the Reserve may be specified in the Confirmation Order. The Liquidating Trustee will have the right to fix the amount of the initial, and any additional reserves, in his reasonable discretion. Unused amounts in the Reserve as of the Final Distribution Date (after the payment of all costs and expenses to be covered by the Reserve as described above) will become part of the Liquidation Proceeds.

2.58.    Schedules means the schedules of assets and liabilities and statement of financial affairs filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as such schedules and statement may have been amended, modified, and supplemented from time to time.

2.59.    Secured Claims means every Claim or portion thereof which is asserted pursuant to Bankruptcy Code section 506 by the Creditor holding such Claim to be secured by a Lien, but only to the extent of the validity, perfection, and enforceability of the claimed Lien and the value of the interest of the Creditor holding such Claim against such property of the Debtors.

2.60.    Secured Creditor means every Creditor that holds a Secured Claim in the Chapter 11 Cases.

2.61.    Trustee means Charles A. Stanziale, Jr., the Chapter 11 Trustee of the Jointly Administered Debtors.

2.62.   <u>Trustee's Professionals</u> means:  (a) the law firm of McCarter & English, LLP; (b) the law firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP; (c) the law firm of Gary Theodore, Esq.; (d) Keen Realty; (e) Bederson & Company, LLP; (f) Hochberg, Addeo & Polacco, LLC; (g) the law firm of Greenberg Traurig LLP; (h) Benchmark Appraisal, Inc.; (i) Schonbraun McCann Group, LLP; (j) G & G Realtors; (k) McCarthy Appraisal Services, Inc; (l) A. Atkins Appraisal Corp.; (m) Caspert Management, Inc.; (n) Marc a/k/a Meir Lichtenstein; (o) Stafford Smith Realty; (p) Peter H. Wegener, Esq.; (q) the law firm of Stern, Lavinthal, Frankenberg & Norgaard, LLC; (r) Okin Hollander & DeLuca, L.L.P; (s) Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C.; (t) Valuation Consultants, Inc.; (u) Grant Thornton, LLP; and any and all other professionals that the Trustee has retained or may retain, with Bankruptcy Court approval, to assist in the conduct of the Chapter 11 Cases or to provide professional services for a specified purpose, all in accordance with Bankruptcy Code section 327.

2.63.   <u>Unsecured Claims</u> means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

2.64.   <u>Other Definitions</u> a term used and not defined therein but that is defined in the Bankruptcy Code shall have the meaning set forth herein.  The words "herein", hereof", "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  Moreover, some terms defined herein are defined in the section in which they are used.

# ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE AND PRIORITY TAX CLAIMS

The Trustee and, upon confirmation, the Liquidating Trustee reserve the right to object to

all Administrative Claims.  The Liquidating Trustee will, before making any distributions to the

Holders of Claims in Classes 2, 3, 4, and 5 establish appropriate reserves for all Disputed

Administrative Claims and Disputed Priority Tax Claims pursuant to Article VII, Section 7.7(b).

3.1.    **Administrative Expense Claims.**

(a)    <u>Administrative Claims – General</u>.    All trade and service debts and

obligations incurred in the normal course of business by the Debtors during the Chapter 11

Cases, to the extent allowed, excluding Court Orders awarding professional fees, shall receive

Cash in an amount equal to such Allowed Administrative Claim on the later of the Effective Date

and seven (7) Business Days after entry of a Final Order Allowing such Administrative Claim, or

as soon thereafter as is practicable.  To date, there have been no material requests for payment of

an Administrative Claim, excluding professionals.    These Claims are estimated to be

approximately $150,000.00.

(b)    <u>Administrative Claims - Professional Compensation and Reimbursement</u>

<u>Claims</u>.    Any Person seeking payment on account of a Professional Compensation and

Reimbursement Claim shall file its respective final Fee Application no later than ninety (90) days

after the Confirmation Date.  All Professional Compensation and Reimbursement Claims shall

be treated as Administrative Expense Claims as set forth above, or shall be paid on such other

terms as may be mutually agreed upon between the Holder of an Allowed Professional

Compensation and Reimbursement Claim and the Debtor or the Liquidating Trustee, as the case

may be. Failure to timely file a final Fee Application shall result in the Professional Compensation and Reimbursement Claim being forever barred and discharged.

(c)    Administrative Claims - Joseph Dwek Settlement Claim. Consistent with the Joseph Settlement, Yeshuah/Joseph was given an allowed administrative expense claim entitled to priority distribution pursuant to 11 U.S.C. §§ 503 and 507(a)(2), in the Dwek Chapter 11 Case in the amount of $1,484,757.20 for advances Yeshuah made to support the Transferred Properties which shall be paid on the earlier of: (1) the Effective Date of the Plan; or (2) the first date on which distributions are made to general unsecured creditors in the Dwek Chapter 11 Case.

3.2. **Priority Tax Claims.** The Trustee believes the following tax claims are owed:

| Description: | Approximate Amount Owed | Proposed Treatment |
|---|---|---|
| Estimated Allowed Priority Tax Claims | | |
| Real Estate Taxes on Unsold Properties | $564,202.00[1] | Under the Plan, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim: (i) on, or as soon as reasonably practicable after the later of the Effective Date of the Plan or the date on which such Priority Tax Claim is Allowed , cash payment equal to the unpaid |
| Federal & State Income Taxes | $4,325,000.00[2] | |

---

[1] These claims will be satisfied or assumed by purchaser at the time of closing of the sales of the remaining Properties or shall remain an obligation against the remaining Properties in the event the Trustee abandons such Properties or relief from stay and foreclosure is obtained by any mortgagee with a mortgage lien encumbering such Properties. The Trustee will seek disallowance of the Priority Tax Claims for unpaid real estate taxes pursuant to 11 U.S.C. § 502(b)(3) to the extent the tax due exceeds that value of the properties to which they apply.

[2] Estimated as the Internal Revenue Service has not finalized its position on its audit of the Debtors 2005 and 2006 tax years.

|  |  | portion of such Allowed Priority Tax Claim, (ii) such different treatment as to which the Trustee or Liquidating Trustee and such Holder will have agreed upon in writing, or (iii) at the Liquidation Trustee's sole discretion, deferred cash payments having a value, as of the Effective Date of the Plan, equal to such Allowed Priority Tax Claim, over a period not exceeding five (5) years after the date of assessment of such Allowed Priority Tax Claim.

Priority Tax Claims are not classified and are treated as required by the Bankruptcy Code.  The Holders of such Claims are not entitled to vote on the Plan.

Estimated Percentage Recovery: 100% |

3.3.    **Quarterly Fees.**  All outstanding Quarterly Fees due and owing to the Office of the United States Trustee shall be paid in full in cash on the Effective Date of the Plan; and Quarterly Fees due after the Effective Date, if any, shall be paid by the Liquidation Trustee when they become due.

# ARTICLE IV

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Certain Claims and Equity Interests are classified under the Plan as hereafter stated in this Article IV; provided, however, that a Claim or Equity Interest will be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such different Class. As of the Confirmation Hearing, any Class of Claims which does not contain any Creditor's Claim will be deemed deleted automatically from the Plan; and any Class of Claims which does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by the Bankruptcy Court pursuant to Bankruptcy Rule 3018(a)) will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan. The Claims against and the Equity Interests in the Debtor are hereby classified as follows:

(a)    **Class 1 - Secured Claims.**  Class 1 shall include all Claims that are Allowed Secured Claims against the Debtors.  Class 1 is unimpaired under the Plan and, therefore, Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

(b)    **Class 2 – Priority Non-Tax Claims.**  Class 2 shall include all Claims that are Allowed Priority Non-Tax Claims against the Debtors.  Class 2 is unimpaired under the Plan and, therefore, Holders of Class 2 Claims are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

(c)    **Class 3 – General Unsecured Claims.**  Class 3 shall include all Claims that are Allowed General Unsecured Claims against the Debtor.  Class 3 is impaired under the Plan, and Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

(d)    **Class 4 - Subordinated Claims.**  Class 4 shall consist of any Allowed Subordinated Claims.  Class 4 is impaired under the Plan and Holders of Class 4 Claims are entitled to vote to the extent permitted by the Court.

(e)    **Class 5 –Equity Interests.**  Class 5 shall include all Equity Interests. Holders of Equity Interests shall receive no distribution on account of their Equity Interests except to the extent Dwek properly asserted an allowable exemption in any of the Assets, Dwek shall receive payment from the Liquidating Trust Assets on account of such allowed exemption at the time the Liquidating Trustee makes the final distribution under the Liquidating Trust. Holders of Equity Interests, therefore, are conclusively presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

## ARTICLE V

## TREATMENT OF CLAIMS

5.1.    <u>Class 1 shall consist of Allowed Secured Claims</u>.  The Allowed Secured Claims are unimpaired and, therefore, not entitled to vote to accept or reject the Plan.  A description of the Secured Claims and their proposed treatment is as follows:

| **Class** | **Description** | **Impaired (Y/N)** | **Treatment** |
|---|---|---|---|
| 1 | The Holders of Class 1 Claims include all Allowed Secured Claims with Liens on the | N | The Plan will not alter any of the legal, equitable and contractual rights of the Holders of Class 1 Claims.[3]  Unless |

---

[3] Notwithstanding any adversary proceeding disputing the extent, validity and priority of any mortgage, including the mortgages of JPMorgan and EMC, such mortgagees shall retain their liens after confirmation and the Trustee shall  proceed with the sales of the underlying properties and, to the extent within his control, close on the sale s  of any such property approved by the Court.
(continued…)

19

| | Remaining Properties. | | | otherwise agreed to by the Holder of an Allowed Class 1 Claim and the Trustee, each Holder of an Allowed Class 1 Claim shall receive, in full and final satisfaction of such Allowed Class 1 Claim, one of the following treatments, in the sole discretion of the Trustee: (i) the payment, at closing, of |
|---|---|---|---|---|

(…continued)

Consistent with the Trustee's dealings with JP Morgan as successor to WaMu ("JP") prior to confirmation, the Trustee will publish a notice of auction and sale hearing within 10 days of the Disclosure Statement Hearing wherein JP shall serve as the credit bidder and be permitted to credit bid its outstanding mortgage balance (or an amount otherwise agreed to by the Trustee and JP) on 101 W. Palmer Avenue, W. Long Branch NJ and 19966 NE 36 Place, Aventura, Florida (the "JP Credit Bid Properties"), notwithstanding the Trustee's challenge as to the extent, validity and priority of such mortgages. If JP is the successful purchaser, closing on such JP Credit Bid Properties shall abide determination by the court or resolution between the parties as to the extent, validity and priority of such mortgage(s). If JP hold a valid mortgage , and JP is the credit bidder, JP shall compensate the estate pursuant to terms mutually agreeable between the Trustee and JP. If the JP Credit Bid Properties are sold to a third party purchaser then the proceeds of sale shall be escrowed and held by the Trustee until there is a determination by the court or resolution between the parties as to the extent, validity and priority of such mortgage(s) at which time JP shall receive the proceeds of such sales until paid in full on its allowed secured claim . If the proceeds are less than the secured claim, JP will compensate the estate pursuant to terms mutually agreeable between the Trustee and JP on each JP Credit Bid Property.

Additionally, consistent with the Trustee's prior agreement with JP, JP shall receive $500,000.00 upon the closing of 6201 Route 9. Howell, NJ (the "6201 Property"). In the event the Trustee is unable to close on the sale of the 6201 Property within thirty (30) days of the Effective Date of the Plan, then Trustee shall will publish a notice of auction and sale hearing wherein JP shall serve as the credit bidder and be permitted to credit bid its outstanding mortgage balance (or an amount otherwise agreed to by the Trustee and JP). JP shall compensate the estate pursuant to terms mutually agreeable between the Trustee and JP. If the 6201 Property is sold to a third party purchaser then JP shall receive the proceeds of such sale until paid in full on its allowed secured claim and , if the proceeds are less than the secured claim, JP shall compensate the estate pursuant to terms mutually agreeable between the Trustee and JP.

The Trustee is presently in discussions with a purchaser (the "Purchaser") of 708 Highway 35 (the "Winston Property") wherein he will assume the JP mortgage encumbering the Winston Property (the "JP Lien"). JP shall retain its mortgage Lien against the Winston Property after confirmation. If the Purchaser fails to close and assume the JP Lien obligations or satisfy in full the outstanding balance owed on the JP Lien within thirty (30) days of the Effective Date of the Plan, then the Trustee will publish a notice of auction and sale hearing wherein JP shall serve as the credit bidder and be permitted to credit bid its outstanding mortgage balance (or an amount otherwise agreed to by the Trustee and JP). If JP is the successful purchaser, JP shall compensate the estate pursuant to terms mutually agreeable between the Trustee and JP. If the Winston Property is sold to a third party purchaser JP shall receive the proceeds of such sales until paid in full on its allowed secured claim and , should the proceeds be less that the secured claim of JP, shall compensate the estate pursuant to terms mutually agreeable between the Trustee and JP.

|  |  |  | the sale or disposition proceeds of the collateral securing each such Allowed Class 1 Claim to the extent of the value of the Holder's interest in such property; (ii) the surrender to each Holder of all collateral securing each such Allowed Class 1 Claim without representation or warranty by or further recourse against the relevant Debtor or the Liquidation Trust; or (iii) treatment in any other manner so as to render the Allowed Class 1 Claim otherwise Unimpaired. |

5.2.    <u>Class 2  shall consist of Allowed Priority Non-Tax Claims</u>.  Each Holder of an Allowed Class 2 Priority Non-Tax Claim, if any, will receive Cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date or seven (7) Business Days after the entry of a Final Order Allowing such Priority Non-Tax Claim.

A description of the Class 2 Claims and their proposed treatment is as follows:

| **Class** | **Description** | **Impaired (Y/N)** | **Treatment** |
|---|---|---|---|
| 2 | The Holders of Class 2 Claims include all Allowed Priority 507(a)(3) Gap Claims. | N | Under the Plan, each Holder of an Allowed Priority Gap Claim will receive in full and final satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Claim: (i) on, or as soon as reasonably practicable after the later of the Effective Date of the Plan or the date on which such Priority Claim is Allowed, cash payment equal to the unpaid portion of such Allowed Priority Claim, or (ii) such different treatment as to which the Trustee or Liquidating Trustee and such Holder will have agreed upon in writing. |

5.3.    Class 3 shall consist of Allowed General Unsecured Claims.    The Allowed

General Unsecured Claims are impaired and each Holder of an Allowed General Unsecured

Claim is entitled to vote to accept or reject the Plan.    A description of the General Unsecured

Claims and their proposed treatment is as follows:

| CLASS | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|-------|-------------|----------------|-----------|
| 3 | General Unsecured Claims consist of: (1) Allowed Unsecured Claims (2) Allowed Unsecured Deficiency Claims (3) Allowed Unsecured Investor Claims[4] <br><br> Total estimated amount of Allowed General Unsecured Claims: $117,358,324.00[5] | Y Claims in this class are impaired and, therefore, entitled to vote on the Plan | In full and final satisfaction of all claims against the Estates, Holders of Allowed Class 3 Claims shall receive distributions from the proceeds of the Liquidation Trust Assets on a pro rata basis until such time that such Allowed Class 3 Claim has been paid in full.[6] <br><br> **Estimated Percentage Recovery: 32.6%[7]** |

---

[4] Allowed Unsecured Investor Claims shall include the Allowed Claims of the Investors. Subject to the approval of the Bankruptcy Court, the Trustee has proposed to settle with certain good faith Investors who filed Claims against the Estates (the "Good Faith Investor Settlement"). The Good Faith Investor Settlement provides for, among other things, such Investors to have an Allowed Unsecured Claim for a portion of its unpaid principal investment. Additional settlements and further orders of the Bankruptcy Court may provide for the allowance of additional Unsecured Investor Claims.

[5] Represents the Trustee's best good faith estimate of the amount that will be ultimately allowed. For further explanation of the total estimated amount of Allowed General Unsecured Claims please see refer to Disclosure Statement.

[6] The Timing of payment shall be governed by the Liquidation Trust Agreement. It is the Trustee's intention to make an interim distribution on undisputed claims as soon as practicable.

[7] The dividend is significantly impacted by the Trustee's proposed settlement with Amboy Bank *et al.* Without approval of the settlement, and if the Amboy Bank *et al.* claims were allowed, the estimated dividend would be 30%. If approved, and all other projections remain constant the settlement would increase the dividend to Allowed General Unsecured Claims to (continued...)

22

### Proposed Settlement with Kenderian Zilinski Associates

Prior to the Dwek Petition Date, Kenderain Zilinski Associates ("KZA") filed construction liens against numerous Properties (the "KZA Construction Liens"). KZA also filed 2 claims against the Debtors asserting a claim in the total approximate amount of $334,303.49. The filed claims further assert that of that amount, approximately $84,053.03 is secured with the balance being unsecured. The Trustee believes that of the total of the two (2) claims $27,794.56 is a duplicate claim. Furthermore, approximately four (4) Debtors scheduled KZA as a General Unsecured Creditor in unknown amounts (the filed claims and scheduled claims are hereafter referred to as the "KZA Claims").

The Trustee has disputed the validity of the KZA Construction Liens and the secured status of its claims and has filed and will have to continue to file several adversary proceedings challenging the validity of the KZA Construction Liens (the "KZA Adversaries"). Moreover, the Bankruptcy Court has entered several orders during the course of the Chapter 11 Cases approving the sale of certain Properties free and clear of the KZA Construction Liens, but has

---

(...continued)

32.6% and the effective dividend to Amboy Bank *et al.* will be approximately 26.9%. However, the estimated recovery to the Holders of Allowed Class 3 Claims assumes (1) the Trustee successfully expunges duplicative, amended and disputed claims as estimated; (2) the Trustee obtaining Court approval of settlements with HSBC Bank USA, N.A., Amboy Bank *et al.,* Isaac Franco *et al.,* and those certain Investors scheduled on Exhibit "D"; and (3) the accuracy of the values of the Assets and estimation of other liabilities as more particularly set forth in the Liquidation Analysis attached as Exhibit "C". Parties voting on the Plan should consider that the ultimate dividend paid to the Holders of Allowed Unsecured Claims could be significantly less or more than stated. There are a number of unknowns that the Trustee cannot predict, including but not limited to the results of the audit of the 2005 and 2006 tax years, the recovery on the Litigation Claims, the results of his efforts to sell and close on the Remaining Properties and the actual Administrative costs.

required the escrow of funds from the closing proceeds until a determination is made as to the attachment of the liens to the proceeds.

The Trustee and KZA have agreed to settle the KZA Claims. The Trustee, in the exercise of his business judgment, believes that the settlement proposed below with KZA will provide for the most cost-effective, efficient process to dispose of the KZA Claims while reducing both the amount and status of the KZA Claims asserted against the Estates while maximizing the return to the Estates from those properties to which the KZA Construction Liens purport to encumber.

KZA has agreed to a cash payment on the Effective Date of the Plan in the amount of $95,108.96 (the "Settlement Amount") in full and final satisfaction of all claims against the Estates (the "KZA Settlement"). The KZA Settlement will save the Estates the litigation expenses of pursuing the KZA Adversaries and avoid the necessity to file additional adversary proceedings, and significantly reduce the amount of KZA's claims against the Estates. The KZA Settlement is conditioned on (1) confirmation of this Plan; (2) KZA voting in favor of the Plan; (3) the substantive consolidation of the Estates; and (4) KZA delivering to the Trustee executed discharges of the Construction Liens on or before the Effective Date which shall be held in escrow pending payment of the Settlement Amount on the Effective Date.

5.4.    Class 4 shall consist of any Allowed Subordinated Claims. In full and final satisfaction of all claims against the Estates, after payment in full of all Allowed Class 3 Claims, Holders of Allowed Class 4 Claims shall receive distributions from the remainder of the proceeds of the Liquidation Trust Assets on a pro rata basis until such time that such Allowed Class 4 Claim has been paid in full.

5.5.    Treatment of Class 5 (Equity Interests). No Holder of an Equity Interest shall receive any distribution on account of such Equity Interest except to the extent Dwek properly

24

asserted an allowable exemption in any of the Assets, Dwek shall receive payment from the
Liquidating Trust Assets on account of such allowed exemption at the time the Liquidating
Trustee makes the final distribution under the Liquidating Trust. Immediately upon the Effective
Date, all of the Debtor's remaining assets will be transferred to the Liquidation Trust, the Equity
Interests will be canceled, and except for Dwek personally the Debtors will be deemed dissolved.

## ARTICLE VI

## MEANS OF EXECUTION OF THE PLAN

6.1.    The means of execution of the Plan are and will be as follows:

(a)    Substantive Consolidation.  The Plan is premised upon the substantive
consolidation of the Debtors.[8] Therefore, all parties voting on the Plan should vote their Claim(s)
under the assumption the Estates are substantively consolidated.  Accordingly, on the Effective
Date, the Jointly Administered Debtors and their Estates shall be deemed merged with and into
the Dwek Estate, and (i) all assets and all liabilities of the Debtors shall be deemed merged into
the Dwek Estate, (ii) all guaranties of any Debtor of the payment, performance or collection of
obligations of another Debtor shall be eliminated and canceled, (iii) any obligation of any Debtor
and all guaranties thereof executed by one or more of the other Debtors shall be treated as a
single obligation and such guaranties shall be deemed a single Claim against the consolidated

---

[8] The Jointly Administered Debtors that the Trustee seeks to substantively consolidate
include entities in which the Trustee disputes certain persons (the "Disputed Partners") holding
an ownership or member interest therein.  These entities include Corbett Holdings I, LLC, 09-
18421 (KCF) and Ocean Circle Holdings, LLC, 09-40969 (KCF) (the "Disputed Partnership
Estates") and Barry Kantrowitz' interest therein.  The Trustee will agree that the substantive
consolidation of the Disputed Partnership Estates will be determined by the Court in the pending
adversary proceeding of Stanziale v. Kantrowitz et al (Adv. Pro. No. 09-01233) or by written
agreement of the Trustee and the Disputed Partner of the Disputed Partnership Estates.  This
determination will also apply to 131 Broadway LLC and West Park Estates, LLC to the extent
that substantive consolidation thereof is also requested by the Trustee.

Debtors, (iv) all joint obligations of two or more Debtors and all multiple Claims against such entities on account of such joint obligations, shall be treated and allowed only as a single Claim against the consolidated Debtors, (v) all Claims between or among the Debtors shall be cancelled and (vi) each Claim filed in the Chapter 11 Case of any Debtor shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date.

(b)    Establishment of Reserve.  The amount of the Reserve shall be determined by the Liquidating Trustee, which shall be calculated based on the projected fees and costs necessary to accomplish the tasks by or on behalf of the Liquidating Trustee under the Plan. That portion of the Reserve that relates to the costs and expenses of prosecuting the Avoidance Actions and objections to Disputed Claims, and payment of professional fees and administrative expenses, will be determined on the basis of an estimate prepared by the Professionals who will prosecute such matters.

(c)    Appointment of Liquidating Trustee; Termination of the Committee.  On the Confirmation Date, Charles A. Stanziale, Jr. shall be appointed as the Liquidating Trustee. On the Effective Date, the powers and duties of the Committee will terminate.

(d)    Establishment of Liquidating Trust.  On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement and the Liquidating Trustee will begin his duties as Trustee.

(e)    Transfer of Assets.  On the Effective Date, and in accordance with the Confirmation Order, the Assets not otherwise distributed under this Plan will be irrevocably transferred and assigned to the Liquidating Trust, and will be held in trust for the benefit of all Holders of Allowed Claims pursuant to the terms of the Plan and the Liquidating Trust

26

Agreement. The Estate's title to the Assets will pass to the Liquidating Trust on the Effective Date free and clear of all Claims and Equity Interests in accordance with Bankruptcy Code section 1141. The Liquidating Trustee will pay, or otherwise make distributions on account of, all Allowed Claims against the Debtor in accordance with the terms of the Plan.

(f)    Effect of Transfer. For federal and applicable state income tax purposes, the transfer of the Assets to the Liquidating Trust will be a disposition of the Assets directly to and for the benefit of the beneficiaries of the Liquidating Trust in partial satisfaction of their Claims, immediately followed by a deemed contribution of the Assets by the beneficiaries to the Liquidating Trust. The beneficiaries will be treated as the grantors and deemed owners of the Liquidating Trust.

(g)    Settlement of Claims. The Liquidating Trustee will be authorized to settle Disputed Claims, or disputes as to amounts owing to the Estates, only upon notice to creditors pursuant to Fed. R. Bankr. P. 9019 and after approval by the Bankruptcy Court. The Liquidating Trustee will be authorized and empowered to bind the Liquidating Trust thereto. Any settlement by the Liquidating Trustee shall be conclusively deemed to be in the best interests of the Estate and the Liquidating Trust.

6.2.    Preservation of the Debtor's Claims, Demands and Causes of Action. All claims, demands and causes of action of any kind or nature whatsoever held by, through, or on behalf of the Debtors and/or the Estates against any other Person, including, but not limited to, all Litigation Claims, arising before the Effective Date and which have not been resolved or disposed of prior to the Effective Date, are hereby preserved in full for the benefit of the Liquidating Trust, whether or not such claims or causes of action are specifically identified in the Disclosure Statement accompanying the Plan. The Liquidating Trustee is hereby designated as

the Estates representative pursuant to and in accordance with Bankruptcy Code section

1123(b)(3)(B). Among other things, the Liquidating Trustee will have the authority to prosecute

the Litigation Claims, any claims or causes of action belonging to the Debtors. The Liquidating

Trustee shall prepare and file on behalf the Debtors final tax returns and be paid for such

consistent with the terms of the Liquidation Trust Agreement.

6.3.    <u>Litigation Claim Recoveries</u>.  The Litigation Claims Recoveries and all other

Liquidation Proceeds will be deposited into the Liquidation Trust.

6.4.    <u>Procedure for Determination of Claims</u>.  Except as to any Claim that has been

Allowed prior to the Effective Date, the Liquidating Trustee may object to the allowance of any

Claim against the Debtors or seek estimation thereof on any grounds permitted by the

Bankruptcy Code by filing the appropriate pleading in the Bankruptcy Court at any time prior to

the first Business Day which is ninety (90) days after the Effective Date or continuing the claims

objection process initiated by the Trustee or Debtors pre-confirmation.

6.5.    <u>Treatment of Disputed and Contingent Claims</u>.

(a)    <u>Disputed Claims</u>.  No payments or other distributions will be made to

Holders of Claims unless and until such Claims are Allowed Claims pursuant to a Final Order. If

a Claim is not an Allowed Claim on the Effective Date or when payment is otherwise due under

the Plan, payment of the Allowed Claim will be made when the Claim becomes an Allowed

Claim after the Effective Date or as otherwise specifically provided in the Plan, <u>provided</u>

<u>however</u>, a Holder may receive payment on account of any portion of such Claim that is

undisputed on the Effective Date or as otherwise specifically provided in the Plan. At the time of

any payments of other distributions to holders of Allowed Claims in any Class, an amount

sufficient to have paid each holder of a Disputed Claim in such Class its Pro Rata share of such

Distribution, calculated as though such Disputed Claim were an Allowed Claim, shall be reserved for the potential benefit of the holder of the Disputed Claim, and thereafter distributed as set forth above, but in the event that a creditor asserts duplicative, overlapping, or multiple Claims, the total amount reserved shall not exceed the total amount subject to distribution to such Creditor on account of such Claims. Further, to the extent necessary to insure that the amount reserved for a Disputed Claim is sufficient, any amount held or reserved on account of one Claim of a Creditor shall also be deemed to be held or reserved for all Claims of that Creditor.

(b)    Contingent Claims.  Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan, unless otherwise ordered by the Court.  The holder of a contingent Claim will only be entitled to a distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

6.6.    Post-Effective Date Professional Compensation and Reimbursement Claims.  Any allowable, authorized or otherwise permissible Professional Compensation and Reimbursement Claims incurred by any Chapter 11 Professionals after the Confirmation Date will be treated as part of the fees and expenses of administering the Liquidating Trust and will be paid by the Liquidating Trustee in accordance with the terms of Section 7.6 hereof.

6.7.    Authority to Settle and Assign.  In accordance with Bankruptcy Code section 1123(b)(3), the Liquidating Trustee will own and retain, and may prosecute, enforce, compromise, settle, release, or otherwise dispose of, any and all claims, defenses, counterclaims, setoffs, and recoupments belonging to the Debtors or the Estates, subject to the oversight of the Bankruptcy Court as set forth in section 6.1(f) above.

6.8.    <u>Dissolution of Debtors</u>.  After the Effective Date, other than Dwek, the Jointly Administered Debtors shall be deemed dissolved as a corporation pursuant to New Jersey law and by authority of the Confirmation Order confirming the Plan.  As of the Effective Date, the existing officers and directors of the Debtors shall cease to serve in their current capacities, if any.  The term of the board of directors of each of the Jointly Administered Debtors shall be deemed to expire and the position of each officer shall terminate on the Effective Date.  The Liquidation Trustee shall succeed to the right to act in such capacities as may be necessary to implement the Plan.  The Liquidation Trustee shall have prepared and file all final required tax returns for the Jointly Administered Debtors.

## ARTICLE VII

## THE LIQUIDATING TRUSTEE

7.1.    <u>Appointment of Liquidating Trustee</u>.  In the Confirmation Order, the Liquidating Trustee will be appointed and will be bound to perform as required by the Plan; <u>provided,</u> <u>however,</u> that the appointment of the Liquidating Trustee will be subject to the Liquidating Trustee delivering, at the expense of the Liquidating Trust, a bond in an amount which will be provided in the Confirmation Order as adequate to secure proper performance of the Liquidating Trustee's duties under the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee will obtain the required bond on or before the Effective Date and will be reimbursed immediately by the Liquidating Trust for the cost of doing so.

7.2.    <u>Duties of Liquidating Trustee</u>.  On the Effective Date, the Liquidating Trustee will be the representative of the Estates as that term is used in Bankruptcy Code section 1123(b)(3)(B) and will have the rights and powers provided for in the Bankruptcy Code, in addition to any rights and powers granted herein and in the Liquidating Trust Agreement.  In his capacity as the representative of the Estates, the Liquidating Trustee will be the successor-in

30

interest to the Debtor with respect to all claims, actions, and other interests constituting Assets. The Liquidating Trustee will hold all rights, title and interest in and to the Assets of the Liquidating Trust on behalf of the beneficiaries thereof, and will pay from the Liquidating Trust all ordinary and necessary costs of protecting and preserving the Assets. The Liquidating Trustee will administer the Liquidating Trust, will liquidate the Assets of the Liquidating Trust, and will make distributions from the Liquidating Trust, all in accordance with the terms of the Plan and the Liquidating Trust Agreement. Unless otherwise excused or exempted from doing so by the Bankruptcy Code, the Liquidating Trustee will abide by all laws, including tax laws and regulations, and will prepare or cause to be prepared all local, state, or federal tax returns, filings, and/or reports that are necessary or appropriate. The Liquidating Trustee shall have sole and exclusive authority for the retention of professionals to assist in any manner after the Effective Date.

7.3.    <u>Reporting Requirements/Effect of Failure to Object</u>. The Liquidating Trustee will file written reports (the "Liquidating Trustee Accounting Reports") with the Bankruptcy Court and serve a copy on the Oversight Committee. The Liquidating Trustee Accounting Reports shall be filed every three (3) months. The first Liquidating Trustee Accounting Reports shall be filed on the twentieth (20th) day after the end of the month which falls three (3) months after the Effective Date. The Liquidating Trustee shall continue to file the Liquidating Trustee Accounting Reports every three (3) months thereafter until the Final Distribution Date. The Liquidating Trustee Accounting Reports, subject to any confidentiality or attorney work product privilege, will provide information on collections and disbursements, administrative costs, settlements, cash on hand or deposit and the Liquidating Trustee's ongoing efforts to administer the Liquidating Trust, subject to confidentiality or other matters subject to the attorney work-

product privilege.  Before making his Final Distribution, the Liquidating Trustee shall file a

written report with the Bankruptcy Court and provide notice of same to the Oversight Committee

and the beneficiaries (which report shall constitute the final accounting of the Liquidating Trust)

showing the assets administered, the distributions made by the Liquidating Trustee and the Final

Distributions to be made by the Liquidating Trustee (the "Final Liquidating Trustee Accounting

Report").  Any beneficiary who fails to file and serve on the Liquidating Trustee a written

objection to any quarterly report or to the final report and accounting within twenty (20) days

after such report or account is filed shall be deemed to have assented thereto and approved the

contents thereof.  Any objection to any report or accounting shall be resolved by the Bankruptcy

Court.  If no objection is filed to the final report and accounting within the time frame set forth

above, then, upon making the Final Distribution in the manner set forth in the final report, the

Liquidating Trustee and all of the Liquidating Trustee Professionals shall be: (a) fully discharged

of their duties hereunder and under the Liquidating Trust Agreement; and, (b) fully discharged

and released from all duties, liabilities and obligations of every kind and nature to the

beneficiaries, except as is expressly set forth herein or in the Liquidating Trust Agreement to the

contrary.

    7.4.  <u>Powers of Liquidating Trustee</u>.  The Liquidating Trustee will have the power to

take any and all actions which, in the business judgment of the Liquidating Trustee, are

necessary or appropriate to fulfill his obligations under the Plan, including, but not limited to,

each of the powers set forth below and any powers incidental thereto:

    (a)    liquidate any and all Assets in accordance with the Plan;

    (b)    undertake any actions required to liquidate the Assets for the benefit of

Creditors and the beneficiaries of the Liquidating Trust as provided in the Plan;

      (c)     collect, hold, manage, and distribute the Assets (and the proceeds thereof) in accordance with the terms of the Plan;

      (d)     review all Claims and file or litigate objections to the Allowance of Claims;

      (e)     pay and discharge any costs, expenses, fees or obligations deemed necessary or appropriate to preserve or enhance the value of the Assets and discharge duties under the Plan;

      (f)     open and maintain bank accounts, deposit funds, draw checks and make disbursements in accordance with the terms of the Plan;

      (g)     invest monies as may be deemed appropriate in the discretion of the Liquidating Trustee;

      (h)     employ professionals to assist in administering and liquidating the Trust assets, including for the purposes of pursuing and prosecuting Litigation Claims and Claims reconciliation, and may employ such other Persons as the Liquidating Trustee deems necessary and appropriate to assist him in fulfilling his obligations under the Plan, pay the reasonable fees of such Persons and reimburse such Persons for their reasonable out-of-pocket costs and expenses, as agreed between the Liquidating Trustee and such Persons as set forth herein.  To the extent that the Liquidating Trustee is licensed and capable of doing so, the Liquidating Trustee may serve as his or her own attorney or accountant in conjunction with any of the rights, powers and duties of the Liquidating Trustee under the Plan;

      (i)     sue and file or pursue objections to Claims and seek to estimate them;

(j)    in general, without in any way limiting any of the foregoing, deal with the Assets, or any part or parts thereof, in all other ways as would be lawful for any Person owning the same to deal therewith, but in all events subject to and consistent with the terms of the Plan;

(k)    commence or continue actions which were or otherwise could have been brought by the Debtors or the Estates and, when appropriate, settle such actions and Claims with the approval of the Bankruptcy Court as set forth in section 6.1(f) above;

(l)    establish and maintain the Reserve and establish such additional reserves (such as reserves for Disputed Claims pending a resolution of such Disputed Claims) as may be necessary to carry out the provisions of the Plan;

(m)    as soon as is practicable, request the entry of the final decree by the Bankruptcy Court;

(n)    seek any relief from, or resolution of, any disputes by the Bankruptcy Court, or appeal same to the District Court, Circuit Court or United States Supreme Court;

(o)    appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Plan or the Liquidating Trust; and

(p)    without limitation, do any and all things necessary to accomplish the purposes of the Plan.

(q)    make interim distributions on undisputed Claims in the Trustee's discretion and business judgment.

7.5.    <u>Tenure, Removal, and Replacement of Liquidating Trustee</u>.  The authority of the Liquidating Trustee will commence as of the Effective Date, and will remain and continue in full force and effect until all of the Assets are liquidated in accordance with the Plan, the funds in the Liquidating Trust have been completely distributed in accordance with the Plan, all tax returns

and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and the Order closing the Bankruptcy Case is a Final Order.  The service of the Liquidating Trustee under the Plan will be subject to the following:

(a)  the Liquidating Trustee will serve until resignation pursuant to subsection (b) below, removal pursuant to subsection (c) below or the completion of his or her duties;

(b)  the Liquidating Trustee may resign at any time by filing a written notice of resignation to the Bankruptcy Court with notice to beneficiaries.  Such resignation will be effective the earlier of thirty (30) days after filing same with the Bankruptcy Court or when a successor is appointed as provided herein;

(c)  the Liquidating Trustee may be removed for cause by order of the Bankruptcy Court, which order may be sought by motion by at least three (3) beneficiaries of the Liquidating Trust whose individuals Claims are not less than $50,000.00 and in the aggregate not less than $250,000.00;

(d)  in the event of a vacancy in the position of the Liquidating Trustee (whether by removal, resignation, illness, incapacity or death), the vacancy will be filled by the appointment of a successor Liquidating Trustee upon approval by the Bankruptcy Court;

(e)  if, at any time, the Trustee shall give notice of his intent to resign or be removed or shall for any reason become incapable of acting hereunder, the Oversight Committee shall designate a successor Trustee, by written application submitted to the Court on five days notice to the Trust Beneficiaries, which application shall be filed within fourteen (14) days of the Oversight Committee being notified of such resignation, removal or inability to act hereunder. In the event that the Oversight Committee does not designate a successor Trustee or such designated Trustee is not approved, the Court shall designate a successor Trustee; and

(f)    the death, resignation, incompetency or removal of the Trustee shall not operate to terminate the Trust or to revoke any existing agency created pursuant to the terms of this Agreement or to invalidate any action theretofore taken by the retiring Trustee. In the event of the resignation or removal of the Trustee, such retiring Trustee shall (a) promptly execute and deliver such documents, instruments and other writings as may be requested by the successor Trustee to effect the change in the retiring Trustee's capacity under this Agreement and the conveyance of the Trust Estate then held by the retiring Trustee to its successor and (b) otherwise cooperate in effecting such successor Trustee's assumption of its obligations and functions.

7.6.    Compensation and Reimbursement of Liquidating Trustee and Professionals. The Liquidating Trustee and the Liquidating Trustee Professionals shall be compensated for their services on a monthly basis in accordance with the hourly fees customarily charged by the Liquidating Trustee and the Liquidating Trustee Professionals for professional services. The Liquidating Trustee and the Liquidating Trustee Professionals shall provide the chairperson of the Oversight Committee monthly fee statements. The Oversight Committee shall thereafter have ten (10) calendar days to provide the Trustee with any written objection to such monthly fee statement. If no such objection is received, the Trustee may pay such Liquidating Professional's monthly fee requested. If there is an objection received and such professional and the Oversight Committee despite their best efforts are unable to agree on the resolution of such objection then the Oversight Committee shall within twenty (20) days of the receipt of such monthly fee statement file an objection with the Bankruptcy Court on notice to such professional and the Liquidating Trustee. The Bankruptcy Court shall retain jurisdiction to resolve any such dispute.

7.7.    Reserves. The Liquidating Trustee will utilize the reserves (none of which need be in separate accounts) as follows:

(a)    The Liquidating Trustee may draw on the Reserve to pay all costs and expenses related to the care and maintenance of the Assets, including, but not limited to, the expenses of the Liquidating Trust (including the fees and expenses of the Liquidating Trustee and any Liquidating Trustee Professionals) and the expenses related to all matters handled by the Liquidating Trustee and his Professionals, including Avoidance Actions and Disputed Claims which are prosecuted and/or resolved by the Liquidating Trustee.

(b)    The Liquidating Trustee will establish appropriate reserves for Disputed Claims from which the Liquidating Trustee will make disbursements to each holder of a Disputed Claim whose Claim is or becomes an Allowed Claim.

(c)    If any amount is remaining in a reserve at a time when the Liquidating Trustee believes in good faith that the need for such reserve has ended, the Liquidating Trustee will eliminate the reserve and the amount thereof will become Liquidation Proceeds available for distribution pursuant to the terms of the Plan.

7.8.    <u>No Rights in Assets</u>.  The Assets held by the Liquidating Trust will be held by the Liquidating Trustee in trust for the benefit of the Creditors that are beneficiaries of the Trust and that are paid from the Liquidating Trust under the Plan.

7.9.    <u>Limitation On Liability of Liquidating Trustee</u>.  Subject to applicable law, the Liquidating Trustee will not be liable for any act he may do or omit to do as Liquidating Trustee hereunder while acting in good faith and in the exercise of his reasonable business judgment; nor will the Liquidating Trustee be liable in any event except for his own gross negligence, willful fraud or willful misconduct.  The foregoing limitation on liability also will apply to any Person (including any professional) employed by the Liquidating Trustee and acting on behalf of the Liquidating Trustee in the fulfillment of the Liquidating Trustee's duties hereunder or under the

37

Liquidating Trust Agreement. The Liquidating Trustee and all Liquidating Trustee Professionals shall also be entitled to indemnification out of the assets of the Liquidating Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits or claims that the Liquidating Trustee may incur or sustain by reason of being or having been a Liquidating Trustee of the Liquidating Trust or for performing any functions incidental to such service; provided, however, that the foregoing shall not relieve the Liquidating Trustee and the Liquidating Trustee Professionals from liability for bad faith, willful misfeasance, reckless disregard of duty, gross negligence, willful fraud, willful misconduct, self-dealing or breach of fiduciary duty.

## ARTICLE VIII

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1.    <u>Rejection of Executory Contracts and Unexpired Leases</u>. All Executory Contracts and Unexpired Leases not otherwise heretofore assumed by the Debtors are rejected as of the Confirmation Date.

8.2.    <u>Rejection Claims Bar Date</u>. Every Claim asserted by a Creditor arising from the rejection of an Executory Contract or Unexpired Lease by this Plan must be filed with the Bankruptcy Court no later than the first Business Day which is thirty (30) days after the Effective Date. Every such Claim that is timely filed will be treated under the Plan as a Class 3 General Unsecured Claim, except to the extent such Creditor received a pre-petition lease security deposit such Creditor shall be required to apply said security towards its Claim. However, nothing herein shall be construed as the Trustee's waiver or acquiescence to the allowance of such claim. The Trustee specifically preserves all of its rights and defenses to such Claim as well as the application of any such lease security deposit. Every such Claim that is not timely filed by the deadline stated above will be forever barred, unenforceable and discharged, and the Creditor

holding the Claim will not receive or be entitled to any distribution under the Plan on account of such Claim.

## ARTICLE IX

### DISCHARGE

Nothing herein is meant to alter any discharge Dwek may be entitled to pursuant to 11 U.S.C. §1141. However, nothing herein is meant to affect any non-dischargeable judgment previously obtained by any creditor or any pending proceeding objecting to discharge by any creditor. Moreover, notwithstanding the expiration of any applicable deadline or statute of limitation, the Trustee, any successor trustee and every creditor shall be afforded ninety (90) days from the Confirmation of the Plan to commence an action in the Bankruptcy Court seeking a judgment either under 11 U.S.C. §727 or §523 to deny such discharge or to deny the discharge of any individual debt owed to such creditor

## ARTICLE X

### MODIFICATION OF THE PLAN

The Plan may be modified by the Trustee or the Liquidating Trustee from time to time in accordance with, and pursuant to, Bankruptcy Code section 1127. The Plan may be modified by the Trustee at any time before the Effective Date, provided that the Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123, and the Trustee has complied with Bankruptcy Code section 1125.

# ARTICLE XI

## CONDITIONS TO EFFECTIVE DATE

10.1.  <u>Conditions To Occurrence of Effective Date</u>.  Each and all of the following are conditions to the Plan becoming effective, and must be satisfied fully or jointly waived by the Debtor and the Committee:

(a)    the Confirmation Order has been entered by the Bankruptcy Court and has become a Final Order;

(b)    the Liquidating Trustee has accepted, in writing, the terms of his service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

(c)    the Liquidating Trustee has provided the bond required in the Confirmation Order; and

(d)    the Liquidating Trust has been established.

<u>Waiver of Conditions</u>.  The Trustee in his sole discretion, may waive the Final Order condition in subpart (a) above at any time from and after the Confirmation Date.  In that event, the Trustee will be entitled to render any or all of his performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived, including, but not limited to, the right to perform under any circumstances which would moot any appeal, review, or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review, or other challenge.

# ARTICLE XII

## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction for the following purposes:

11.1.    In General.    The Bankruptcy Court will retain jurisdiction to determine the allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Liquidating Trustee or any other party-in-interest entitled to proceed in that manner.  As part of such retained jurisdiction, the Bankruptcy Court will continue to determine the allowance of Administrative Claims and any request for payment thereof, including Professional Compensation and Reimbursement Claims.

11.2.    Plan Disputes and Enforcement.    The Bankruptcy Court will retain jurisdiction to determine any dispute which may arise regarding the interpretation of any provisions of the Plan. The Bankruptcy Court also will retain jurisdiction to enforce any provisions of the Plan and any and all documents relating to the Plan.  The Bankruptcy Court also will retain jurisdiction over any matter relating to the implementation and/or consummation of the Plan.

11.3.    Further Orders.    The Bankruptcy Court will retain jurisdiction to facilitate the performance of the Plan by entering, consistent with the provisions of the Plan, any further necessary or appropriate order regarding enforcement of the Plan and any provision thereof.  In addition, the Bankruptcy Court will retain jurisdiction to facilitate or implement the allowance, disallowance, treatment or satisfaction of any Claim, or any portion thereof, pursuant to the Plan.

11.4.    Governmental Units or Regulatory Agencies.    The Bankruptcy Court will retain jurisdiction to adjudicate any dispute or to hear and determine any action taken, proposed or threatened by any state, federal or local governmental regulatory agency or unit having or asserting jurisdiction or power over the conduct of the business of the Debtors and/or the Liquidating Trust.

11.5.    Final Decree.    The Bankruptcy Court will retain jurisdiction to enter an appropriate final decree in the Chapter 11 Cases.

11.6.  <u>Appeals</u>.  In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding the Plan or the performance thereof as may be necessary to consummate the Plan.

11.7.  <u>Executory Contracts and Unexpired Leases</u>.  The Bankruptcy Court will retain jurisdiction to determine any and all motions regarding the determination of a contract as an Executory Contract, assumption or rejection of any Executory Contracts and Unexpired Leases and any and all Claims arising therefrom.

11.8.  <u>Other Claims</u>.  The Bankruptcy Court will retain jurisdiction: (a) to hear and determine any claim or cause of action arising in or related to the Chapter 11 Cases; and (b) to adjudicate any causes of action or other proceedings currently pending or otherwise referenced here or elsewhere in the Plan, including, but not limited to, the adjudication of the Litigation Claims and any and all "core proceedings" under 28 U.S.C. § 157(b), which are or may be pertinent to the Chapter 11 Casse and which the Liquidating Trustee may deem appropriate to commence and prosecute in support of implementation of the Plan.

## ARTICLE XIII

## **GENERAL PROVISIONS**

12.1.  <u>Dissolution of the Committee</u>.  On the Effective Date, the Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Committee's attorneys, accountants and other agents shall terminate, provided, however, the Committee shall continue to

exist after such date solely with respect to (i) all applications filed pursuant to sections 330 and

331 of the Bankruptcy Code seeking payment of fees and expenses incurred by any professional,

and (ii) any motions or other actions seeking the enforcement or implementation of the

provisions of the Plan or the Confirmation Order.

12.2.    Oversight Committee.    On the Effective Date, the Committee shall be

reconstituted as a Post-Confirmation Oversight Committee and shall be comprised of at least

three (3) members of the Committee prior to the Effective Date. The Committee members who

are no longer members of the Committee as of the Effective Date shall be released and

discharged of and from all further authority, duties, responsibilities, and obligations related to

and arising from and in connection with the Chapter 11 Cases of the Debtors. In the event of the

death or resignation of any member of the Oversight Committee after the Effective Date, the

remaining members of the Oversight Committee shall have the right to designate a successor

from among the holders of Allowed Class 3 Claims. If an Oversight Committee member assigns

its entire Claim or releases the Debtor from payment of the entire balance of its Claim, such act

shall constitute a resignation from the Oversight Committee. Until a vacancy on the Oversight

Committee is filled, the Oversight Committee shall function in its reduced number. The

individual members of the Oversight Committee shall serve without compensation, except that

they shall be entitled to reimbursement of reasonable expenses by the Liquidation Trust pursuant

to the procedures set forth below. The Oversight Committee may engage and retain legal counsel

as needed; (b) On the Final Distribution Date and following all payments being made to holders

of Allowed Class 3 Claims under the Plan, the Oversight Committee shall be dissolved and the

remaining members thereof shall be released and discharged of and from all further authority,

duties, responsibilities, and obligations related to and arising from and in connection with the