Chapter 11 Cases of the Debtors, and the retention or employment of the Oversight Committee's attorneys, and other professionals, shall terminate.

After the Confirmation Date, the Liquidation Trust shall without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the legal counsel employed by the Oversight Committee in connection with the implementation and consummation of the Plan, the claims reconciliation process and any other matters as to which such professionals may be engaged. The fees and expenses of such professionals shall be paid within fifteen (15) Business Days after submission of a detailed invoice therefor to the Liquidation Trustee and the Oversight Committee. If the Liquidation Trustee or the Oversight Committee disputes the reasonableness of any such invoice, the Liquidation Trustee, Oversight Committee or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such fees and expenses shall be paid as provided for herein.

12.3.    <u>Termination of Fee Auditor.</u>    The Fee Auditor shall perform duties after the Effective Date for the sole purpose of reviewing the final fee applications of the Chapter 11 Professionals. The Fee Auditor shall submit a final invoice to the Liquidating Trustee within twenty (20) days after the hearing at which the Bankruptcy Court rules on all final Fee Applications of the Chapter 11 Professionals. Such final invoice shall be paid by the Liquidating Trustee, without need of Bankruptcy Court approval, within thirty (30) days of receipt of same, unless the Liquidating Trustee files with the Bankruptcy Court an objection to such final invoice within such thirty (30) days. The Bankruptcy Court hereby retains jurisdiction to decide any such objections, and to order the Liquidating Trustee to pay such invoice, or any part thereof.

12.4.    <u>Reimbursement of Dwek Expenses and Monthly Stipend</u>.    On December 27, 2007, the Court entered an order authorizing the payment of compensation to Solomon Dwek from the Estates.    That order provided for the payment of $12,800.00 per month for living expenses and permitted the reimbursement of expenses Dwek incurred in rendering services to the Trustee.    The Trustee intends to continue payments to Dwek on a modified basis post-confirmation until such time the Dwek's services are no longer needed as determined by the Trustee or by Order of the Court.    Commencing February 1, 2010, the Trustee reduced the monthly amount paid to Dwek from $12,800.00 to $10,000.00, plus more limited expense reimbursements.    The Trustee will continue to make these payments only on this modified basis and provide counsel to the Oversight Committee with a copy of the detail of such expense payments.

12.5.    <u>Exemption from Transfer Taxes</u>.    Pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by the Plan (including transfers of assets held by the Liquidating Trust) shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

12.6.    <u>Extension of Payment Dates</u>.    If any payment date falls due on any day which is not a Business Day, then such due date will be extended to the next Business Day.

12.7.    <u>Notices</u>.    Any notice required or permitted to be provided under the Plan will be in writing and served by regular postage prepaid first class mail, hand-delivery, facsimile or e-mail.

12.8.   <u>Closing of the Case</u>.   At such time as the Liquidating Trust has been fully administered (<u>i.e.</u>, when all things requiring action by the Liquidating Trustee have been done, and the Plan has been substantially consummated) and in all events within sixty (60) days after the Final Distribution Date, the Liquidating Trustee will file an application for Final Order showing that the Liquidating Trust has been fully administered.   The Liquidating Trustee will file an application for Final Order upon notice to the United States Trustee, after which an order approving the Liquidating Trustee's final report may be entered.   None of the filings contemplated in this paragraph, however, shall in any way delay the Liquidating Trustee's ability to request entry of the final decree by the Bankruptcy Court.

12.9.   <u>Interest</u>.   Whenever interest is to be computed under the Plan, interest will be simple interest and not compounded.   Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim will be entitled to interest accruing on or after the Petition Date on any Claim.

12.10.   <u>Confirmation By Non-Acceptance Method</u>.   The Trustee hereby requests, if necessary, confirmation of the Plan pursuant to Bankruptcy Code Section 1129(b) with respect to any impaired Class of Claims which does not vote to accept the Plan.

12.11.   <u>Vesting</u>.   As of the Effective Date, the Liquidating Trust will be vested with all property of the Debtors and the Estates, free and clear of all Claims, Liens, security interests, assignments, encumbrances, charges and other interests of Creditors, except as otherwise provided in the Plan.

12.12.   <u>Severability</u>.   If the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims as to which the

provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of the Plan.

12.13. <u>Governing Law</u>. Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflicts of law of thereof.

12.14. <u>No Admissions</u>. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by any entity with respect to any matter set forth herein.

12.15. <u>Exculpation</u>. Neither the Trustee, the Liquidating Trustee, the Committee and its members, the Oversight Committee, its members and professionals nor any of the Chapter 11 Professionals, will have or incur any liability to any Holder of a Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, affiliates or any of their successors or assigns, for any act or omission occurring after the Dwek Petition Date and in connection with, relating to, or arising out of the Chapter 11 Cases, formulation, negotiation or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the consummation of the Plan, Confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan except for their bad faith, willful malfeasance, reckless disregard of duty, gross negligence, willful fraud, willful misconduct, self-dealing or breach of fiduciary duty.

The Liquidating Trustee and his advisors, including attorneys and accountants, will be released from any and all claims of any parties on behalf of the Estate, the Liquidating Trust or

the Holder of a Claim, whether known or unknown, contingent or liquidated, for any act or omission on behalf of the Debtors or their Estates, whether such act or omission occurred pre-petition or post-petition.

12.16. The Liquidating Trust is deemed to release each person exculpated under this Subsection from any liability arising from any act or omission occurring after the Petition Date and in connection with, relating to or arising out of the Chapter 11 Case, except as provided herein.

12.17. <u>Successors and Assigns</u>. The rights and obligations of any Creditor or Holder of an Equity Interest referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors and personal representatives of such Creditor or such Holder of an Equity Interest.

12.18. <u>Fractional Dollars</u>. Notwithstanding any other provision of the Plan, no payments or distributions under the Plan of or on account of fractions of dollars will be made. When any payment or distribution of or on account of a fraction of a dollar to any holder of an Allowed Claim would otherwise be required, the actual payment or distribution made will reflect a rounding-up of such fraction to the nearest whole number.

12.19. <u>Minimum Distribution</u>. The Liquidating Trustee shall not be required to distribute Cash to any Creditor if the amount of Cash to be distributed to such Creditor is less than $50.00.

12.20. <u>Payment of Statutory Fees and Filing of Quarterly Reports</u>. All fees payable pursuant to 28 U.S.C. Section 1930, as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, pending entry of a final decree. All quarterly reports of disbursements required to be filed by

applicable bankruptcy law will be filed in accordance with applicable bankruptcy law.  The

United States Trustee will continue to be paid by the Liquidating Trustee until entry of the final

order or decree, or upon conversion or dismissal of the Bankruptcy Cases.

I:\My Documents\Dwek Plan\PlanSecondAmendedClean(DwekFinal).doc

EXHIBIT "A"

# LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "Agreement"), dated as of _____, 2010, is made by Charles A. Stanziale, Jr. in both his capacities as the Chapter 11 Trustee for the consolidated Estates of Solomon Dwek *et al.*., and as the Liquidation Trustee (the "Trustee") for the Beneficiaries of this Trust (defined below) to act on their behalf.[1]

## RECITALS

A.      On February 9, 2007 (the "Dwek Petition Date"), certain creditors of Solomon Dwek ("Dwek" or "Individual Debtor") filed an involuntary bankruptcy petition against him pursuant to Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code ") with the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court" or "Court") bearing Case No. 07-11757 (KCF) (the "Chapter 7 Case"). At Dwek's request, on February 22, 2007, the Court entered an order converting the Chapter 7 Case to a chapter 11 case (the "Dwek Chapter 11 Case").

B.      Subsequent to the Dwek Petition Date, Dwek caused voluntary petitions to be filed on behalf of the Jointly Administered Debtors[2] (the Individual Debtor and Jointly

---

[1] Capitalized terms used herein but not defined shall have the meanings set forth in the Plan (defined below).

[2] The jointly administered debtors include: Solomon Dwek, Case No. 07-11757 (KCF); 10 Neptune, LLC, Case No. 07-11974 (KCF); SEM Realty Associates LLC, Case No. 07-11976 (KCF); Deal Golf, LLC, Case No. 07-11982 (KCF); Dwek Trenton Gas, LLC Case No. 07-12794 (KCF); Neptune Gas, LLC, Case No. 07-12796 (KCF); Route 33 Medical, LLC, Case No. 07-12798 (KCF); 1111 Eleventh Avenue, LLC, Case No. 07-12799 (KCF); Dwek North Olden, LLC, Case No. 07-12800 (KCF); Dwek State College, LLC, Case No. 07-12802 (KCF); 1631 Highway 35, LLC, Case No. 07-16041 (KCF); 167 Monmouth Road, LLC, Case No. 07-16045 (KCF); 2100 Highway 35, LLC, Case No. 07-16048 (KCF); 230 Broadway, LLC, Case No. 07-16049 (KCF); 264 Highway 35, LLC, Case No. 07-16052 (KCF); 374 Monmouth Road, LLC, Case No. 07-16053 (KCF); 55 North Gilbert, LLC, Case No. 07-16054 (KCF); 601 Main Street, LLC, Case No. 07-16055 (KCF); 6201 Route 9, LLC, Case No. 07-16057 (KCF); Aberdeen Gas, LLC, Case No. 07-16058 (KCF); Bath Avenue Holdings, LLC, Case No. 07-16060 (KCF); Belmar Gas, LLC, Case No. 07-16061 (KCF); Berkeley Heights Gas, LLC, Case No. 07-16062 (KCF); Brick Gas, LLC, Case No. 07-16064 (KCF); Dover Estates, LLC, Case No. 07-16065 (KCF); Dwek Gas, LLC, Case No. 07-16066 (KCF); Dwek Hopatchung, LLC, Case No. 07-16067 (KCF); Dwek Income, LLC, Case No. 07-16068 (KCF); Dwek Ohio, LLC, Case No. 07-16069 (KCF); Dwek Pennsylvania, LP, Case No. 07-16071 (KCF); Dwek Wall, LLC, Case No. 07-16072 (KCF); Dwek Woodbridge, LLC, Case No. 07-16073 (KCF); Kadosh, LLC, Case No. 07-16074 (KCF); Lacey Land, LLC, Case No. 07-16075 (KCF); Monmouth Plaza, LLC, Case No. 07-16076 (KCF); P & Y Holdings, LLC, Case No. 07-16077 (KCF); Sugar Maple Estates, LLC, Case No. 07-16078 (KCF); West Bangs Avenue, LLC, Case No. 07-16079 (KCF); Beach Mart, LLC, Case No. 07-16104 (KCF); Seven Broad, LLC, Case No. 07-17124 (KCF); Dwek Apartments, LLC, Case No. 07-18315 (KCF); Dwek Raleigh, LLC, Case No. 07-18316 (KCF); Greenwood Plaza Acquisitions, LLC, Case No. 07-18317 (KCF); Sinking Springs II, LP, Case No. 07-18318 (KCF); Sinking Springs, LP, Case No. 07-18320 (KCF); Neptune Medical, LLC, Case No. 07-18766 (KCF); Bridgeton Building, LLC, Case No. 07-19629 (KCF); Dwek Properties, LLC, Case No. 07-20939 (KCF); WLB Center, LLC, Case No. 07-21752 (KCF); Dwek Branches, LLC, Case No. 07-22035 (KCF); Dwek Assets, LLC, Case No. 07-22036 (KCF); Asbury Gas, LLC, Case No. 07-22632 (KCF); Jemar Enterprises, LLC, Case No. 07-22633 (KCF); Melville Dwek, LLC, Case No. 07-22634 (KCF); Newport WLB, LLC, Case No. 07-22635 (KCF); Red Bank Gas, LLC, Case No. 07-22636 (KCF); WLB Highway, LLC, Case No. 07-22638 (KCF); Belmont Properties, LLC, Case No. 07-22898 (KCF); Tinton Falls Land, LLC, Case No. 07-23872 (KCF); Copper Gables, LLC, Case No. 07-24829 (KCF); Dwek Homes, LLC, Case No. 07-24832 (KCF); Myrtle Avenue Land, LLC, Case No. 07-24835 (KCF); Dwek Wall Gas, LLC, Case No. 07-24836 (KCF); Grant Avenue Estates, LLC, Case No. 07-24837 (KCF); Neptune City Stores, LLC, Case No. 07-24839 (KCF), 170 Broad, LLC, Case No. 07-24922 (KCF); Dwek Land, LLC, Case No. 07-25349 (KCF); Dwek Motors, LLC, Case No. 07-25350 (KCF); Waretown Shops, LLC, Case No. 07-25668 (KCF); Monmouth Consulting Services, LLC, Case No. 07-25913 (KCF); Monmouth Road Brokers, LLC, Case No. 07-27357 (KCF), Winston Circle, LLC, Case No. 08-15790 (KCF); Sinking Springs Outparcel, LP, Case No. 08-26159 (KCF); Deal Road Land Holdings, LLC, Case No. 08-26200 (KCF); Corbett Holdings I, LLC, 09-18421 (KCF); 1806 Holdings, (continued...)

Administered Debtors are hereafter collectively referred to as the "Debtors" or Jointly Administered Debtors).

C.    Charles A. Stanziale, Jr. was thereafter appointed the Chapter 11 Trustee of the Jointly Administered Debtors.

D.    On _____, 2010, the Bankruptcy Court confirmed the Second Amended Plan of Orderly Liquidation proposed by the Chapter 11 Trustee appointed in the Debtors' Chapter 11 Cases, dated _____, 2010 (the "Plan"). A copy of the Order confirming the Plan and the Plan is annexed hereto as Exhibit A. Under the Plan, certain assets are transferred to the Liquidating Trust (as defined below) for the benefit of the Debtors' creditors as provided in the Plan.

E.    Upon the terms and subject to the conditions of this Agreement, the Trustee has agreed to accept the Liquidating Trust Estate (defined below) in trust and to hold and administer the Liquidating Trust Estate for the benefit of the Beneficiaries (defined below).

## ARTICLE I
### TERMS

1.    <u>Conveyance of Liquidating Trust Estate</u>.  Pursuant to the Plan, the Consolidated Debtors will transfer and convey it assets to the Trustee to be held in trust hereunder.

2.    <u>Definitions</u>.    For purposes of this Agreement, unless the context otherwise requires, the following terms will have the definitions indicated.  Terms not defined herein will have the meanings stated in the Plan.

a.    **"Available Cash"** shall mean all Cash held by the Liquidating Trust, less the Expense Reserve Account and the Disputed Claims Reserve Account.

b.    **"Beneficial Interests"** means, as to a particular Beneficiary, the pro rata share of beneficial interests in the Trust Assets that have been allocated to the particular Beneficiary pursuant to the Plan; and, as to all the Beneficiaries, means the total amount of such interests in the Trust Assets.

c.    **"Beneficiary"** means each of the Holders and their permitted transferees as the same shall appear in the records of the Trustee from time to time.

---

(…continued)

LLC, 09-19901 (KCF); Corlies Avenue Land, LLC, 09-37142 (KCF); Little Silver Retail, LLC, 09-40968 (KCF); Ocean Circle Holdings, LLC, 09-40969 (KCF), Little Silver Gas, LLC (09-40970 (KCF); and 1400 Offices, LLC, 09-40971 (KCF).(the "Jointly Administered Debtors" or "Debtors").

      d.    **"General Trust Account"** means an account, or accounts, established by the Trustee in accordance with the Agreement, into which, from time to time, Trust Cash (including, Available Cash and cash received from the Causes of Action) may be deposited in the Trustee's sole discretion.

      e.    **"Holders"** means, collectively, the holders of Allowed Claims under the Plan, whose Allowed Claims have not been satisfied prior to the Effective Date.

      f.    **"Liquidating Trust Estate"** means, collectively: (i) Trust Assets, (ii) obligations incurred hereunder, and (iii) such additional or different corpus as the Trustee may from time to time hold in trust.

      g.    **"Liquidating Trust"** means the trust created pursuant to this Agreement in accordance with the Plan.

      h.    **"Trust Cost"** means all costs, expenses, liabilities and obligations incurred by the Trust and Trustee in administering and conducting the affairs of the Trust, and those incurred by the Trust, Trustee and Trust Committee in otherwise carrying out the terms of the Trust and the Plan on behalf of the Trust and the Debtor, including without limitation, the fees and expenses of the Trustee and professionals and other persons employed by the Trust or Trustee, and the expenses and obligations otherwise defined as a Trust Cost in the Agreement or the Plan.

      i.    **"Trustee"** means the Trustee named in this Agreement and his respective successors.

      j.    **"Trust Register"** means a register of the Beneficial Interests kept by the Trustee.

## ARTICLE II
### THE TRUST

    1.    <u>Creation and Name</u>. There is hereby created the Trust, which shall be known as the "Solomon Dwek Creditors Liquidation Trust," and is the same Trust referred to as the Liquidating Trust under the Plan. The Trustee may conduct the affairs of the Trust under the name of "Solomon Dwek Creditors Liquidation Trust."

    2.    <u>Nature and Purpose of Trust</u>. The purposes of the Trust are to hold, administer and liquidate the Liquidating Trust Estate, and to collect and distribute to the Beneficiaries the income and the proceeds of the Liquidating Trust Estate, all in accordance with the provisions of the Plan. The Liquidating Trust is a liquidating trust pursuant to which the Trustee is to hold the Liquidating Trust Estate and dispose of all or part of the same in accordance with this Agreement and the Plan and the Trust shall have no objective of continuing or engaging in any trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust. It is intended that the Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations. In furtherance of this objective, the Trustee shall, in its business judgment, make continuing best

efforts to (i) dispose of or liquidate the Trust Assets, prosecute and defend Litigation Claims and resolve claims and, (ii) make timely distributions as determined by the Trustee and approved by the Bankruptcy Court and in accordance with the Agreement. This Agreement is intended to create a trust and a trust relationship and is to be governed and construed in all respects as a trust. The Liquidating Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, joint venture, corporation, joint stock company or association, nor shall the Trustee or the Beneficiaries, or any of them, for any purpose be, or be deemed to be, or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers. The relationship of the Beneficiaries to the Trustee shall be solely that of beneficiaries of a trust and shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement.

3.    Unknown Property and Liabilities.    The Trustee shall be responsible only for that property delivered to him, and shall have no duty to make, nor incur any liability for failing to make, any search for unknown property or for any liabilities except as provided herein or in the Plan.    To the extent that property heretofore unknown but later discovered to be properly property of any of the Jointly Adminstered Debtors/the Consolidated Debtors then such property shall be transferred to the Trust and administered as set forth herein.

4.    Limitation of Liability.    Neither the Trustee (subject to the provisions of 3.13 herein), nor any of his attorneys or other professionals, nor the Oversight Committee, it members or its attorneys, nor any of the Beneficiaries shall be personally liable with respect to any liabilities or obligations of the Trust or any liabilities or obligations relating to the Liquidating Trust Estate, including, without limitation, those arising under this Agreement or with respect to the Liquidating Trust or the Liquidating Trust Estate, except for gross negligence, fraud or wilfull misconduct, and all persons dealing with the Liquidating Trust must look solely to the Liquidating Trust Estate for the enforcement of any claims against the Trustee, the Liquidating Trust or the Liquidating Trust Estate.

5.    Duration of Liquidating Trust.    The Trust shall terminate no later than the third (3rd) anniversary of the Effective Date; provided, however, that, on or prior to the date six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, including the Trustee, may extend the term of the Trust, upon notice to all parties in interest, if it is necessary to complete the liquidation of the Trust Assets.    Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained at least six (6) months prior to the expiration of each extended term; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the trust as a liquidating trust within the meaning of Treas. Reg. §301.7701-4(d) for federal income tax purposes.    The Trustee shall further cause the Trust to be terminated within three (3) months after making its final Distribution.

6.    Continuance of Liquidating Trust for Winding Up.    After the termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Trustee shall continue to act as such until his duties have been fully performed. Upon distribution of the entire Liquidating Trust Estate, the Trustee shall retain for a period of two (2) years the books, records, Beneficiary lists, and certificates and other documents and files which

4

shall have been delivered to or created by the Trustee. At the Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the Liquidating Trust. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Liquidating Trust and final distribution of the entire Liquidating Trust Estate, the Trustee shall have no further duties or obligations hereunder. Funds shall be set aside for the storage and preservation of such records of the Trust as required herein.

7.    Administration of Trust Estate.  On or before the Effective Date, the Chapter 11 Trustee will provide the Trust with a list of all unpaid obligations of the Debtors and claims against the Debtors, which list shall include the names and complete and correct mailing addresses of those creditors, as well as the Debtors' books and records. The Trust shall pay and reserve for all obligations and claims against the Debtors pursuant to the terms of the Plan. Within the time frames stated in the Plan, or as soon thereafter as practicable, the Trust shall make the distributions from the Liquidating Trust to Beneficiaries in accordance with the terms of the Plan.

## ARTICLE III
## THE TRUSTEE, HIS POWERS AND LIMITATIONS

1.    Title.  Legal title to all Trust Assets shall be vested in the Trustee, except that the Trustee shall have the power to cause legal title (or evidence of title) to any of the Trust Assets to be held by any nominee or Person, on such terms, in such manner, and with such powers as the Trustee may determine.

2.    Management Power.  Subject to Article V herein, the Trustee shall have control and authority over the Trust Assets, over the management and disposition thereof, and over the management of the Trust to the same extent as if the Trustee were the sole owner thereof in its own right.

3.    Bankruptcy Court Approval of Trustee Actions.  Except as provided in the Plan or otherwise specified in the Agreement, the Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court. The Trustee shall exercise his business judgment for the benefit of the Beneficiaries in order to maximize the value of the Trust Assets and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, the Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Trustee with respect to the Trust Assets, this Trust, the Agreement, the Plan, or the Debtors, including the administration and distribution of the Trust Assets. The Bankruptcy Court shall retain jurisdiction for such purposes and shall approve or disapprove any such proposed action upon motion by the Trustee. In addition, the Trustee shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Trust Asset free and clear of any and all liens, claims and encumbrances and may appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Plan, the Trust, or the Debtors.

5

4.    <u>Specific Powers of Trustee</u>.  The Trustee shall have all powers specifically set forth in the Plan.  Subject to the limitations stated below, the Trustee also shall have the following specific powers in addition to any powers conferred upon him by any other provision of this Agreement or by virtue of any present or future statute or rule of law in all instances without any action or consent required by the Beneficiaries:

a.    liquidate any and all Assets in accordance with the Plan;

b.    undertake any actions required to liquidate the Assets for the benefit of creditors and the Beneficiaries as provided in the Plan and take all actions to preserve the Trust Assets;

c.    collect, hold, manage, liquidate, sell, dispose of or deal in any manner, and distribute the Assets (and the proceeds thereof) in accordance with the terms of the Plan;

d.    review, reconcile, or settle all Claims against the Debtors and file and litigate, if necessary, objections to the Allowance of Claims;

e.    pay and discharge any costs, expenses, fees, or obligations deemed necessary or appropriate to preserve or enhance the value of the Assets and discharge duties under the Plan;

f.    open and maintain bank accounts, deposit funds, draw checks and make disbursements in accordance with the terms of the Plan;

g.    invest Trust Cash, pending distributions consistent with the requirements of the Bankruptcy Code or any orders of the Bankruptcy Court modifying such requirements;

h.    employ such persons (including professionals) as the Trustee deems necessary and appropriate to assist him in fulfilling his obligations under the Plan and pay the reasonable fees of such Persons, and reimburse such Persons for their reasonable out-of-pocket costs and expenses, as agreed between the Trustee and such Persons.  To the extent that the Trustee is licensed and capable of doing so, the Trustee may serve as his own attorney in conjunction with any of the rights, powers, and duties of the Trustee under the Plan;

i.    in general, without in any way limiting any of the foregoing, deal with the Assets or any part or parts thereof, in all other ways as would be lawful for any Person owning the same to deal therewith, but in all events subject to and consistent with the terms of the Plan;

j.    pursue, defend or participate in any litigation or any other proceeding, including without limitation, the Litigation Claims commenced by the Chapter 11 Trustee, the Debtor or the Unsecured Creditors and, when appropriate, settle such actions and Claims with the approval of the Bankruptcy Court;

k.    establish and maintain such funds, reserves and accounts as may be necessary to carry out the provisions of the Plan, including without limitation the Expense Reserve Account, the General Trust Account, and the Disputed Claims Reserve Accounts, within

the Trust estate, as deemed by the Trustee in his discretion to be useful in carrying out the purposes of the Trust;

        l.     file all returns of the Trust as a grantor trust for the Beneficiaries pursuant to Treasury Regulation section 1.671-4(a) and any other tax returns that may be required with respect to the Trust, and pay any taxes owed by the Trust, or that may be paid by the Trust on behalf of the Holders of Disputed Claims, with respect to the Debtors or the Trust; and

        m.     without limitation, exercise such other powers and duties as necessary or appropriate in the discretion of the Trustee to accomplish the purposes of the Plan.

        5.     <u>Representative Status of Trustee</u>.  The Trustee will directly and indirectly be a representative of the Debtors' Estate and the Creditors, and will have the rights and powers provided for in the Bankruptcy Code in addition to all rights and powers granted in the Agreement.  The Trustee will be the successor-in-interest to the Debtors with respect to any action, which was or could have been commenced by the Debtors or Chapter 11 Trustee prior to the Effective Date, and shall be deemed substituted for the Debtors or Chapter 11 Trustee as the party in such action.  All actions, claims, rights or interests constituting Trust Assets (including Causes of Action) are preserved and retained and may be enforced by the Trustee as a representative of the Debtors' estate.  In addition, the Trustee will be the representative of the Unsecured Creditors, as a class, with respect to any and all claims or causes of action that the Holders of Unsecured Creditors have as a Class, as of the Petition Date, against the Debtor, its officers or directors, without prejudice to the rights of the individual Creditors to pursue such claims or causes of action on their own behalf.  The Trustee will be a party in interest as to all matters over which the Bankruptcy Court has jurisdiction or retains jurisdiction under the Plan.

        6.     <u>Management/Dissolution of Debtors</u>.  The Trustee, on behalf of the Debtors, shall have the obligation and the power, to the extent necessary, to undertake any and all action necessary to (i) dissolve and wind-up the Debtor and undertake any action on behalf of the Debtors to implement such dissolution and wind-up, including without limitation, the preparation, execution and filing of articles of dissolution and other corporate documents, any federal, state and local tax returns and providing for payment of any taxes related thereto consistent with the Plan; (ii) manage the Debtors to the extent not inconsistent with the Plan; (iii) otherwise cause Debtors to comply with its obligations and duties under the Plan; (iv) to close the Chapter 11 Cases pursuant to 11 U.S.C. § 305(a); and (v) execute and deliver documents and take actions on behalf of the Debtors as are necessary or appropriate after the Effective Date.  All services rendered and expenses incurred by the Trustee with respect to the foregoing shall be paid by the Trust as a Trust Cost.

        7.     <u>Commingling of Trust Assets</u>.  The Trustee shall not commingle any of the Trust Assets with its own property or the property of any other Person.

        8.     <u>Employment and Compensation of Professionals</u>.  The Trustee shall employ those Chapter 11 Professionals, and if necessary, additional professionals, who in his discretion will be necessary to carry out the provisions of this Agreement, including, but not limited to pursuing and prosecuting the Litigation Claims and Claims reconciliation, and shall have the authority to employ and compensate attorneys, accountants, managers, employees, financial advisors,

experts, investment advisors and other professionals as determined from time to time by the Trustee to render services for the Trust, Trustee or the Debtors. The Liquidating Trustee and the Liquidating Trustee Professionals shall be compensated for their services on a monthly basis in accordance with the hourly fees customarily charged by the Liquidating Trustee and the Liquidating Trustee Professionals for professional services. The Liquidating Trustee and the Liquidating Trustee Professionals shall provide the chairperson of the Oversight Committee monthly fee statements. The Oversight Committee shall thereafter have ten (10) calendar days to provide the Trustee with any written objection to such monthly fee statement. If no such objection is received, the Trustee may pay such Liquidating Professional's monthly fee requested. If there is an objection received and such professional and the Oversight Committee despite their best efforts are unable to agree on the resolution of such objection then the Oversight Committee shall within twenty (20) days of the receipt of such monthly fee statement file an objection with the Bankruptcy Court on notice to such professional and the Liquidating Trustee. The Bankruptcy Court shall retain jurisdiction to resolve any such dispute.

The Oversight Committee may engage and retain legal counsel as needed. The Liquidation Trust shall without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the legal counsel employed by the Oversight Committee in connection with the implementation and consummation of the Plan, the claims reconciliation process and any other matters as to which such professionals may be engaged. The fees and expenses of such professionals shall be paid within fifteen (15) Business Days after submission of a detailed invoice therefor to the Liquidation Trustee and the Oversight Committee. If the Liquidation Trustee or the Oversight Committee disputes the reasonableness of any such invoice, the Liquidation Trustee, Oversight Committee or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such fees and expenses shall be paid as provided for herein.

9.    Removal.  The Liquidating Trustee may be removed for cause by order of the Bankruptcy Court, which order may be sought by motion by at least three (3) beneficiaries of the Liquidating Trust whose individuals Claims are not less than $50,000.00 and in the aggregate not less than $250,000.00, provided, however, such removal shall be in good faith and can be challenged by the Trustee making application to the Bankruptcy Court during which challenge period the Trustee shall remain with all rights and obligations under this Agreement.

10.    Costs.  All fees, costs and expenses incurred by the Trustee and the Trust in the exercise of any right, power or authority conferred herein shall be a Trust Cost.

11.    Limitations on Trustee.  The Trustee shall not at any time, on behalf of the Liquidating Trust or Beneficiaries: (i) enter into or engage in any trade or business, and no part of the Liquidating Trust Estate or the proceeds, revenue or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, or (ii) except as provided below, reinvest any Assets.

a.    The Trustee may only invest funds held in the Liquidating Trust Estate consistently with the requirements of the Bankruptcy Code or any order of the Bankruptcy Court modifying such requirements and, provided that the Trustee does so, he shall have no liability in

the Event of Insolvency of any institution in which he has invested any funds of the Liquidating Trust Estate.

    b.  The Trustee shall be restricted to the holding, collection, conservation, protection and administration of the Liquidating Trust Estate in accordance with the provisions of this Agreement and the Plan, and the payment and distribution of amounts as set forth herein for the purposes set forth in this Agreement.  Any determination by the Trustee as to what actions are in the best interests of the Liquidating Trust shall be determinative.

   12.  <u>Liability of Trustee and Oversight Committee</u>.  The Trustee, and any persons employed by Trustee and acting on behalf of the Trustee, the Oversight Committee, its members or any persons employed by the Oversight Commitee, shall not be liable to the Liquidating Trust or any Beneficiary for any act or omission of the Trustee, Beneficiary, or agent of the Liquidating Trust, or be held to any personal liability whatsoever in tort, contract or otherwise in connection with the affairs of the Liquidating Trust, except for liabilities arising from the Trustee's gross negligence, fraud or willful misconduct.  The Trustee shall not be liable except for the performance of any duties and obligations as are specifically set forth in this Agreement and no implied covenants or obligations shall be read into this Agreement against the Trustee.  In addition to, and not in limitation of the foregoing, no successor Trustee shall in any way be liable for the acts or omissions of any Trustee or agent of the Liquidating Trust occurring prior to the date on which he or she became a Trustee.

   13.  <u>Express Exculpatory Clauses in Instruments</u>.  As far as practicable, the Trustee shall cause any written instrument creating an obligation of the Liquidating Trust to include a reference to this Agreement and to provide that neither the Beneficiaries nor the Trustee shall be liable thereunder and that the other parties to such instrument shall look solely to the Liquidating Trust Estate for the payment of any claim thereunder or the performance thereof; provided, however, that the omission of such provision from any such instrument shall not render any Beneficiary or the Trustee liable nor shall the Trustee be liable to anyone for such omission.

   14.  <u>Bond</u>.  On or before the Effective Date, the Trustee shall, at the expense of the Liquidating Trust, deliver a bond in the amount provided in the Confirmation Order to secure the Trustee's proper performance of his duties under the Plan and hereunder (the "Bond").

   15.  <u>Indemnification of Trustee</u>.  The Trustee shall be entitled to indemnification out of the Liquidating Trust Estate against any losses, liabilities, expenses (including attorneys' fees and disbursements and the cost of procuring the Bond), damages, taxes, suits or claims (collectively, "Expenses") which the Trustee may incur or sustain by reason of being or having been a Trustee of the Liquidating Trust or for performing any functions incidental to such service; provided, however, that the foregoing shall not relieve the Trustee from liability for gross negligence, fraud or willful misconduct.  The indemnification provided in this paragraph shall not be deemed exclusive of any other rights to which the Trustee may be entitled pursuant to any other agreement or otherwise, both as to action as Trustee and as to action in any other capacity while holding such office, and shall continue as to a person or entity that has ceased to be a Trustee and shall inure to the benefit of the successor and legal representatives of such individual or entity.

16.    <u>Protection of Persons Dealing with the Trustee</u>.  Any transfer of the Liquidating Trust Estate, or part thereof, shall bind the Beneficiaries and shall be effective to transfer all right, title and interest of the Trustee and the Beneficiaries in and to the Liquidating Trust Estate or such part thereof, provided that the Trustee may recover the amount of any distribution to a Beneficiary that the Beneficiary was not entitled to receive under the terms of the Plan.  No purchaser of the Liquidating Trust Estate or any portion thereof shall be required to inquire as to the authorization, necessity, expediency or regularity of such transfer or as to the application of any proceeds thereof.  Any person dealing with the Trustee shall be fully protected in relying upon a certificate signed by the Trustee that he has authority to take any action under this Agreement.

17.    <u>Compensation of Trustee</u>.  The Trustee shall be entitled to compensation and reimbursement of expenses in accordance with the market rates generally charged by the Liquidating Trustee for his services.  In addition, the Trustee shall be reimbursed out of the Liquidating Trust Estate for all expenses (including fees and expenses of legal counsel and other advisors) reasonably incurred in accordance with this Agreement.  The Trustee shall have the right to deduct from the Liquidating Trust Estate any funds deemed necessary by the Trustee to pay for any unpaid compensation for his services and to pay any loss, cost, damage, fee or expense (including counsel fees) incurred by the Trustee as a result of his acting as Trustee hereunder or in connection with the performance of his duties under this Agreement.

18.    <u>Resignation of Trustee</u>.  The Liquidating Trustee may resign at any time by filing a written notice of resignation to the Bankruptcy Court with notice to beneficiaries.  Such resignation will be effective the earlier of thirty (30) days after filing same with the Bankruptcy Court or when a successor is appointed as provided herein.

19.    <u>Appointment of Successor Trustee.</u>  If, at any time, the Trustee shall give notice of his intent to resign or be removed or shall for any reason become incapable of acting hereunder, the Oversight Committee shall designate a successor Trustee, by written application submitted to the Court on five days notice to the Trust Beneficiaries, which application shall be filed within fourteen (14) days of the Oversight Committee being notified of such resignation, removal or inability to act hereunder.  In the event that the Oversight Committee does not designate a successor Trustee or such designated Trustee is not approved, the Court shall designate a successor Trustee.

20.    <u>Trust Continuance</u>.  The death, resignation, incompetency or removal of the Trustee shall not operate to terminate the Trust or to revoke any existing agency created pursuant to the terms of this Agreement or to invalidate any action theretofore taken by the retiring Trustee.  In the event of the resignation or removal of the Trustee, such retiring Trustee shall (a) promptly execute and deliver such documents, instruments and other writings as may be requested by the successor Trustee to effect the change in the retiring Trustee's capacity under this Agreement and the conveyance of the Trust Estate then held by the retiring Trustee to its successor and (b) otherwise cooperate in effecting such successor Trustee's assumption of its obligations and functions.

21.  <u>Acceptance of Appointment by Successor Trustee</u>.  Any successor Trustee appointed hereunder shall execute an instrument accepting such appointment and assuming all of the obligations of the retiring Trustee hereunder and thereupon the successor Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of its predecessor in the Liquidating Trust hereunder with like effect as if originally named herein; but the retiring Trustee nevertheless shall, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee upon the trust herein expressed, all the estates, properties, rights, powers and trusts of such retiring Trustee, and shall duly assign, transfer, and deliver to such successor Trustee all property and money held hereunder.

## ARTICLE IV
## OBLIGATIONS OF THE TRUSTEE

1.  <u>Investment Guidelines</u>.  Trust Cash held pending distribution, including Trust Cash held in reserves, shall, to the extent permitted by applicable law, be invested by the Trustee as may be deemed appropriate in the discretion of the Liquidating Trustee, or by (i) direct obligations of, or obligations guaranteed by, or obligations secured by, the United States of America (including without limitation United States Treasury Bills); (ii) obligations of any agency or corporation that is or may hereafter be created by or pursuant to an Act of the Congress of the United States as an agency or instrumentality thereof, or (iii) demand deposits or short-term certificates of deposit at any bank or financial institution approved by the U.S. Trustee, provided however, that the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust, within the meaning of Treasury Regulation section 301.7701-4(d) may be permitted to hold, pursuant to any amendment or addition to the Internal Revenue Code or to the Treasury Regulations, or any modification in IRS guidelines whether set forth in IRS rulings, other IRS pronouncements, or otherwise.  Such investments shall mature in such amounts and at such times as, in the judgment of the Trustee at the times such investments are made, are necessary, or are desirable with a view to providing funds when needed to make payments from the Trust Assets.  Any investment purchased with the Trust Assets shall be deemed a part of the Trust Assets.  All interest, distributions, dividends and proceeds received by the Trustee in respect of such investments shall be a part of the Trust Assets.

2.  <u>Access to Information by Beneficiaries</u>.  Each Beneficiary shall have access to the business records of the Trust for the purpose of obtaining information relating to the management of Trust Assets for any purpose reasonably related to the interests generally of the Beneficiaries, so long as access is reasonably exercised during normal business hours (after at least five business days notice to the Trustee), does not constitute an undue burden on the Trustee, and is not detrimental to the Trust or other Beneficiaries.  The Trustee may, in its sole discretion, condition such access on the execution of an appropriate confidentiality agreement or order of the Bankruptcy Court.

3.  <u>United States Trustee Fees and Reports</u>.  After the Effective Date, the Trust shall pay as a Trust Cost all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Trust's disbursements as required under the Confirmation Order until the entry of a final decree or the

11

closing of the Chapter 11 Cases.  After the Confirmation Date, the Trust shall prepare and serve on the Office of the U.S. Trustee such quarterly disbursement reports for the Trust as required by the U.S. Trustee for as long as the Chapter 11 Case remains open.

4.    No Implied Obligations.  No other further covenants or obligations of the Trustee shall be implied into the Agreement.  The Trustee shall not be responsible in any manner whatsoever for the correctness of any recital, statement, representation, or warranty herein, or in any documents or instrument evidencing or otherwise constituting a part of the Trust Assets.

**ARTICLE V**
BENEFICIAL INTERESTS

1.    Allocation of Beneficial Interests to Holders of Claims.  On the Effective Date or as soon thereafter as practicable pursuant to the terms and conditions set forth in the Plan, each Holder of an Allowed Unsecured Claim shall be allocated its Pro Rata Share of Beneficial Interests on account of its Allowed Unsecured Claim.

2.    Allocation of Beneficial Interests to Holders of Disputed Claims or Interests.  No Beneficial Interest shall be allocated to the Holder of a Disputed Claim unless and until such Claim has been Allowed.

3.    Register Entries Regarding Beneficial Interests.    The Trustee shall make appropriate notations in the Trust Register and calculate the following ratios prior to each distribution to Beneficiaries:

a.    the Beneficial Interest and Allowed Claim held by each Beneficiary; and

b.    the Beneficial Interest that would otherwise be attributable to the Holder of a Disputed general Unsecured Claim were such claim to become an Allowed Claim.

4.    Representation of Beneficial Interest.    The Beneficial Interests shall be uncertificated.  The Beneficial Interests shall be represented by appropriate book entries in the Trust Register.

5.    Trust Register.

a.    Register of Beneficial Interests.  The Trustee shall cause the Trust Register to be kept at the office of the Trustee or at such other place or places that shall be designated by the Trustee from time to time.

b.    Access to Register by Beneficiaries.    Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Trustee, and in accordance with reasonable regulations prescribed by the Trustee, to inspect and at the expense of the Beneficiary make copies of the Trust Register, in each case only for a purpose reasonable and related to such Beneficiary's Beneficial Interest in the Trust.

c.  Absolute Owners.  The Trustee may deem and treat the Beneficiary of record as determined pursuant to the Agreement as the absolute owner of such Beneficial Interests for the purpose of receiving Distributions and payment thereon or on account thereof and for all other purposes whatsoever.

d.  Changes to the Trust Register.  The Trust Register shall be amended to reflect the resolution of a Disputed Claim.

6.  Rights of Beneficiaries.  Each Beneficiary shall be entitled to participate in the rights due to a Beneficiary hereunder.  Each Beneficiary shall take and hold his or her Beneficial Interest subject to all the terms and provisions of this Agreement and the Plan.  Beneficial Interests are in all respects personal property, and upon the death, insolvency or incapacity of an individual Beneficiary, such Beneficiary's interest shall pass to the legal representative of such Beneficiary and such death, insolvency or incapacity shall not terminate or affect the validity of this Agreement.  A Beneficiary shall have no title to, right to, possession of, management of, or control of, the Liquidating Trust Estate except as herein expressly provided.  No surviving spouse, heir or devisee of any deceased Beneficiary shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the Liquidating Trust Estate, but the whole title to all the Liquidating Trust Estate shall be vested in the Trustee and the sole interest of the Beneficiaries shall be the rights and benefits given to such persons under this Agreement.  Notwithstanding anything to the contrary, this Agreement and the Plan do not create for, or give to, any Creditor or Beneficiary any direct legal interest in, or property to, any of the assets held by the Liquidating Trust, but does create Beneficial Interest to the extent of each Beneficiary's respective Pro Rata share.

7.  Limit on Transfer of Interests of Beneficiaries.  Unless a transfer complies with provisions hereof, Beneficial Interests may not be transferred in whole or in part.  The Trustee will only recognize a document evidencing such transfer if:  (a) the transferor has signed the document and the document has been acknowledged; or (b) the transfer is by succession or will and the document is a certified copy of a court record or court-filed document evidencing such transfer, and in either case, the Trustee is satisfied by legal opinion or otherwise that the transfer is exempt from registration or is qualified under state or federal securities laws governing the transfer of securities.  Any other attempted transfer shall be void *ab initio*, the Trustee shall not be required to recognize any equitable or other claims to sell interest by the transferee thereof, and the named Beneficiary shall remain as such for all purposes hereunder.

8.  No Legal Title in Beneficiaries.  No Beneficiary shall have legal title to any part of the Liquidating Trust Estate.  No transfer, by operation of law or otherwise, of the right, title and interest of any Beneficiary in and to the Liquidating Trust Estate or hereunder shall operate to terminate this Liquidating Trust or entitle any successor or transferee of such Beneficiary to an accounting or to the transfer to it of legal title to any part of the Liquidating Trust Estate.

9.  Reports to Beneficiaries.  The Liquidating Trustee will file written reports (the "Liquidating Trustee Accounting Reports") with the Bankruptcy Court and provide a copy to the Oversight Committee.  The Liquidating Trustee Accounting Reports shall be filed every three (3) months.  The first Liquidating Trustee Accounting Reports shall be filed on the twentieth (20th) day after the end of the month which falls three (3) months after the Effective Date.  The

Liquidating Trustee shall continue to file the Liquidating Trustee Accounting Reports every three (3) months thereafter until the Final Distribution Date. The Liquidating Trustee Accounting Reports shall include: (i) a statement of assets and liabilities, (ii) a statement of cash receipts and disbursements, (iii) a schedule, summarizing by type of investment and asset, all acquisitions and dispositions, and (iv) a summary of the status of the resolution of Claims for such reporting period and disposition of Trust Assets. In addition, such statements or schedules shall contain the following supplementary information: (A) a statement of the Beneficial Interests outstanding, (B) the amount of distributions to Beneficiaries, and (C) a schedule of expenses of the Trust. The Trustee shall maintain records and books of accounts relating to the Trust Assets, the management thereof and all transactions undertaken by the Trustee. The Trustee shall also maintain records and books of accounts relating to all distributions contemplated under the Plan and the Agreement. Before making his final distribution, the Trustee shall file with the Bankruptcy Court and serve on the UST, the Oversight Committee, and the Beneficiaries a written report (which report shall constitute the final accounting of the Liquidating Trust) showing the assets administered, the distributions made by the Trustee, and the final distributions to be made by the Trustee and Trust Costs. Any Beneficiary who fails to file with the Bankruptcy Court and serve on the Trustee a written objection to the final report and accounting within thirty (30) days after such report or account is filed with the Bankruptcy Court shall be deemed to have assented thereto and approved the contents thereof. If no objection to the final report and accounting is filed within the time frame set forth above, then, upon making the final distribution in the manner set forth in the final report, the Trustee shall be: (a) fully discharged of his duties hereunder and under the Plan; and (b) fully discharged and released from all duties, liabilities and obligations of every kind and nature to the Beneficiaries, except as is expressly set forth herein, or in the Plan, to the contrary; provided, however, that the foregoing shall not relieve the Liquidating Trustee and the Liquidating Trustee Professionals from liability for gross negligence, fraud, willful misconduct, self-dealing or breach of fiduciary duty.

## ARTICLE VI
### DISTRIBUTION OF THE TRUST ESTATE

1.      Establishment of Accounts.   On the Effective Date or as soon thereafter as practicable, the Debtors or the Trustee, as the case may be, shall establish the following accounts.

a.      Expense Reserve Account.   An Expense Reserve Account shall be established in the aggregate amount of $2,500,000.00 from the Trust Cash. The Expense Reserve Account may be replenished from time to time (the "Replenishment Amounts"), from the funds in the General Trust Account.

b.      General Trust Account.   The General Trust Account shall be established, into which Available Cash (and/or other Trust Cash) may be deposited, in the sole discretion of the Trustee consistent with the terms hereof and the Plan. The Trust Cash held in the General Trust Account shall include all net proceeds received from litigation, including the Litigation Claims. The Trust Cash held in the General Trust Account shall also be used to transfer funds to the Disputed Reserve Account and also be used to pay all Allowed Claims, including all Allowed Administrative Claims.

14

      c.     <u>Disputed Claims Reserve Account</u>.

      (i)    <u>Establishment of Disputed Claims Reserve Account</u>.    On the Effective Date, and in conjunction with making all Distributions required to be made on the Effective Date, the Debtors or the Trustee, as the case may be, shall establish the Disputed Claims Reserve Account.

      (ii)    <u>Duties in Connection with Disputed Claims</u>.    The Trustee shall (i) hold and administer the Disputed Claims Reserve Account, (ii) object to, settle or otherwise resolve Disputed Claims, (iii) make Distributions to Holders of Disputed Claims that subsequently become Allowed Claims in accordance with the Plan and (iv) distribute any remaining assets of the Disputed Claims Reserve Account, after resolving all Disputed Claims, to Holders of Beneficial Interests in accordance with the Agreement and the Plan.

      (iii)    <u>Transfer of Distributions to Disputed Claim Reserve Accounts</u>.    On and after the Effective Date, any Distributions that would otherwise be made to the Holders of Disputed Claims shall be transferred from the General Trust Account to the Disputed Claims Reserve Account.    Payments shall be made from the Disputed Claims Reserve Account to the Holder of an Allowed Claim, which was previously a Disputed Claim, upon the first Distribution Date immediately following the date upon which such Claim became an Allowed Claim and shall include any accrued interest thereon, at the rate earned in such interest bearing account less any expenses, including, without limitation, applicable taxes.

      (iv)    <u>Certain Disputed Claims</u>.    To the extend that a Creditor asserts duplicative, overlapping, or multiple Claims, the total amount reserved shall not exceed the total amount subject to distribution to such Creditor on account of such Claims.

      (v)    <u>Termination of Disputed Claims Reserve Account</u>.    The Disputed Claims Reserve Account shall be terminated by the Trustee, upon the filing with the Bankruptcy Court of a written certification of the Trustee that all Disputed Claims related to such account have either become Allowed Claims or Disallowed and Distributions required herein to be made have been made in accordance with the terms of the Plan and the Agreement.

    2.    Distributions.

      a.    <u>Distributions on Account of Beneficial Interests; Generally</u>.    To the extent funds are available, on each Distribution Date, the Trustee shall make Distributions of Available Cash from the Trust to Holders of Beneficial Interests in accordance with the Agreement and the Plan.    Any proceeds received from the liquidation of the Trust Assets shall be distributed in accordance with the Agreement and the Plan.

      b.    <u>Resolution of Disputed Claims</u>.    No Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.    No Distribution or payment shall be made to any Holder of an Allowed Claim who is also a potential

15

defendant in a Litigation Claim.[3] The making of a Distribution to such potential defendant or the lack of any objection filed to such Allowed Claim on the basis of such potential Litigation Claim, shall not constitute a waiver of any rights of the Debtor or the Trustee, as the case may be.  Such Distribution or payment on account of such Allowed Claim shall be held in the applicable Disputed Claims Reserve Account as if it were a Disputed Claim.

        c.     <u>Taxable Income Allocable to Disputed Claims</u>.  Taxes with respect to income of the Trust attributable to the estimated amount of Disputed Claims shall be the responsibility of the Trust.  In the event and to the extent the amount held in trust for the Holders of Disputed Claims produces insufficient Cash to pay such taxes, the Trust shall fund such taxes and deduct an amount equal to such taxes from subsequent earnings with respect to the amount held in trust for Disputed Claims or amounts that may be subsequently distributed to Holders of Disputed Claims that have become Allowed Claims; Holders of Disputed Claims will in all circumstances bear the cost of Trust taxes attributable to their respective shares of Trust Assets and income.

        d.     <u>Distributions when a Disputed Claim Becomes an Allowed Claim; or when a Disputed Claim is Subsequently Disallowed</u>.  On the next Distribution Date following the time upon which a Disputed Claim is ultimately Allowed, Holders of such Claims shall receive from the applicable Disputed Claims Reserve Account any amounts held in such Disputed Claims Reserve Account attributable to the Allowed amount of such Claim, as set forth in the Agreement and the Plan.  Any Cash Distributions held in the applicable Disputed Claims Reserve Account for the benefit of a Holder of a Disputed Claim, which is subsequently Disallowed, in whole or in part, shall be distributed on the next Distribution Date, to Holders of Beneficial Interests having Allowed Claims and to the applicable Disputed Claims Reserve Account on account of such Disputed Claims as if such amounts had been distributed on the Effective Date.  Notwithstanding anything to the contrary contained herein, the Trustee shall pay to the Holder of any Disputed Administrative Claim that becomes Allowed Cash in an amount equal to such Allowed Administrative Claim no later than seven (7) Business Days after the entry of a Final Order Allowing such Administrative Claim.

        3.     <u>Estimation of Claims</u>.  The Trustee may, at any time, request that the Bankruptcy Court estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such

---

[3] Nothing herein is meant to alter the rights of claims previously allowed by the Bankruptcy Court, including the Allowed HSBC Claim pursuant to the February 11, 2009 Bankruptcy Court order approving the settlement agreement dated December 24, 2008, by and among the Chapter 11 Trustee, Joseph Dwek, Yeshuah, LLC, Joseph Dwek Family Limited Partnership, Mark Adjmi and HSBC Bank USA, National Association, except as otherwise altered by the subsequent settlement between the Chapter 11 Trustee and HSBC Bank USA, National Association, as approved by the Bankruptcy Court.

Claim; and the Bankruptcy Court will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Trustee may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by the Trustee in accordance with the terms of the Agreement.

4.     No Recourse.  Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other Holders of Allowed Claims in the respective Class, no Holder shall have recourse against the Debtors, the Estates, the Trustee, the Oversight Committee or any of their respective professionals, consultants, officers, directors or members or their successors or assigns, or any of their respective property. However, nothing in the Plan or the Agreement shall modify any right of a Holder of a Claim under section 502(j) of the Bankruptcy Code.

5.     Objections to Claims.  Unless otherwise ordered by the Bankruptcy Court, after the Effective Date, the Trustee shall have the exclusive right to make and file objections to and settle, compromise or otherwise resolve Disputed Claims, except that as to applications for allowances of Professional Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest. The Trustee shall file and serve a copy of each objection upon the Holder of the Claim to which an objection is made consistent with the terms set forth in the Plan.

Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Trustee effects service in any of the following manners (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified in the Proof of Claim or any attachment thereto at the address of the Creditor set forth therein; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Cases. From and after the Effective Date, the Trustee may settle or compromise any Disputed Claim or Cause of Action pursuant to the terms of the Agreement.

6.     Unclaimed Property.  Subject to Bankruptcy Rule 9010, all Distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the Schedules Filed with the Bankruptcy Court or on the books and records of the Debtor or its agents or in a letter of transmittal unless the Trustee has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on such Schedules for such Holder. In the event that any distribution to any Holder is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Trustee is notified of such

17

Holder's then-current address, at which time all missed Distributions shall be made to such Holder, without interest. All demands for undeliverable Distributions shall be made on or before ninety (90) days after the date such undeliverable Distribution was initially made. Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to the Trust, and any Claim in respect of such undeliverable Distribution shall be discharged and forever barred from assertion against the Trust, the Debtors, and its property.

Checks issued by the Trustee in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any check shall be in writing and be made to the Trustee by the Holder of the Allowed Claim to whom such check originally was issued and such request must be accompanied by delivery of the original check. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the ninety (90) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Trust, and any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Trust, the Debtor, and its property.

7.    <u>Disputed Payments</u>. If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any Distribution, the Trustee may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such Holder and shall not constitute Assets of the Debtors, their Estates or the Trust. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement among the interested parties to such dispute.

8.    <u>Miscellaneous Distribution Provisions</u>.

a.    Method of Cash Distributions. Cash payments shall be in United States dollars by checks drawn on a domestic bank selected by the Trustee or by wire transfer from a domestic bank, at the option of the Trustee; provided, however, that cash payments made to foreign creditors, if any, holding Allowed Claims may be (but are not required to be) paid, at the option of the Trustee in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Any Holder of an Allowed Claim requesting payment by any method other than check or wire transfer must pay the costs associated with such method of payment.

b.    Distributions on Non-Business Days. Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

c.    Accrual of Postpetition Interest. Unless otherwise provided for in the Plan, no Holder of a pre-petition Allowed Claim shall be entitled to the accrual of post-petition interest on account of such Claim.

d.    No Distribution in Excess of Allowed Amount of Claim. Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution (of a value set forth in the Plan or in the Disclosure Statement) in excess of the Allowed amount of such Claim.

e.      De Minimis Remainder After Final Distribution.  The Trustee shall be authorized to pay into the Bankruptcy Court any amounts up to and including $5,000 that remain in the Trust after the final Distribution Date.

9.      <u>De Minimis Distributions</u>.  Notwithstanding anything to the contrary contained herein, if the amount of Cash to be distributed to the Holder of an Allowed Claim or a Beneficial Interest, as the case may be, is less than $50, the Trustee may hold the Cash Distributions to be made to such Holder until the aggregate amount of Cash to be distributed to such Holder is in an amount equal to or greater than $50, if the Trustee determines that the cost to distribute such Cash is unreasonable in relation to the amount of Cash to be distributed.  Notwithstanding the preceding sentence, if the amount of Cash Distribution to such Holder never aggregates to more than $50, then on the final Distribution Date, the Trustee shall distribute such Cash to the Holder entitled thereto.

10.     <u>Allocation of Payments</u>.  Amounts paid to Holders of Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to interest that has accrued on such Claims but remains unpaid.

11.     <u>Setoffs</u>.  The Trustee is authorized, pursuant to section 553 of the Bankruptcy Code, to set off against any Allowed Claim other than Claims expressly Allowed by the Plan and the Distributions to be made on account of such Allowed Claim, the claims, rights and Causes of Action of any nature that the Trust may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Trust of any such claims, rights and Causes of Action that the Trust may possess against such Holder.

**ARTICLE VII**
MISCELLANEOUS

1.      <u>Final Distribution</u>.  If the Trustee determines that the remaining assets of the Liquidating Trust may be conveniently distributed, or if the existence of the Liquidating Trust shall terminate, the Trustee shall, as expeditiously as is consistent with the conservation and protection of the Liquidating Trust Estate, distribute the Liquidating Trust Estate to the Beneficiaries, after submitting and obtaining approval of his final report and accounting as set forth above.

2.      <u>GOVERNING LAW; CONSENT TO JURISDICTION</u>.  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY APPLICABLE TO AGREEMENTS MADE AND TO BE WHOLLY PERFORMED IN SUCH STATE.  THE TRUSTEE HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENTS TO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW JERSEY AND OF THE UNITED STATES OF AMERICA LOCATED IN NEW JERSEY FOR ANY ACTIONS, SUITS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

3.    <u>Severability of Provisions</u>.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.

4.    <u>Securities Law</u>.  Under section 1145 of the Bankruptcy Code, the issuance of Beneficial Interests under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities.  If the Trustee determines, with the advice of counsel, that the Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

IN WITNESS WHEREOF, this Agreement has been duly executed as of the date first above.

**Chapter 11 Trustee for the Jointly Administered Debtors and Liquidation Trustee**

By:_____
          Charles A. Stanziale, Jr.

# **EXHIBIT A**

The Plan