**⮚Alliant**

**FRANEY MUHA COMMERCIAL GROUP**

August 2, 2010

United States Bankruptcy Court for the District of New Jersey
Clarkson S. Fisher US Courthouse
402 East State Street
Trenton, NJ 08608

Re: United States Bankruptcy Court for the District of New Jersey
Solomon Dwek
Case Number 07-11757 (KCF)                  - 6700

Dear Sirs,

We have received the Eleventh Omnibus Motion of Liquidating Trustee for Entry of an Order Expunging Certain Scheduled and Filed Claims for which No Amounts are Owed. Franey Muha Alliant claim number 97-1 is listed as a creditor that is owed no money. It is our wish to contest this motion.

Franey Muha Alliant is an insurance agency and we issued, on behalf of Solomon Dwek and several of his companies, numerous subdivision bonds. Many of these bonds remain in effect in spite of the fact that premiums have not been paid. We have worked with the Trustee to have bonds released but have been largely unsuccessful in having the Trustee respond to our correspondence.

Attached are copies of subdivision bonds, invoices and the indemnities that Mr. Dwek has executed. Over the course of the bankruptcy proceedings the amount of premium grows each year the bonds stay in place. Some of the properties that underlie the subdivision obligations have been sold. We have asked the Trustee to advise the purchasers that they have to replace the Dwek bonds but, as far as we can tell, the Trustee has not required the bonds to be replaced. At this time there is at least $28,072 in premium owed.

Sincerely,

Eamonn Long

**Alliant**

FRANEY MUHA COMMERCIAL GROUP

# INVOICE

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 5/27/08 | |
| ASSURED NUMBER | AGENCY CONTACT |
| | |
| TRANSACTION DATE | |
| 5/27/08 | |

**Neptune Medical, LLC**

**DETACH THIS PORTION AND RETURN WITH REMITTANCE:**

Bond Number  -  **5007660**

Obligee        -        **Borough of Neptune**

Company –  **Bond Safeguard Insurance Company**

Coverage -   **Subdivision bond**

| BOND AMOUNT BOND RELEASED | $621,864.00 |
|---|---|

**BOND PREMIUM**                                          **-$6,390.00**

**2100 Highway 33**

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 5/27/08 | |

| AMOUNT DUE | -$6,390.00 |
|---|---|

**⋏Alliant**

FRANEY MUHA COMMERCIAL GROUP

# INVOICE

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 8/26/08 | |
| ASSURED NUMBER | AGENCY CONTACT |
| | |
| TRANSACTION DATE | |
| 8/26/08 | |

**Neptune Medical, LLC**

**DETACH THIS PORTION AND RETURN WITH REMITTANCE:**

| | | | | | |
|---|---|---|---|---|---|
| Bond Number | - | **5007674** | **Company –** | **Bond Safeguard Insurance Company** | |
| Obligee | - | **County of Monmouth** | **Coverage -** | **Subdivision bond** | |
| Term | - | **September 19, 2008 to September 18, 2009** | | | |

**BOND AMOUNT**  **$9,697.50**

**BOND PREMIUM**  **$150.00**

**2100 Highway 33**

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 8/26/08 | |

| AMOUNT DUE | $150.00 |
|---|---|

**⊾Alliant**

FRANEY MUHA COMMERCIAL GROUP

# INVOICE

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 8/26/09 | |
| ASSURED NUMBER | AGENCY CONTACT |
| | |
| TRANSACTION DATE | |
| 8/26/09 | |

**Neptune Medical, LLC**

## DETACH THIS PORTION AND RETURN WITH REMITTANCE:

Bond Number - **5007674**    Company – **Bond Safeguard Insurance Company**

Obligee - **County of Monmouth**    Coverage - **Subdivision bond**

Term - **September 19, 2009 to September 18, 2010**

**BOND AMOUNT**    **$9,697.50**

**BOND PREMIUM**    **$150.00**

**2100 Highway 33**

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 8/26/09 | |

| AMOUNT DUE | $150.00 |
|---|---|

**◣Alliant**

FRANEY MUHA COMMERCIAL GROUP

# INVOICE

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 9/27/08 | |
| ASSURED NUMBER | AGENCY CONTACT |
| | |
| TRANSACTION DATE | |
| 9/27/08 | |

**Sinking Springs Outparcel, LP**

**DETACH THIS PORTION AND RETURN WITH REMITTANCE:**

Bond Number -   **1002050**

Obligee - Township of South Heidelberg

Company –  Lexon Insurance Company

Coverage -   Subdivision Bond

| BOND AMOUNT | $311,268.00 |
|---|---|
| ANNUAL BOND PREMIUM | $4,674.00 |

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 9/27/08 | |

| AMOUNT DUE | $4,674.00 |
|---|---|

Alliant Insurance Services, Inc. • 411 Theodore Fremd Avenue • Suite 206 South • Rye, NY 10580
PHONE (914) 925-3482 • FAX (914) 925-3497 • www.alliantinsurance.com

**Alliant**

FRANEY MUHA COMMERCIAL GROUP

# INVOICE

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 9/27/09 | |
| ASSURED NUMBER | AGENCY CONTACT |
| | |
| TRANSACTION DATE | |
| 9/27/09 | |

**Sinking Springs Outparcel, LP**

**DETACH THIS PORTION AND RETURN WITH REMITTANCE:**

Bond Number -    1002050          Company –  Lexon Insurance Company

Obligee - Township of South Heidelberg          Coverage -   Subdivision Bond

**BOND AMOUNT**                                        **$311,268.00**

**ANNUAL BOND PREMIUM**                          **$4,674.00**

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 9/27/09 | |

| AMOUNT DUE | $4,674.00 |
|---|---|

**◢Alliant**

FRANEY MUHA COMMERCIAL GROUP

# INVOICE

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 2/26/08 | |
| ASSURED NUMBER | AGENCY CONTACT |
| | |
| TRANSACTION DATE | |
| 2/26/08 | |

**Neptune Medical, LLC**

**DETACH THIS PORTION AND RETURN WITH REMITTANCE:**

| | | | | | |
|---|---|---|---|---|---|
| Bond Number | - | 5007660 | Company – | Bond Safeguard Insurance Company |
| Obligee | - | Borough of Neptune | Coverage - | Subdivision bond |

| **BOND AMOUNT** | **$621,864.00** |
|---|---|
| **BOND PREMIUM** | **$9,328.00** |

**2100 Highway 33**

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 2/26/08 | |

| **AMOUNT DUE** | **$9,328.00** |
|---|---|

**⋊Alliant**

FRANEY MUHA COMMERCIAL GROUP

# INVOICE

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 9/26/07 | |
| **ASSURED NUMBER** | **AGENCY CONTACT** |
| | |
| **TRANSACTION DATE** | |
| 9/26/07 | |

**Grant Estates, LLC**

Bond Number  -  **5007655**              Company –  **Bond Safeguard Insurance Company**

Obligee        -   **Township of Ocean**        Coverage -   **Subdivision bond**

Term            -   **April 30, 2008 to April 29, 2009**

BOND AMOUNT                         **$315,088.06**

BOND PREMIUM                         **$3,939.00**

Grant Avenue, Block 22, Lots 106, 107 and 108

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 9/26/07 | |

| AMOUNT DUE | $3,939.00 |
|---|---|

Alliant Insurance Services, Inc. • 411 Theodore Fremd Avenue • Suite 206 South • Rye, NY 10580
PHONE (914) 925-3482 • FAX (914) 925-3497 • www.alliantinsurance.com

**ⱮAlliant**

FRANEY MUHA COMMERCIAL GROUP

# INVOICE

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 9/26/07 | |
| ASSURED NUMBER | AGENCY CONTACT |
| | |
| TRANSACTION DATE | |
| 9/26/07 | |

**Grant Estates, LLC**

Bond Number  -   5007655                    Company –  **Bond Safeguard Insurance Company**

Obligee         -   **Township of Ocean**         Coverage -   **Subdivision bond**

Term            -   **April 30, 2007 to April 29, 2008**

**BOND AMOUNT**                              **$315,088.06**

**BOND PREMIUM**                            **$3,939.00**

**Grant Avenue, Block 22, Lots 106, 107 and 108**

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 9/26/07 | |

| AMOUNT DUE | $3,939.00 |
|---|---|

**Alliant**

FRANEY MUHA COMMERCIAL GROUP

# INVOICE

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 9/26/09 | |
| ASSURED NUMBER | AGENCY CONTACT |
| | |
| TRANSACTION DATE | |
| 9/26/09 | |

**Grant Estates, LLC**

| | | | | | |
|---|---|---|---|---|---|
| Bond Number | - | 5007655 | Company – | Bond Safeguard Insurance Company |
| Obligee | - | Township of Ocean | Coverage - | Subdivision bond |
| Term | - | April 30, 2009 to April 29, 2010 | | |

**BOND AMOUNT**                    **$315,088.06**

**BOND PREMIUM**                    **$3,939.00**

**Grant Avenue, Block 22, Lots 106, 107 and 108**

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 9/26/09 | |

| AMOUNT DUE | $3,939.00 |
|---|---|

**Alliant**

FRANEY MUHA COMMERCIAL GROUP

# INVOICE

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 4/30/10 | |
| ASSURED NUMBER | AGENCY CONTACT |
| | |
| TRANSACTION DATE | |
| 4/30/10 | |

**Grant Estates, LLC**

| | | | | | |
|---|---|---|---|---|---|
| Bond Number | - | 5007655 | Company – | Bond Safeguard Insurance Company |
| Obligee | - | Township of Ocean | Coverage - | Subdivision bond |
| Term | - | April 30, 2010 to April 29, 2011 | | |

| BOND AMOUNT | $315,088.06 |
|---|---|
| BOND PREMIUM | $3,939.00 |

**Grant Avenue, Block 22, Lots 106, 107 and 108**

| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 4/30/10 | |

| AMOUNT DUE | $3,939.00 |
|---|---|

# Lexon Insurance Company
# Bond Safeguard Insurance Company

Lombard, Illinois

### GENERAL AGREEMENT OF INDEMNITY

This Agreement entered into by and between the undersigned, herein called the Indemnitors, and Bond Safeguard Insurance Company, Illinois, and/or Lexon Insurance Company, Texas, with Executive Offices in Lombard, Illinois herein called the Company, witnesseth:

WHEREAS, in the transaction of business, certain bonds, undertakings and other writings obligatory in the nature of a bond have heretofore been, and may hereafter be, required by, for, or on behalf of the Indemnitors or any one or more of the parties included in the designation Indemnitors, and application has been made and will hereafter be made to the Company to execute such bonds, and as a prerequisite to the execution of such bond or bonds, the Company requires complete indemnification.

NOW, THEREFORE, in consideration of the premises, and the payment by the Company of the sum of One ($1.00) Dollar to each of the Indemnitors, receipt whereof is hereby acknowledged, and for other good and valuable considerations, the Indemnitors do, for themselves, their heirs, executors, administrators and assigns, jointly and severally, agree with the Company as follows:

1. The Indemnitors will pay to the Company, at its Executive Offices in Lombard, Illinois, premiums and charges at the rates, and at the times specified in respect to each such bond in the Company's schedule of rates, which, with any additions, or amendments thereto, is by reference made a part hereof, and will continue to pay the same where such premium or charge is annual, until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or matters arising therefrom, and until the Indemnitors shall deliver to the Company at its Executive Offices in Lombard, Illinois, competent written evidence satisfactory to the Company of its discharge from all liability on such bond or bonds.

2. The Indemnitors will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefore, including fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefore to the Company.

3. If the Company shall set up a reserve to cover any claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this Agreement.

4. The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its Executive Offices in Lombard, Illinois.

5. The Company shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

6. If such bond be given in connection with a contract, the Company is hereby authorized, but not required, to consent to any change in the contract or in the plans or specifications relating thereto; to make or guarantee advances or loans for the purposes of the contract without the necessity of seeing to the application thereof, it being understood that the amount of all such advances or loans, unless repaid with legal interest by the Contractor to the Company when due, shall be conclusively presumed to be a loss hereunder; in the event of the abandonment, forfeiture or breach of the contract, or the breach of any bond given in connection therewith, or the failure, neglect or refusal to pay for labor or materials used in the prosecution of the contract, to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract, or cause, or consent, to the completion thereof. The Indemnitors hereby assign, transfer, and set over to the Company (to be effective as of the date of any such bond, but only in the event of a default as aforesaid), all of their rights under the contract including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof.

7. That it shall not be necessary for the Company to give the Indemnitors, or any one or more of them, notice of the execution of any such bonds, nor of any fact or information coming to the notice or knowledge of the Company affecting its rights or liabilities, or the rights or liabilities of the Indemnitors under any such bond executed by it, notice of all such being hereby expressly waived.

8. In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

9. The Company at its option may decline to execute or participate in, or procure the execution of, any such bonds without impairing the validity of this General Agreement of Indemnity.

10. If the Company procures the execution of such bonds by other companies, or executes such bonds with cosureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of such other companies, cosureties, and reinsurers as their interests may appear.

11. The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

12. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, upon written notice to the Company of not less than ten (10) days, but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may be then in force.

13. Indemnitors agree that their liability shall be construed as the liability of a compensated Surety, as broadly as the liability of the Company is construed toward its obligee.

14. The word Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

15. That no change or modification of or in the terms of this agreement shall be effective unless such change or modification is in writing and signed by the President, a Vice-President, a Secretary, or an Assistant Secretary of the Company.

16. That this Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.

17. At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, material man, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts.

18. In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Contractor has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith or in the event of the death, disappearance, Contractor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Contractor under said Act, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

19. THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER ANY BONDS (WHETHER OR NOT COVERED BY ANY APPLICATION SIGNED BY ANY ONE OR MORE OF THE INDEMITORS—SUCH APPLICATION TO BE CONSIDERED BETWEEN THE PARTIES HERETO AS MERELY SUPPLEMENTARY TO THIS GENERAL AGREEMENT OF INDEMNITY) HERETOFORE OR HEREAFTER EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

WE HAVE READ THIS GENERAL AGREEMENT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.

IN TESTIMONY WHEREOF, the Indemnitors have hereunto set their hands and affixed their seals this

_26th_ day of _September_ 20_05_

Addresses:

_Solomon Dwek_ X _____ (L.S.)
_200 Wall Street PO Box 98_
_West Long Branch NJ 07764_ _____ (L.S.)

_____ (L.S.)

_Sinking Springs outparcel LP_ X _____ (L.S.)
_200 Wall Street PO Box 98_
_West Long Branch NJ 07764_ _____ (L.S.)

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

# Lexon Insurance Company
# Bond Safeguard Insurance Company
Lombard, Illinois

### GENERAL AGREEMENT OF INDEMNITY

This Agreement entered into by and between the undersigned, herein called the Indemnitors, and Bond Safeguard Insurance Company, Illinois, and/or Lexon Insurance Company, Texas, with Executive Offices in Lombard, Illinois herein called the Company, witnesseth:

WHEREAS, in the transaction of business, certain bonds, undertakings and other writings obligatory in the nature of a bond have heretofore been, and may hereafter be, required by, for, or on behalf of the Indemnitors or any one or more of the parties included in the designation Indemnitors, and application has been made and will hereafter be made to the Company to execute such bonds, and as a prerequisite to the execution of such bond or bonds, the Company requires complete indemnification.

NOW, THEREFORE, in consideration of the premises, and the payment by the Company of the sum of One ($1.00) Dollar to each of the Indemnitors, receipt whereof is hereby acknowledged, and for other good and valuable considerations, the Indemnitors do, for themselves, their heirs, executors, administrators and assigns, jointly and severally, agree with the Company as follows:

1. The Indemnitors will pay to the Company, at its Executive Offices in Lombard, Illinois, premiums and charges at the rates, and at the times specified in respect to each such bond in the Company's schedule of rates, which, with any additions, or amendments thereto, is by reference made a part hereof, and will continue to pay the same where such premium or charge is annual, until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or matters arising therefrom, and until the Indemnitors shall deliver to the Company at its Executive Offices in Lombard, Illinois, competent written evidence satisfactory to the Company of its discharge from all liability on such bond or bonds.

2. The Indemnitors will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefore, including fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefore to the Company.

3. If the Company shall set up a reserve to cover any claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this Agreement.

4. The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its Executive Offices in Lombard, Illinois.

5. The Company shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

6. If such bond be given in connection with a contract, the Company is hereby authorized, but not required, to consent to any change in the contract or in the plans or specifications relating thereto; to make or guarantee advances or loans for the purposes of the contract without the necessity of seeing to the application thereof, it being understood that the amount of all such advances or loans, unless repaid with legal interest by the Contractor to the Company when due, shall be conclusively presumed to be a loss hereunder; in the event of the abandonment, forfeiture or breach of the contract, or the breach of any bond given in connection therewith, or the failure, neglect or refusal to pay for labor or materials used in the prosecution of the contract, to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract, or cause, or consent, to the completion thereof. The Indemnitors hereby assign, transfer, and set over to the Company (to be effective as of the date of any such bond, but only in the event of a default as aforesaid), all of their rights under the contract including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof.

7. That it shall not be necessary for the Company to give the Indemnitors, or any one or more of them, notice of the execution of any such bonds, nor of any fact or information coming to the notice or knowledge of the Company affecting its rights or liabilities, or the rights or liabilities of the Indemnitors under any such bond executed by it, notice of all such being hereby expressly waived.

8. In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

9. The Company at its option may decline to execute or participate in, or procure the execution of, any such bonds without impairing the validity of this General Agreement of Indemnity.

10. If the Company procures the execution of such bonds by other companies, or executes such bonds with cosureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of such other companies, cosureties, and reinsurers as their interests may appear.

11. The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

12. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, upon written notice to the Company of not less than ten (10) days, but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may be then in force.

13. Indemnitors agree that their liability shall be construed as the liability of a compensated Surety, as broadly as the liability of the Company is construed toward its obligee.

14. The word Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

15. That no change or modification of or in the terms of this agreement shall be effective unless such change or modification is in writing and signed by the President, a Vice-President, a Secretary, or an Assistant Secretary of the Company.

16. That this Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.

17. At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, material man, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts.

18. In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Contractor has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Contractor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Contractor under said Act, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

19. THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER ANY BONDS (WHETHER OR NOT COVERED BY ANY APPLICATION SIGNED BY ANY ONE OR MORE OF THE INDEMNITORS—SUCH APPLICATION TO BE CONSIDERED BETWEEN THE PARTIES HERETO AS MERELY SUPPLEMENTARY TO THIS GENERAL AGREEMENT OF INDEMNITY) HERETOFORE OR HEREAFTER EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

WE HAVE READ THIS GENERAL AGREEMENT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.

IN TESTIMONY WHEREOF, the Indemnitors have hereunto set their hands and affixed their seals this
_____29th_____ day of __April__ 20__04__

Addresses:
Grant Estates, LLC
P.O. Box 1068, Oakhurst, NJ 07755                                                           (L.S.)
Morris Levy
1910 Rt. 35, Oakhurst, NJ 07755                              Morris Levy              (L.S.)
Eric Adjmi
1910 Rt. 35, Oakhurst, NJ 07755                                                           (L.S.)
Solomon Dwek
311 Crosby Ave., West Deal, NJ 07712                                                   (L.S.)

_____     _____     (L.S.)

_____     _____     (L.S.)

_____     _____     (L.S.)

_____     _____     (L.S.)

PERFORMANCE BOND

BOND NO. 5007655

We, Grant Estates, LLC, having offices at 34 West 34th St. New York NY 10001, as Principal, and BOND SAFEGUARD INSURANCE COMPANY, having offices at, 10002 Shelbyville Rd Lexington KY 40223, a corporation duly licensed to transact a surety business in the State of Jersey, as Surety, are indebted to the Township of Ocean in the county of Monmouth, Obligee in the penal sum of three hundred fifteen thousand and eighty eight and 06/100 DOLLARS ($315,088.06) for which payment we bind ourselves, and our respective heirs, legal representatives, successors and assigns, jointly and severally.

On July 22, 2002 Principal was granted approval by the Ocean Township Planning Board for Country Club Estates. The estimate by the municipal engineer of the cost of the work and the resolution of approval are attached hereto and made a part hereof.

Pursuant to municipal ordinance, adopted under authority of the Municipal Land Use Law (N.J.S.A. 40;55D-1 et seq), the Principal hereby furnishes a performance surety bond in the amount of $315,088.06, written by Bond Safeguard Insurance Company, a surety licensed in the State of New Jersey, guaranteeing full and faithful completion of improvements approved by the approving authority, in lieu of completing the required improvements to the granting of final approval. The bond shall remain in full force and effect until such time as all improvements covered by the bond have been approved or accepted by resolution of the municipal governing body, except in those instances where some of the improvements are approved or accepted by resolution of the governing body upon certification by the municipal engineer, partial release from the bond shall be granted in accordance with N.J.S.A. 40:55D-53. The amount of the bond remaining shall be sufficient to secure provision of the improvements not yet approved; provide, however, that the municipality may require that 30 percent of the bond be retained to ensure completion of all improvements.

This bond shall remain in full force and effect until released by resolution of the municipal governing body.

This bond is issued subject to the following expressed conditions:

1. This bond shall not be subject to cancellation either by the Principal or by the Surety for any reason until such time as all improvements subject to the bond have been accepted by the municipality, in accordance with the applicable provisions of the Municipal Land Use Law.

2. This bond shall be determined to be continuous in form and shall remain in full force and effect until the improvements are accepted by the municipality and the bond is released, or until default is declared, or until the bond is replaced by another bond meeting applicable legal requirements. Upon approval or acceptance of some, but not all, of the required improvements by the municipality, partial release from the bond shall be granted in accordance with N.J.S.A. 40:55D-53;

provided, however, that the portion of the bond amount sufficient to secure completion of the improvements shall continue in effect and the municipality may retain 30 percent of the bond amount posted in order to ensure such completion.

3. The aggregate liability of the Surety shall not exceed the sum set forth above.

4. In the event that the improvements subject to this bond are not competed with in the time allowed under the conditions of the final approval issued pursuant to the Municipal Land Use Law, including such extensions as may be allowed by the approving authority, the municipal governing body may, at its option, and upon at least 30 days prior written notice to the Principal and the Surety by personal delivery or by registered mail or courier, declare the Principal to be in default and, in the event that the Surety fails or refuses to complete the work in accordance with the terms and conditions of the original approval, claim payments under this bond for the cost of completion of the work. In the event that any action is brought against the Principal under this bond, written notice of such action shall be given to the Surety by the municipality by personal delivery or by registered or certified mail or courier at the same time.

5. The Surety shall have the right to complete the work in accordance with the terms and conditions of the original approval, either with its own employees or in conjunction with the Principal or another contractor; provided, however, that the Surety, in its sole discretion, may make a monetary settlement with the municipality as an alternative to completing the work.

6. In the event that the Principal and the approving authority agree to changes in the scope of work, the obligations of the Surety under this bond shall not be affected so long as the cost of the work does not exceed 120 percent of the municipal engineer's certified estimate, attached hereto and made a part hereof, which 120 percent of the estimate shall be the limit of the Surety's obligation under this bond in any case. If the cost of the work exceeds 120 percent of the certified estimate, the Principal shall secure a rider from a surety for the additional amount, provided, however, that this provision shall not be construed as requiring the Surety to provide additional coverage.

7. This bond shall inure to the benefit of the municipality only and no other party shall acquire any rights hereunder.

8. In the event that this bond shall for any reason cease to be effective prior to the approval or acceptance of all improvements, a cease and desist order may be issued by the governing body, in which case all work shall stop until such time as a replacement guarantee acceptable to the approving authority becomes effective.

Signed, sealed, delivered and effective this 30th day of April, 2004.

ATTEST:

BY:_____
　　　　　　　　　Principal

BY:_____
　　　　　　　Eamonn Long Attorney-In-Fact

## PERFORMANCE BOND

BOND NO. 5007660

We, Neptune Medical, LLC, having offices at 200 Wall St. West Long Branch, NJ, as Principal, and Bond Safeguard Insurance Company, having offices at, 10002 Shelbyville Rd Lexington KY 40223, a corporation duly licensed to transact a surety business in the State of Jersey, as Surety, are indebted to the Borough of Neptune City, Obligee in the penal sum of six hundred and twenty one thousand eight hundred sixty four and 00/100 DOLLARS ($621,864.00) for which payment we bind ourselves, and our respective heirs, legal representatives, successors and assigns, jointly and severally.

On January 13, 2004 Principal was granted approval by the Land Use Board of the Borough of Neptune City for improvements at Block 116, Lot 2 as further detailed in an engineer's estimate prepared by Louis J. Lobosco, dated December 21, 2004 a copy of which is attached hereto and made a part hereof.

Pursuant to municipal ordinance, adopted under authority of the Municipal Land Use Law (N.J.S.A. 40;55D-1 et seq), the Principal hereby furnishes a performance surety bond in the amount of $621,864.00, written by Bond Safeguard Insurance Company, a surety licensed in the State of New Jersey, guaranteeing full and faithful completion of improvements approved by the approving authority, in lieu of completing the required improvements to the granting of final approval. The bond shall remain in full force and effect until such time as all improvements covered by the bond have been approved or accepted by resolution of the municipal governing body, except in those instances where some of the improvements are approved or accepted by resolution of the governing body upon certification by the municipal engineer, partial release from the bond shall be granted in accordance with N.J.S.A. 40:55D-53. The amount of the bond remaining shall be sufficient to secure provision of the improvements not yet approved; provide, however, that the municipality may require that 30 percent of the bond be retained to ensure completion of all improvements.

This bond shall remain in full force and effect until released by resolution of the municipal governing body.

This bond is issued subject to the following expressed conditions:

1.  This bond shall not be subject to cancellation either by the Principal or by the Surety for any reason until such time as all improvements subject to the bond have been accepted by the municipality, in accordance with the applicable provisions of the Municipal Land Use Law.
2.  This bond shall be determined to be continuous in form and shall remain in full force and effect until the improvements are accepted by the municipality and the bond is released, or until default is declared, or until  the bond is replaced by another bond meeting applicable legal requirements. Upon approval or acceptance of some, but not all, of the required improvements by the municipality, partial

release from the bond shall be granted in accordance with N.J.S.A. 40:55D-53; provided, however, that the portion of the bond amount sufficient to secure completion of the improvements shall continue in effect and the municipality may retain 30 percent of the bond amount posted in order to ensure such completion.

3. The aggregate liability of the Surety shall not exceed the sum set forth above.

4. In the event that the improvements subject to this bond are not completed with in the time allowed under the conditions of the final approval issued pursuant to the Municipal Land Use Law, including such extensions as may be allowed by the approving authority, the municipal governing body may, at its option, and upon at least 30 days prior written notice to the Principal and the Surety by personal delivery or by registered mail or courier, declare the Principal to be in default and, in the event that the Surety fails or refuses to complete the work in accordance with the terms and conditions of the original approval, claim payments under this bond for the cost of completion of the work. In the event that any action is brought against the Principal under this bond, written notice of such action shall be given to the Surety by the municipality by personal delivery or by registered or certified mail or courier at the same time.

5. The Surety shall have the right to complete the work in accordance with the terms and conditions of the original approval, either with its own employees or in conjunction with the Principal or another contractor; provided, however, that the Surety, in its sole discretion, may make a monetary settlement with the municipality as an alternative to completing the work.

6. In the event that the Principal and the approving authority agree to changes in the scope of work, the obligations of the Surety under this bond shall not be affected so long as the cost of the work does not exceed 120 percent of the municipal engineer's certified estimate, attached hereto and made a part hereof, which 120 percent of the estimate shall be the limit of the Surety's obligation under this bond in any case. If the cost of the work exceeds 120 percent of the certified estimate, the Principal shall secure a rider from a surety for the additional amount, provided, however, that this provision shall not be construed as requiring the Surety to provide additional coverage.

7. This bond shall inure to the benefit of the municipality only and no other party shall acquire any rights hereunder.

8. In the event that this bond shall for any reason cease to be effective prior to the approval or acceptance of all improvements, a cease and desist order may be issued by the governing body, in which case all work shall stop until such time as a replacement guarantee acceptable to the approving authority becomes effective.

Signed, sealed, delivered and effective this 1st day of February, 2005.

ATTEST:

_____     BY:_____
                                Neptune Medical, LLC

_____     BY:_____
                                Attorney-In-Fact

THIS BOND REPLACES BOND NO. 5007665 DATED SEPTEMBER 27, 2005.

### PERFORMANCE BOND

#### BOND NO. 1002050

We, Sinking Springs Outparcel LP having offices at 200 Wall Street, West Long Beach, NJ 07764 as Principal, and Lexon Insurance Company, as Surety, a corporation duly licensed to transact business in the State of Pennsylvania, as Surety, are indebted to the Township of South Heidelberg, 68A Galen Hall Road, Wernersville, PA 1965, in the County of Berks, Pennsylvania in the penal sum of Three Hundred Eleven Thousand Six Hundred Twenty Eight and 00/100 ($311,628.00) for which payment we bind ourselves, and our respective heirs, legal representatives, successors and assigns, jointly and severally.

On September 8, 2005 Principal was granted approval by the Township of South Heidelberg for Unit 4 of Sinking Spring Retail Center, a Condominium, Project No.02023. The estimate by the municipal engineer dated August 16, 2005 of the cost of the work and the resolution of approval are attached hereto and made a part hereof.

Pursuant to municipal ordinance, adopted under authority of the Municipal Land Use Law (N.J.S.A. 40;55D-1 et seq), the Principal hereby furnishes a performance surety bond in the amount of $311,628.00, written by Lexon Insurance Company, a surety licensed in the State of Pennsylvania, guaranteeing full and faithful completion of improvements approved by the approving authority, in lieu of completing the required improvements to the granting of final approval. The bond shall remain in full force and effect until such time as all improvements covered by the bond have been approved or accepted by resolution of the municipal governing body, except in those instances where some of the improvements are approved or accepted by resolution of the governing body upon certification by the municipal engineer, partial release from the bond shall be granted in accordance with N.J.S.A. 40:55D-53. The amount of the bond remaining shall be sufficient to secure provision of the improvements not yet approved; provide, however, that the municipality may require that 30 percent of the bond be retained to ensure completion of all improvements.

This bond shall remain in full force and effect until released by resolution of the municipal governing body.

This bond is issued subject to the following expressed conditions:

1. This bond shall not be subject to cancellation either by the Principal or by the Surety for any reason until such time as all improvements subject to the bond have been accepted by the municipality, in accordance with the applicable provisions of the Municipal Land Use Law.

2. This bond shall be determined to be continuous in form and shall remain in full force and effect until the improvements are accepted by the municipality and the bond is released, or until default is declared, or until the bond is replaced by another bond meeting applicable legal requirements. Upon approval or acceptance of some, but not all, of the required improvements by the municipality, partial release from the bond shall be granted in accordance with N.J.S.A. 40:55D-53; provided, however, that the portion of the bond amount sufficient to secure

completion of the improvements shall continue in effect and the municipality may retain 30 percent of the bond amount posted in order to ensure such completion.

3. The aggregate liability of the Surety shall not exceed the sum set forth above.

4. In the event that the improvements subject to this bond are not competed with in the time allowed under the conditions of the final approval issued pursuant to the Municipal Land Use Law, including such extensions as may be allowed by the approving authority, the municipal governing body may, at its option, and upon at least 30 days prior written notice to the Principal and the Surety by personal delivery or by registered mail or courier, declare the Principal to be in default and, in the event that the Surety fails or refuses to complete the work in accordance with the terms and conditions of the original approval, claim payments under this bond for the cost of completion of the work. In the event that any action is brought against the Principal under this bond, written notice of such action shall be given to the Surety by the municipality by personal delivery or by registered or certified mail or courier at the same time.

5. The Surety shall have the right to complete the work in accordance with the terms and conditions of the original approval, either with its own employees or in conjunction with the Principal or another contractor; provided, however, that the Surety, in its sole discretion, may make a monetary settlement with the municipality as an alternative to completing the work.

6. In the event that the Principal and the approving authority agree to changes in the scope of work, the obligations of the Surety under this bond shall not be affected so long as the cost of the work does not exceed 120 percent of the municipal engineer's certified estimate, attached hereto and made a part hereof, which 120 percent of the estimate shall be the limit of the Surety's obligation under this bond in any case. If the cost of the work exceeds 120 percent of the certified estimate, the Principal shall secure a rider from a surety for the additional amount, provided, however, that this provision shall not be construed as requiring the Surety to provide additional coverage.

7. This bond shall inure to the benefit of the municipality only and no other party shall acquire any rights hereunder.

8. In the event that this bond shall for any reason cease to be effective prior to the approval or acceptance of all improvements, a cease and desist order may be issued by the governing body, in which case all work shall stop until such time as a replacement guarantee acceptable to the approving authority becomes effective.

Signed, sealed, delivered and effective this 25th day of October, 2005.

ATTEST:                                    Sinking Springs Outparcel LP

_____        BY: _____
                                                            Principal


                                                    Lexon Insurance Company

_Fiona Moreno_                    BY: _____
                                             Eamonn T. Long, Attorney-In-Fact

BOND NO. 5007674

## PERFORMANCE SURETY BOND

We, Neptune Medical, LLC having offices at ___200 Wall Street___,
West Long Branch, NJ ___, as principal, and Bond Safeguard Insurance Company having
offices at 1919 S. Highland Ave, Lombard, IL 60148 a corporation duly
licensed to transact a surety business in the State of New Jersey, as surety, are
indebted to the County of Monmouth, obligee, in the sum of $ 9,697.50
, for which payment we bind ourselves and our respective heirs, legal representatives,
successors, and assigns, jointly and severally.

On ___9/21/04___ (date) principal was granted conditional approval by
the Monmouth County Development Review Committee for Improvements at Block 116,
Lot 2, Borough of Neptune City (include reference to specific job). The estimate by the county engineer of the cost of
this work is attached hereto and made a part hereof.

Pursuant to the Monmouth County Development Regulations, adopted under authority
of the County Enabling Act (N.J.S.A. 40:27-6.2 et seq. & N.J.S.A. 40:27-6.6 et seq.) the
principal hereby furnishes a performance surety bond in the amount of $ 9,697.50
(not to exceed 110% of the estimated cost of the improvements, as certified by the
county engineer), written by Bond Safeguard Insurance Company, a surety licensed in the State of
New Jersey, guaranteeing full and faithful completion of improvements approved by the
approving authority, in lieu of completing the required improvements prior to the
granting of final approval.

This bond shall remain in full force and effect until such time as all improvements
covered by the bond have been approved or accepted by resolution of the county
governing body. This bond shall remain in full force and effect until released by
resolution of the county governing body.

This bond is issued subject to the following expressed conditions:

1. This bond shall not be subject to cancellation either by the principal or by the
   surety for any reason until such time as all improvements subject to the bond
   have been accepted by the county by resolution of the Board of Chosen
   Freeholders.

2. This bond shall be deemed to be continuous in form, and shall remain in full force
   and effect until the improvements are accepted by the county and the bond is
   released, or until default is declared, or until the bond is replaced by another
   performance guarantee acceptable to the county and meeting applicable legal
   requirements. Upon approval or acceptance of all improvements by the county,
   or upon replacement of this bond by another performance guarantee, liability
   under this bond shall cease.

3. The aggregate liability of the surety shall not exceed the sum set forth above.

# PERFORMANCE SURETY BOND
## Page 2

4. In the event that the improvements subject to this bond are not completed within the time allowed under the conditions of the final approval issued if so established, including such extensions as may be allowed by the Monmouth County Development Review Committee (the committee), the committee or the committee's representative upon advice of the county engineer, and upon at least at least thirty (30) days prior written notice to the principal and to the surety by personal delivery or by certified or registered mail or courier, declare the principal to be in default and, in the event that the surety fails or refuses to complete the work in accordance with the terms and conditions of the original approval, claim payment under this bond for the cost of completion of the work. In the event that any action is brought against the principal under this bond, written notice of such action shall be given to the surety by the county by personal delivery or by certified or registered mail or courier at the same time.

5. The surety shall have the right to complete the work in accordance with the terms and conditions of the original approval, either with its own employees or in conjunction with the principal or another contractor; provided, however, that the surety may make a monetary settlement with the county, at the county's discretion, as an alternative to completing the work.

6. In the event that the principal and the approving authority agree to changes in the scope of work, the obligations of the surety under this bond shall not be affected so long as the cost of the work does not exceed 110 percent of the county engineer's estimate, attached hereto and made a part hereof, which 110 percent of the estimate shall be the limit of the surety's obligation under this bond in any case. If the cost of the work exceeds 110 percent of the estimate, either by agreed the upon changes in scope or as a result of increases in the cost of construction, the principal shall secure a rider from a surety for the additional amount; provided, however, that this provision shall not be construed as requiring this surety to provide additional coverage.

7. This bond shall inure to the benefit of the county only and no other party shall acquire any rights hereunder.

8. In the event that this bond shall for any reason cease to be effective prior to the approval or acceptance of all improvements, a cease and desist order may be issued by the county, in which case all work shall stop until such time as a replacement guarantee acceptable to the county becomes effective.

Date:   November 10, 2005

Witness/Attest:                              Neptune Medical, LLC, Principal

_____                      _____

Witness/Attest:                              Bond Safeguard Insurance Company,
                                             Surety

_____                      _____

                                             Eamonn T. Long, Attorney-in-Fact